**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

LANCE R. BELVILLE, et al.,

                Plaintiffs,

v.                                  CIVIL ACTION NO.   3:13-6529

FORD MOTOR COMPANY,

                Defendant

and

PAMELA D. SMITH, et al.,

                Plaintiffs,

v.                                  CIVIL ACTION NO.   3:13-14207

FORD MOTOR COMPANY,

                Defendant

and

ROBERT BRANDON, et al.

                Plaintiffs,

v.                                  CIVIL ACTION NO.   3:13-20976

FORD MOTOR COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

On March 31, 2014, this Court entered a Memorandum Opinion and Order granting, in part, and denying, in part, Defendant Ford Motor Company's Motions to Dismiss.

*Belville v. Ford Motor Co.*, Civ. Act. No. 3:13-6529, ECF No. 88, 2014 WL 1330839 (S.D. W. Va. Mar. 31, 2014); *Smith v. Ford Motor Co.*, Civ. Act. No. 3:13-14207, ECF No. 65; *Brandon v. Ford Motor Co.*, Civ. Act. No. 3:13-20976, ECF No. 57, 2014 WL 1330267 (S.D. W. Va. Mar. 31, 2014). Due to the voluminous number of individual counts in the Complaints and the broad manner in which most of the arguments were made by both sides as to categories of claims, the Court did not specifically identify which particular counts were dismissed pursuant to the Court's decisions. Instead, on April 1, 2014, the Court directed the parties to file a Joint Report identifying which counts the parties agreed were dismissed and which counts were in dispute. On April 25, 2014, the parties filed their Joint Report, which includes all three cases.

In the Joint Report, the parties agree that the following counts in each case are dismissed pursuant to the Court's decision:

*Belville v. Ford Motor Co.*
*Civil Action No. 3:13-6529*

1. Count 1 (Magnuson-Moss Warranty Act) as to all Plaintiffs except as to Plaintiffs Roofwerks and David and Inez Patton.[1]

2. Count 2 (Breach of Express Warranty under West Virginia law) as to Plaintiffs Lance R. Belville, Donald C. Carr, Mindi Stewart, and Stanley Stewart.

3. Count 3 (Breach of Implied Warranty of Merchantability under West Virginia law) as to Plaintiffs Donald C. Carr, Mindi Stewart, and Stanley Stewart.

4. Count 4 (Unjust Enrichment under West Virginia law) as to Plaintiffs Donald C. Carr, Mindi Stewart, and Stanley Stewart.

5. Count 6 (Breach of Express Warranty under Florida law) as to Plaintiff Dean Richardson.

---

[1]The parties agree that Plaintiffs Roofwerks and the Pattons' claims in Count 1 were not dismissed under the Court's decision.

-2-

6. Count 10 (Breach of Express Warranty under Illinois law) as to Plaintiff Christine Salamone.

7. Count 11 (Unjust Enrichment under Illinois law) as to Plaintiff Christine Salamone.

8. Count 14 (Breach of Express Warranty under Maryland law) as to Plaintiff Charles Johnson.

9. Count 15 (Unjust Enrichment under Maryland law) as to Plaintiff Charles Johnson.

10. Count 16 (Breach of Express Warranty under Massachusetts law) as to Plaintiff Jill Durant.

11. Count 17 (Unjust Enrichment under Massachusetts law) as to Plaintiff Jill Durant.

12. Count 19 (Breach of Implied Warranty of Merchantability under Michigan law) as to Plaintiff Beverly Gorton.

13. Count 21 (Breach of Express Warranty under Missouri law) as to Plaintiff Josh Legato.

14. Count 22 (Breach of Implied Warranty of Merchantability under Missouri law) as to Plaintiff Josh Legato.

15. Count 24 (Unjust Enrichment under Missouri law) as to Plaintiff Josh Legato.

16. Count 26 (Violation of New York Consumer Protection from Deceptive Acts and Practices § 350) as to Plaintiff Michael Antramgarza.

17. Count 27 (Breach of Express Warranty under New York law) as to Plaintiff Michael Antramgarza.

18. Count 28 (Breach of Implied Warranty of Merchantability under New York law) as to Plaintiff Michael Antramgarza.

19. Count 30 (Breach of Implied Warranty of Merchantability under North Carolina law) as to Plaintiff Quintin Williams.[2]

20. Count 33 (Unjust Enrichment under North Carolina law) as to Plaintiff Quintin Williams.[3]

---

[2]The parties agree that Plaintiff Roofwerks' claim in Count 30 was not dismissed.

[3]The parties agree that Plaintiff Roofwerks' claim in Count 33 was not dismissed.

21. Count 36 (Breach of Express Warranty under Oklahoma law) as to Plaintiff ACA Legal Investigations, Inc.

22. Count 37 (Breach of Implied Warranty of Merchantability under Oklahoma law) as to Plaintiff ACA Legal Investigations, Inc.

23. Count 39 (Unjust Enrichment under Oklahoma Law) as to Plaintiff ACA Legal Investigations, Inc.

24. Count 41 (Breach of Express Warranty under Pennsylvania law) as to Plaintiff John McGee.

25. Count 42 (Breach of Implied Warranty of Merchantability under Pennsylvania law) as to Plaintiff John McGee.

26. Count 43 (Unjust Enrichment under Pennsylvania law) as to Plaintiff John McGee.

27. Count 44 (Breach of Implied Warranty of Merchantability under South Carolina law) as to Plaintiff Mills Allison.

28. Count 45 (Unjust Enrichment under South Carolina law) as to Plaintiff Mills Allison.

29. Count 51 (Unjust Enrichment under Virginia law) as to Plaintiffs David H. Patton and Inez A. Patton.

30. Count 53 (Breach of Express Warranty under Wisconsin law) as to Plaintiffs Laura Elsinger and Gabriel Kletschka.

31. Count 54 (Unjust Enrichment under Wisconsin law) as to Plaintiffs Laura Elsinger and Gabriel Kletschka.

*Smith v. Ford Motor Co.*
*Civil Action No. 3:13-14207*

1. Count 1 (Magnuson-Moss Warranty Act) as to Plaintiffs Pamela D. Smith, Betty J. Trinque, Tony Burnett, George and Sharon Shaffer, and Jonathan Poma.[4]

---

[4]The parties agree that Plaintiffs Samuel Hairston and Mary Phippen's claims in Count 1 were not dismissed under the Court's decision.  The parties disagree as to whether Plaintiffs Timothy Matthews, Rhoda Jeffers, Robert Agris, John Grimaldi, and Shelley Riley's claims in Count 1 were dismissed.   Plaintiffs Carolyn Chase and Greg Peet were voluntarily dismissed after the Joint Report was filed. *See Smith*, ECF No. 149.

2.  Count 2 (Breach of Express Warranty under West Virginia law) as to Plaintiff Pamela D. Smith.

3.  Count 3 (Breach of Implied Warranty of Merchantability under West Virginia law) as to Plaintiff Pamela D. Smith.

4.  Count 4 (Unjust Enrichment under West Virginia law) as to Plaintiff Pamela D. Smith.

5.  Count 5 (Unjust Enrichment under Arizona law) as to Plaintiff Betty J. Trinque.

6.  Count 7 (Breach of Implied Warranty of Merchantability under Arkansas law) as to Plaintiff Tony Burnett.

7.  Count 9 (Unjust Enrichment under Arkansas law) as to Plaintiff Tony Burnett.

8.  Count 16 (Violation of the California Consumer Legal Remedies Act) as to Plaintiff Timothy Matthews.

9.  Count 22 (Unjust Enrichment under Georgia law) as to Plaintiff Samuel Hairston.

10. Count 26 (Unjust Enrichment under Idaho law) as to Plaintiff Rhoda Jeffers.

11. Count 34 (Unjust Enrichment under Minnesota law) as to Plaintiff Daniel Gallegos.

12. Count 40 (Breach of Implied Warranty of Merchantability under New Jersey law) as to Plaintiff George Shaffer.

13. Count 47 (Breach of Express Warranty under Ohio law) as to Plaintiff Jonathan Poma.

14. Count 62 (Unjust Enrichment under Wyoming law) as to Plaintiff Greg Peet.

*Brandon v. Ford Motor Co.*
*Civil Action No. 3:13-20976*

1.  Count 1 (Magnuson-Moss Warranty Act) as to Plaintiffs Robert Brandon, William Troutman, Jolene Harris, Thomas Porter, and Hasen Design Build & Development, Inc.[5]

2.  Count 2 (Breach of Express Warranty under West Virginia law) as to Plaintiff Robert Brandon.[6]

---

[5]The parties agree that Plaintiffs Charles T. Burd and Shane Mayfield's claims in Count 1 were not dismissed under the Court's decision.  The parties disagree as to whether Plaintiff Andrea Martin's claim was dismissed.

3. Count 3 (Breach of Implied Warranty of Merchantability under West Virginia law) as to Plaintiff Robert Brandon.[7]

4. Count 4 (Unjust Enrichment under West Virginia law) as to Plaintiffs Robert Brandon and Charles T. Burd.

5. Count 6 (Breach of Express Warranty under Kentucky law) as to Plaintiff William S. Troutman.

6. Count 7 (Breach of Implied Warranty of Merchantability under Kentucky law) as to Plaintiff William S. Troutman.

7. Count 9 (Unjust Enrichment under Kentucky law) as to Plaintiff William S. Troutman.

8. Count 14 (Unjust Enrichment under Louisiana law) as to Plaintiff Jolene Harris.[8]

9. Count 15 (Breach of Implied Warranty of Merchantability under South Carolina law) as to Plaintiff Andrea Martin, but the parties disagree as to Plaintiff Thomas Porter.

10. Count 16 (Unjust Enrichment under South Carolina law) as to Plaintiffs Andrea Martin and Thomas Porter.

11. Count 20 (Breach of Implied Warranty of Merchantability under Texas law) as to Plaintiff Hasen Design Build & Development, Inc.

12. Count 21 (Unjust Enrichment under Texas law) as to Plaintiff Hasen Design Build & Development, Inc.

Accordingly, as the parties agree that these claims do not survive the Court's prior decision, the Court **DISMISSES** these counts as to those Plaintiffs identified by the parties in *Belville, Smith*, and *Brandon*.   In addition, following briefing, Plaintiffs Carolyn Chase and Greg Peet voluntarily

---

[6]The parties agree that Plaintiff Charles T. Burd's claim in Count 2 was not dismissed under the Court's decision.

[7]The parties agree that Plaintiff Charles T. Burd's claim in Count 3 was not dismissed.

[8]The parties agree that Plaintiff Shane Mayfield's claim in Count 14 was not dismissed.

dismissed all their claims without prejudice from the *Smith* Complaint, which include Counts 17, 18, 19, 58, 59, 60, 61, and 62 and their Magnuson-Moss Warranty Act claims in Count 1.

Although the parties agreed that a number of claims were dismissed, there remain numerous claims upon which they do not agree.   The Court will address the parties' arguments with respect to the disputed claims.

## I.
## FRAUDULENT OMISSION

Ford argues that the fraud by omission claims should be dismissed under the heightened pleading standard pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and the Court's prior decision.   Specifically, Ford asserts that the Court should dismiss Plaintiffs' omission claims for the same reasons the Court found that Plaintiffs failed to state a claim under Rule 9(b) for fraud based upon alleged misrepresentations made in various reports, advertisements, and statements.   Upon consideration, the Court finds such an extension of its decision is not justified.

In the March 31, 2014 decision, the Court determined that no Plaintiff actually stated he or she heard or relied upon any of the specific reports, advertisements, and statements made by Ford as described in the Complaints and which allegedly affirmatively concealed facts from Plaintiffs.   Instead, Plaintiffs indicated there were "themes" of safety and reliability.   The Court found these allegations were insufficient under Rule 9(b) "to state with particularity 'the time, place, and contents of the false representations.'" *Belville*, ECF No. 88, at 27 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).   In addition,

-7-

the Court found the various reports, advertisements, and statements quoted by Plaintiffs in the Complaints were mere puffery and could not give rise to a fraud claim. *Id.*   Therefore, the Court dismissed Plaintiffs' claims of fraud and fraudulent concealment. *Id.* at 30-31.

The Court did not address in its prior decision, however, the issue of whether Plaintiffs could maintain fraudulent omission claims because fraudulent concealment and fraudulent omission were conflated in Plaintiffs' Complaints and the distinction was not raised or briefed.   Although Plaintiffs admit they captioned their claims as "fraudulent concealement," they now argue they actually made both fraudulent concealment and fraudulent omission claims in their Complaints, and they insist there is an important difference between the two concepts.   Upon review, the Court agrees.

The critical difference between fraudulent concealment and fraudulent omission is that the later does not require an affirmative act of concealment.   Fraud by concealment is defined in the Restatement as:

> One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

Restatement (Second) of Torts, § 550.   On the other hand, fraud by non-disclosure is defined as:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to

disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Id*. at § 551.  As a result of the distinction between fraudulent concealment and non-disclosure claims, many courts do not apply a strict Rule 9(b) analysis to allegations of omissions.  In non-disclosure cases, those courts recognize that plaintiffs do not have to "'specify the time, place, and specific content of an omission as precisely as would a . . . false representation claim'" under Rule 9(b). *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp.2d 942, 961 (N.D. Ohio 2009) (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp.2d 1088, 1098-99 (N.D.

Cal. 2007) (holding the plaintiffs did not have to precisely set forth the time and place of the alleged fraudulent omission in their claim that the manufacturer had a duty to disclose a known safety defect)); *see also Fravel v. Ford Motor Co.*, 973 F. Supp.2d 651, 656 (W.D. Va. 2013) (recognizing that "a number of courts have held that Rule 9(b)'s particularity requirements are less formulaic with fraud claims based on omissions of material fact" (citations omitted)).   The rationale for this more relaxed standard is that a plaintiff cannot be required "to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur[.]" *Id.*

In reply to Plaintiffs' argument, Ford relies upon *Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D. N.Y. 1997), cited by this Court in its earlier decision.   In *Weaver*, the district court held that, in an omission case, Rule 9(b) requires a plaintiff "to specify the context in which the omission was made and the manner in which it mislead." 172 F.R.D. at 101 (citation omitted). In other words, the district court stated that if a plaintiff is not able "to specify the time and place because no act occurred, the Complaint must still allege what the omissions were, the person responsible for failing to disclose, the context of the omission and the manner in which it mislead Plaintiff, and what Defendant obtained through the fraud." *Id.* (citations omitted).   Under the specific facts of *Weaver*, the district court found the plaintiff pled all but one paragraph "upon information and belief" and he failed "to specifically identify the representations, advertisements, and promotional materials that omitted the reference to the defective child seats" which misled him and upon which he relied. *Id.* at 101-02 (citation omitted).   As a result, the district court dismissed his claim under Rule 9(b).

Although this Court cited *Weaver* in its prior opinion, Plaintiffs had not distinguished their fraudulent concealment claims from their fraudulent omission claims at that time, and the Court did not consider *Weaver* in terms of a pure omission claim.   Upon consideration of the issue, the Court finds that a more relaxed standard under Rule 9(b) should apply in omission cases because a plaintiff cannot be required to specifically identify the precise time, place, and content of an event that did not occur.   Here, Plaintiffs satisfy their burden under the same analysis conducted in *In re Whirlpool*, that is:

> Plaintiffs' fraud-by-omission claims notify . . . [Ford] of the time (never), place (nowhere), and content (nothing) of the alleged msirepresentations, the Plaintiffs' alleged reliance (materiality), the fraudulent scheme ( . . . [Ford's] knowledge of the supposed defects and problems), its fraudulent intent (failure to disclose them), and the resulting injury (overpayment).  Rule 9(b) does not require more.

*In re Whirlpool*, 684 F. Supp.2d at 961 (citation omitted).   Accordingly, the Court finds that, although Plaintiffs did not set forth affirmative acts of fraudulent concealment with the specificity required by Rule 9(b) and they cannot proceed on those claims, Plaintiffs have satisfied the more relaxed standard for fraudulent omission claims.   Therefore, the Court holds, that to the extent Plaintiffs make fraudulent omission claims in Counts 7, 12, 23, 29, 32, 38, and 49 in the *Belville* Complaint, Counts 13, 27, 31, 38, 45, and 56 in the *Smith* Complaint, and Counts 8 and 13 in the *Brandon* Complaint, those claims are not dismissed under Rule 9(b).

## II.
## CONSUMER PROTECTION CLAIMS

Ford also argues that Plaintiffs' individual state consumer protection claims should be dismissed under Rule 9(b) because they sound in fraud.   In support, Ford cites this Court's opinion in *Beattie v. Skyline Corp.*, 906 F. Supp.2d 528 (S.D. W. Va. 2012), in which this Court

stated "[i]f a claim 'sounds in fraud,' despite its label, then Rule 9(b)'s heightened pleading requirements apply . . . . [']When a plaintiff makes an allegation that has the substance of fraud, therefore, he cannot escape the requirements of Rule 9(b) by adding a superficial label of negligence or strict liability.'" 906 F. Supp.2d at 537 (citations omitted).   Although Ford concedes that some consumer protection statutes cover conduct not considered fraudulent or deceptive, Ford contends that the actual consumer protection claims Plaintiffs made in these cases are based upon allegations of fraud.   Therefore, Ford asserts it does not matter that there may be other types of actions that can arise under consumer protection laws because Plaintiffs only have raised fraud-based claims and Rule 9(b) should apply.

Plaintiffs respond that most state consumer protection laws do not require the same elements of proof as common-law fraud, such as intent to induce a consumer or reliance by a consumer upon a misrepresentation.   Thus, at a minimum, it will be necessary for the Court to do a state-by-state analysis of what elements are required and whether the specific plaintiff making a claim under that state law has adequately pled a cause of action.   As a state-by-state analysis has not been done, Plaintiffs argue their consumer protection claims should not be dismissed under Rule 9.

Upon review, the Court agrees with Plaintiffs.   In doing so, the Court does not fault either side for failing to do a state-by-state analysis of each claim.   Such efforts certainly would have exceeded the page limitations imposed on their briefing.   Nevertheless, the Court will not dismiss the consumer protection claims *en masse* based upon limited citations from a few

-12-

individual states.   Given the variability amongst consumer protection laws, this Court will not

make a blanket ruling on this issue.   Accordingly, at this point, the Court will not dismiss

individual state consumer protection claims based upon a Rule 9(b) analysis.[9]

### III.
### COMMON-LAW FRAUD AND
### CONSUMER PROTECTION CLAIMS
### FOR PLAINTIFFS WHO DID NOT
### EXPERIENCE A MANIFESTATION

Ford next argues that Plaintiffs' common-law fraud-based claims and consumer

protection claims should be dismissed for any Plaintiff who has not sustained an unintended

acceleration for the same reason the Court dismissed those Plaintiffs' warranty and unjust

enrichment claims.   In the prior decision, the Court held that those Plaintiffs who never

experienced a sudden unintended acceleration "failed to demonstrate a plausible claim that they

paid more for their vehicles than their actual worth when they have used their vehicles without

incident for many years." *Belville*, ECF No. 88, at 24 & 32.   Thus, the Court held Plaintiffs could

not proceed on those claims because they could not show an injury or damage.

Plaintiffs argue this Court should not extend the warranty and unjust enrichment

analysis to their common-law fraud and consumer protection claims because they have alleged

they suffered diminution in value and overpayment based upon Ford's failure to disclose the

---

[9] There are several statutory claims in the Complaints that are intended to protect
consumers, although not specifically labeled as "Consumer Protection Act" claims such as
Deceptive and Unfair Trade Practice Act claims and Unfair Trade Practice Act claims.   For
purposes of this decision, the Court considers those other statutory-based claims as following
under a broad category of consumer protection laws that this Court is not inclined to dismiss *en
masse*.

defect.   Although the parties conflate the common-law fraud claims with the consumer protection claims, the Court finds it necessary to consider these claims separately.

In support of their position, Plaintiffs cite *In re Building Materials Corp.*, MDL No. 8:11-mn-02000-JMC, Civ. Act. No. 8:12-cv-00789-JMC, 2013 WL 1786406 (D. S.C. April 25, 2013), and *Yost v. Nationstar Mortgage, LLC*, No. 1:13-cv-00745-AWI-SAB, 2013 WL 4828590 (E.D. Cal. Sept. 9, 2013).   In *In re Building Materials Corp.*, a plaintiff filed suit alleging that the shingles he purchased for his house had a latent defect that caused them to prematurely crack. 2013 WL 1786406, at *1.   The plaintiff asserted the manufacturer knew of the defect, but intentionally failed to disclose the defect to consumers. *Id.*   The district court held that, under Georgia law, a plaintiff can recover for purely economic damages (i.e. the cost to replace the defective shingles) for fraud-based misrepresentation claims, even though the economic loss rule would bar such claims under strict liability and negligence theories. *Id.* at **5-6.   Similarly, in *Yost*, the plaintiffs brought an action for monetary damages and equitable relief based upon the defendants' failure to provide them a loan modification and the subsequent loss of their house. 2013 WL 4828590, at **1 & 11.   In ruling on the plaintiffs' fraud-based claims, the district court stated that California's economic loss doctrine does not preclude a fraud claim for "the recovery of purely economic loss because the presence or absence of physical injury makes no difference." *Id.* at *6.   Here, Plaintiffs argue the same analysis should apply to their fraud claims for those who have not experienced a sudden unintended acceleration because they have alleged an economic loss occurred as the result of fraud.

-14-

However, the Court finds *In re Building Materials Corp.* and *Yost* inapposite to the case at hand because in those cases the issue of whether there was an economic loss was never questioned.  The courts merely stated the fraud claims would not be dismissed on the grounds there *was* a pure economic loss.  To the contrary, this Court has held that those Plaintiffs who have never experienced a sudden unintended acceleration have failed to allege a plausible claim of damages (economic loss) under warranty and unjustment enrichment theories.  Without a plausible claim of damages, the Court finds that Plaintiff's common-law fraud claims also fail because damages are an essential element of their causes of action.  In this case, it is not a question of whether the economic loss doctrine would preclude recovery for a purely economic loss in the absence of a physical injury.  Rather, the problem is that Plaintiffs have not plausibly alleged an economic loss where there has been no manifestation of the alleged defect.  As discussed in this Court's previous decision, other courts considering comparable situations have reached the same result. *See Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628-30 (8th Cir. 1999) (affirming the district court's dismissal of the plaintiffs' fraud claims, inter alia, for failing to plead damages where the plaintiffs' brakes never exhibited a defect, and stating that when "a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies"); *Weaver*, 172 F.R.D. at 99 (finding the plaintiff failed to sufficiently plead damages to state a claim for fraud, negligent misrepresentation, and breach of warranty where the plaintiff did not allege the child seat in his vehicle malfunctioned or was defective and finding "[i]t is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own" (internal quotation marks, brackets, and citations omitted)); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657-58 (D. N.J. 1986) (The plaintiff

-15-

alleged his engine is "likely" to leak, but he suffered no actual damages.  The Court held that "[d]amage is a necessary element of both counts—breach of warranty and common law fraud."); *Wilson v. Style Crest Prods., Inc.*, 627 S.E.2d 733, 737 (S.C. 2006) (stating "without an injury or a defect, there has been no diminution in value to support the Homeowner's fraudulent concealment claim").  Accordingly, for those Plaintiffs who have not alleged they have experienced a sudden unintentional acceleration, the Court finds that their common-law fraud claims must be dismissed. These include Counts 7, 12, 29, 32 (except as to Roofwerk's fraudulent omission claim), and 38 in the *Belville* Complaint and Counts 8 and 13 in the *Brandon* Complaint.

Turning to the consumer protection claims, however, the Court declines to dismiss those actions *en masse* for the same reason it declined to dismiss them under Rule 9(b).  There simply is too much variability in the statutes for this Court to broadly declare what must be alleged in order to state a claim.   Thus, at this point, the Court will not dismiss any of the disputed state consumer protection law claims on the grounds that some Plaintiffs have not experienced a sudden unintended acceleration.[10]

### IV.
### STATUTE OF LIMITATIONS
### FOR FRAUD AND CONSUMER PROTECTION CLAIMS

Ford also argues that certain fraud claims and consumer protection claims are barred by the statute of limitations because the Court held in its previous decision that it would

---

[10]Count 23 in the *Belville* Complaint is styled "Fraud by Concealment" and cites a Missouri statutory provision (Mo. Rev. Stat. § 400.2-608).  As it appears to be a statutory claim rather than a common-law claim, the Court will not dismiss Count 23 at this time under either a Rule 9(b) standard or for not having experienced a sudden unintended acceleration.

"not extend the statute of limitations on the basis of fraudulent concealment." *Belville*, ECF No. 88, at 31 (footnote omitted).   However, it is well established that the statute of limitations is an affirmative defense.   Courts testing the sufficiency of a complaint under a Rule 12(b)(6) motion generally cannot rule on the adequacy of an affirmative defense except in rare circumstances where there are sufficient facts alleged on the face of the complaint to reach the issue. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citations omitted).   In addition, "the burden of establishing the affirmative defense rests on the defendant." *Id*.

In this case, Ford utilizes the date of purchase to calculate the statute of limitations for various Plaintiffs and argues their claims must be dismissed for being filed beyond the deadline.   On the other hand, Plaintiffs argue that Ford cannot establish on the face of the Complaints that those Plaintiffs either did or should have discovered a latent defect under the discovery rule.   Although Ford insists the Court should find Plaintiffs have waived any argument that the discovery rule should apply, the Court disagrees and finds the issue timely raised.   Thus, as the statute of limitations is an affirmative defense and the date the statute of limitations began to run for each Plaintiff is a matter of dispute, the Court will not dismiss Plaintiffs' claims on statute of limitations grounds at this time.   The Court reaches the same result with respect to Ford's argument that Plaintiffs Jolene Harris and Shane Mayfield's Product Liability Act under Louisiana law claim (*Brandon*, Compl., Count 12) should be dismissed on statute of limitation grounds.

# V.
## STATUTE OF LIMITATIONS
## FOR CERTAIN WARRANTY
## AND UNJUST ENRICHMENT CLAIMS

Ford argues there are nine warranty claims in which Plaintiffs experienced a sudden unintentional acceleration, but their claims nevertheless should be dismissed because they were filed outside the statute of limitations.   Similarly, Ford argues there are three unjust enrichment claims for Plaintiffs who have experienced a sudden unintended acceleration which should be dismissed for being filed outside the statute of limitations.   Specifically, Ford asserts that Idaho, New Mexico, and Washington do not recognize the discovery rule for breach of warranty claims, and the statute of limitations began to run from the date of delivery irrespective of Plaintiffs' knowledge of the alleged breach.   As Plaintiff Rhoda Jeffers under Idaho law, Plaintiff Robert Agris under New Mexico law, and Plaintiff Shelley Riley under Washington law, all purchased their vehicles more than four years before this action was filed, Ford argues those claims must be dismissed.   Likewise, Ford asserts Plaintiff Timothy Matthews' claim must be dismissed because he did not pled sufficient facts for delayed discovery under California law.    In addition, with respect to the unjust enrichment claims, Ford claims that Plaintiff Robert Agris under New Mexico law, Plaintiff John E. Grimaldi under Texas law, and Plaintiff Shelley Riley under Washington law, all filed outside the statute of limitations from the date of purchase. Plaintiffs did not respond to any of these specific state-law arguments, and the Court is not inclined to rule on the issue based upon the limited citations provided by Ford.   Therefore, given the lack

of briefing and the affirmative nature of this defense, the Court will not dismiss these claims on statute of limitations grounds.[11]

## VI.
## PRE-SUIT NOTICE AND
## WARRANTY CLAIMS

Ford further argues that nine of the warranty-based claims must be dismissed for failing to provide Ford with pre-suit notice and an opportunity to correct the alleged problems prior to bringing an action in court.   Ford asserts that such pre-suit notice is required in South Carolina, California, Minnesota, New Mexico, and Texas.   On the other hand, Plaintiffs insist Ford had actual knowledge of the problem and they also provided Ford with reasonable pre-suit notice.   As a factual issue exists as to the existence and adequacy of notice, the Court finds the issue ill-suited for resolution under Rule 12(b).   Therefore, the Court denies Ford's motion to dismiss on pre-suit notice grounds.   In addition, as the Court has declined to dismiss the warranty claims on either statute of limitations or pre-suit notice grounds, Plaintiffs' Magnuson-Moss Warranty Act claims based upon those warranty claims also survive dismissal.

---

[11]Ford argues the Court should dismiss these unjust enrichment claims for the same reasons the Court dismissed Plaintiffs David H. and Inez A. Pattons' unjust enrichment claim.   In the *Belville* Complaint, the Pattons alleged they purchased a used Ford vehicle in 2009 in Virginia. *Belville* Compl at ¶¶65-66.   As the claim could not be tolled based upon fraudulent concealment, the Court found it fell outside Virginia's three-year statute of limitations for unjust enrichment claims. *Belville*, ECF No. 88, at 32. Although the Pattons alleged they experienced sudden unintended accelerations in the Complaint, they did not assert they took the car to a Ford dealer to have it repaired. *Belville* Compl., at ¶¶65-68 & Count 51.   In contrast, Plaintiffs Grimaldi and Riley both assert that, after they experienced a sudden unintended acceleration, they asked Ford to repair the problem, but Ford denied a problem existed. *Smith* Compl., at ¶¶ 64 & 68.   Plaintiff Agris also said he took his vehicle to a Ford dealership and was told there was a problem and Ford "cleaned the throttle body and reprogrammed the electronic throttle control, but did not update the vehicle with a BOA or other failsafe[.]" *Id.* at ¶ 57.   At this point, the Court will not rule on whether these facts tolled the statute of limitations for these three Plaintiffs.

## VII.
## REDHIBITION CLAIM
## OF JOLENE HARRIS

In this Court's prior decision, it granted Ford's motion to dismiss the warranty claims for those Plaintiffs who have not experienced a sudden unintended acceleration. *Belville,* ECF No. 88, at 24.   However, Plaintiff Jolene Harris insists that her redhibition claim arising under Louisiana law (*Brandon* Compl., Count 11)[12] survives this Court's decision, despite the fact that she did not allege any instances of sudden acceleration.   Under Louisiana law, "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520. "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect" or "when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.*

Plaintiffs correctly highlight that manifestation of a defect is not necessary to sustain a redhibition claim. *See e.g., In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F.Supp. 388, 397 (E.D. La. 1997) ("[T]he central element underlying a claim for redhibition is that the alleged defect is latent, i.e., it could not have been discovered by a reasonably prudent buyer"). However, while no manifestation of a defect is required to sustain a redhibition claim, Plaintiffs are required to show that, "judged by the reasonable person standard, had . . . [plaintiffs] known of the defect, . . . [plaintiffs] would never have purchased . . . [the product]," *Pratt v. Himel Marine,*

---

[12]The parties mistakenly refer to Plaintiff Harris's redhibition claim as "*Brandon* Count 10," but the redhibition claim is at Count 11. Count 10 of the *Brandon* complaint alleges a violation of the Louisiana Products Liability Act on behalf of Plaintiffs Harris and Mayfield.

*Inc.*, 823 So.2d 394, 403 (La. Ct. App. 2002), or "that they would have purchased the . . . [vehicle] but for a lesser price." *Stroderd v. Yamaha Motor Corp., U.S.A.*, No. Civ. A. 04-3040, 2005 WL 2037419 at \*3 (E.D. La. Aug. 4, 2005) (citing *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL 991, 1995 WL 491155 at \*9 (E.D. La. Aug. 15, 1995)).   Ford argues that because this Court already has determined that Plaintiffs not alleging any instances of sudden acceleration did not overpay for their vehicles, Plaintiff Harris's redhibition necessarily fails.   The Court agrees. As it already has determined that there is not a plausible claim that Plaintiff Harris paid more for the vehicle than its actual worth because there has not been a manifestation, it cannot be inferred that, judged by a reasonable person standard, she only would have bought the vehicle for a lower price or never bought the vehicle at all.   Accordingly, Plaintiff Harris's redhibition claim is dismissed.

### VIII.
### IMPLIED WARRANTY AND
### NEGLIGENCE CLAIM OF
### JONATHAN POMA AND
### NEGLIGENCE CLAIM OF TONY BURNETT

Ford argues that under Ohio law "a plaintiff has not suffered a present injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other, identical products." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, No. 1:02CV00013, 2005 WL 6778678, at \*11 (N.D. Ohio Feb. 22, 2005) (citations omitted).   Although in their Responsive Brief on Disputed Claims, Plaintiffs agreed that Plaintiff Poma's breach of implied warranty in tort claim under Ohio law (*Smith* Compl., Count 48) should be dismissed (*Belville*, ECF No. 121, at 12 n.9), they subsequently filed another

response in which they argue Plaintiff Poma's implied warranty in tort claim survives under Ohio law, despite the fact that he did not allege any instances of sudden acceleration. *Belville*, ECF No. 138.

Plaintiffs argue that implied warranty in tort is treated differently under Ohio law than an implied warranty of merchantability.  In support, they cite *In re Porsche Cars North America, Inc.*, 880 F. Supp.2d 801, 819-20 (S.D. Ohio 2012), where the court held that only an implied warranty of merchantability can serve as the basis of a claim for a breach of implied warranty under Magnuson-Moss because there is privity of contract.  Plaintiffs also cite *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838 (6th Cir. 2013), where on a class certification issue, the Sixth Circuit affirmed the district court's decision to certify a class of all owners of specific front-loading washing machines where it was alleged the plaintiffs suffered an immediate injury when they purchased the washer because of a design defect that decreased its value even where mold had not yet manifested.   However, as the *Porsche* case merely finds that an implied warranty of merchantability is different in some respects than an implied warranty in tort and the *Whirlpool* case involved whether a class could be certified, the Court finds that neither of these cases addresses the issue before this Court.

Plaintiffs also cite in *In re Ford Motor Co., Spark Plug and 3-Valve Engine Products Liability Litigation*, No. 1:12-md-2316, 2014 WL 3778592 (N.D. Ohio July 30, 2014), which involved defective spark plugs. 2014 WL 3778592, at *1.   The plaintiffs did not claim the spark plugs did not work; rather, they alleged a defect caused deposits to lock or seal the plugs into

place, making it difficult to remove them.   Ford moved for summary judgment on three plaintiffs' implied warranty in tort claims, insisting that the evidence shows the spark plugs performed during their entire useful life. *Id*. at *42.   The plaintiffs argued, however, there was a genuine issue of material fact as to whether the defect interfered with their use and enjoyment of their vehicles, when it took multiple days to replace the spark plugs and they had to pay up to $1,112.50 to have them replaced. *Id*. at 43.   Based upon these facts, the court denied summary judgment for implied warranty in tort. *Id*. at 43 & 47.[13]

The Court finds that the Ford spark plug case is distinguishable from this case in that Ford acknowledged the "deposits affect the plugs at no later than 10,000 miles[.]" *Id*. at *1. Thus, although the vehicles may have continued to work, the defect had manifested itself in terms of creating deposits.   To the contrary, in this case, Plaintiff Poma never experienced a manifestation of the alleged defect.   Although Plaintiffs are correct that the district court in *Gentek Building Products, Inc.*, relied upon by Ford, did not specifically consider an implied warranty in tort claim, it did hold that, absent Ohio law stating differently, the plaintiff's claims of future contract, express warranty, implied warranty, and tort damages were subject to summary judgment "without some evidence of a present injury that would give rise to future damages."

---

[13]Curiously, the district court stated the plaintiffs drove their vehicles for six years without any problems and they did "not allege their spark plugs ever gave them a problem, that their vehicles were not safe or their vehicles were not reliable." *Id*. at 42.   However, one of those plaintiffs (Mark Jennings) alleged his truck was "'running bad,' in that the engine was 'missing' and gas mileage was 'falling off' . . . [and he] was told that the spark plugs were misfiring and needed to be replaced." *Id*. at 11.   When he later had the spark plugs replaced, he was "told that all eight plugs broke during the tune-up and he would have to pay for an hour of additional labor time for each broken plug.   Jennings was ultimately charged $1112.50[.]" *Id*. at 11.

2005 WL 6778678, at **11-12.   The Court finds this reasoning sound with respect to an implied warranty in tort (*Smith* Compl., Count 48) for the same reasons it dismissed the other warranty claims absent a manifestation.   Thus, the Court dismisses Plaintiff Poma's claim.   Likewise, without any manifestation or injury, Plaintiff Poma's negligence claim (*Smith* Compl., Count 49) and Plaintiff Tony Burnett's negligence claim (*Smith* Compl., Count 8) also fail because damage is a necessary element of the claims.

## IX.
## CONCLUSION

Accordingly, for the foregoing reasons, the following counts are dismissed in the *Belville* Complaint:

> Counts 1 (as to all Plaintiffs except Plaintiffs Roofwerks and David and Inez Patton); 2, 3, 4, 6, 7, 10, 11, 12, 14, 15, 16, 17, 19, 21, 22, 24, 26, 27, 28, 29, 30 (as to Quintin Williams), 32 (as to Quintin Williams and as to Roofwerks' fraudulent concealment claim), 33 (as to Quintin Williams), 36, 37, 38, 39, 41, 42, 43, 44, 45, 49 (as to fraudulent concealment), 51, 53, and 54.

Therefore, the following counts remain pending in the *Belville* Complaint:

> Counts 1 (as to Plaintiffs Roofwerks and David and Inez Patton), 5, 8, 9, 13, 18, 20, 23, 25, 30, 31, 32 (as to Roofwerks' fraud by omission claim), 33 (as to Roofwerks), 34, 35, 40, 46, 47, 48, 49 (as to fraudulent omission), 50, and 52.

In the *Smith* Complaint, the following counts are dismissed:

> Counts 1 (as to all Plaintiffs except Samuel Hairston, Mary Phippen, Timothy Matthews, Rhoda Jeffers, Robert Agris, John Grimaldi, and Shelley Riley), 2, 3, 4, 5, 7, 8, 9, 13 (as to fraudulent concealment), 16, 17, 18, 19, 22, 26, 27 (as to fraudulent concealment), 31 (as to fraudulent concealment), 34, 38 (as to fraudulent concealment), 40, 45 (as to fraudulent concealment), 47, 48, 49, 56 (as to fraudulent concealment), 58, 59, 60, 61, and 62.

The following counts remain in *Smith*:

> Counts 1 (as to Plaintiffs Samuel Hairston, Mary Phippen, Timothy Matthews, Rhoda Jeffers, Robert Agris, John Grimaldi, and Shelley Riley), 6, 10, 11, 12, 13 (as to fraudulent omission), 14, 15, 20, 21, 23, 24, 25, 27 (as to fraudulent omission), 28, 29, 30, 31 (as to fraudulent omission), 32, 33, 35, 36, 37, 38 (as to fraudulent omission), 39, 41, 42, 43, 44, 45 (as to fraudulent omission), 46, 50, 51, 52, 53, 54, 55, 56 (as to fraudulent omission), and 57.

In the *Brandon* Complaint, the following counts are dismissed:

> Counts 1 (as to all Plaintiffs except Charles T. Burd, Shane Mayfield, and Andrea Martin), 2 (as to Robert Brandon), 3 (as to Robert Brandon), 4, 6, 7, 8, 9, 11 (as to Jolene Harris), 13 (as to Jolene Harris's claims for fraudulent concealment and omission and as to Shane Mayfield's claim from fraudulent concealment), 14 (as to Jolene Harris), 15 (as to Thomas Porter), 16, 20, and 21.

The following counts remain in *Brandon*:

> Counts 1 (as to Plaintiffs Charles T. Burd, Shane Mayfield, and Andrea Martin), 2 (as to Charles T. Burd), 3 (as to Charles T. Burd), 5, 10, 11 (as to Shane Mayfield), 12, 13 (as to Shane Mayfield's fraudulent omission claim), 14 (as to Shane Mayfield), 15 (as to Andrea Martin), 17, 18, and 19.

As a result, the following Plaintiffs no longer have claims pending in these actions, and the Court **DIRECTS** they be terminated by the Clerk of this Court: In *Belville*, Lance R. Belville, Donald C. Carr, Mindi and Stanley Stewart, and Jill Durant; in *Smith*, Pamela D. Smith, Betty J. Trinque, Carolyn Chase, Sharon Shaffer, and Greg Peet;[14] and in *Brandon*, Robert Brandon.  As the lead plaintiffs have been dismissed in each of the three cases, the next named remaining plaintiffs in the three cases shall be designated as the lead plaintiff in the style of each case.  Lance R. Belville

---

[14]As previously mentioned, Plaintiffs Chase and Peet were dismissed voluntarily.

shall now be replaced by Dean Richardson, Pamela D. Smith shall now be replaced by Tony Burnett, and Robert Brandon shall be replaced by Charles T. Burd.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        November 14, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE

-26-