IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES JOHNSON, et al.,

TONY BURNETT, et al.,

and

CHARLES T. BURD, et al.,

       Plaintiffs,

v.

FORD MOTOR COMPANY,

       Defendant.

Case No.: 3:13-cv-06529
Case No.: 3:13-cv-14207
Case No.: 3:13-cv-20976

## MEMORANDUM OPINION and ORDER

Pending before the Court is Plaintiffs' Motion to Sanction Ford Motor Company Regarding Engle Documents. (ECF No. 537).[1] Defendant Ford Motor Company ("Ford") has filed a memorandum in opposition to the motion, (ECF No. 555), and Plaintiffs have replied. (ECF No. 568). On August 18, 2015, the Court heard oral argument on the motion. (ECF No. at 591 at 56-105).

For the reasons that follow, the Court **GRANTS,** in part, and **DENIES**, in part,

---

[1] The docket numbers referenced in this Order are taken from the lead case, *Johnson v. Ford Motor Company,* Case No.: 3:13-cv-06529. Corresponding motions to sanction Ford over the Engle documents are found at ECF No. 452 in *Burnett v. Ford Motor Company,* Case No.: 3:13-cv-14207, and ECF No. 411 in *Burd v. Ford Motor Company,* Case No.: 3:13-cv-20976.

1

Plaintiffs' Motion to Sanction Ford Regarding Engle documents. (ECF No. 537).[2]

I. **Relevant Facts**

This putative class action involves alleged events of sudden unintended acceleration in certain Ford vehicles manufactured between 2002 and 2010. In particular, Plaintiffs claim that their vehicles were equipped with defective electronic throttle control ("ETC") systems, which were not fault tolerant, resulting in open throttle events during which the drivers of the vehicles lacked the ability to control the throttles. Plaintiffs assert that the mechanisms causing the throttles to open unexpectedly were numerous; they included electromagnetic interference, resistive shorts, and other voltage and resistance fluctuations; and these issues were known to Ford. Despite having knowledge of the potential for sudden unexpected acceleration, Ford allegedly failed to properly design the ETC system to correct the events when they occurred, and further neglected to install fail-safes, such as a Brake Over Accelerator system, which would allow the drivers to physically prevent or mitigate sudden acceleration.

During discovery, Ford identified Mr. James Engle as a key employee with relevant information regarding the ETC system and allegations of sudden unexpected acceleration in Ford vehicles. Ford described Mr. Engle as being familiar with the general design of the ETC system and as one of only two individuals tasked with investigating claims of sudden unintended acceleration. In addition, Ford designated Mr. Engle as a corporate representative to address multiple topics for purposes of a Rule 30(b)(6) deposition. At the deposition, Mr. Engle testified that he had conducted

---

[2] This Order likewise **GRANTS**, in part, and **DENIES**, in part, ECF No. 452 in *Burnett v. Ford Motor Company,* Case No.: 3:13-cv-14207, and ECF No. 411 in *Burd v. Ford Motor Company,* Case No.: 3:13-cv-20976.

approximately thirty investigations into claims that Ford vehicles equipped with an ETC system suddenly and unexpectedly accelerated. He also confirmed that he was the primary investigator of unintended acceleration events in ETC-equipped vehicles.

This motion arises from Plaintiffs' belief that Ford has failed to conduct a proper search of Mr. Engle's custodial file and has improperly withheld materials reflecting Mr. Engle's investigations. Secondary to those assertions, Plaintiffs complain that Ford has failed to provide a privilege log properly identifying relevant documents that have been withheld under the guise of a "presumptive" attorney-client privilege, or a work product protection. In addition, Plaintiffs indicate that Ford has not been timely in its productions, has provided inconsistent information regarding the existence of documents, and has not insisted that Mr. Engle conduct an adequate search of his files.

## II. Discussion

### A. Adequacy of Production

Plaintiffs argue that the production of documents pertaining to Mr. Engle has been insufficient. In support, they note the following deficiencies in productions allegedly containing Engle documents:

1. The first two productions included only deposition transcripts;

2. A purported "Engle" production on October 31, 2014 contained no metadata including Mr. Engle's name; the cover letter did not mention Mr. Engle; and Mr. Engle was not listed as a custodian of any of the documents;

3. A production on November 26, 2014, related to internal investigations by Mr. Engle, contained only four documents consisting of 228 pages and relating to only three of his thirty investigations.

4. Four supplemental productions in 2015 were sparse and primarily included public records, like deposition transcripts and expert reports.

3

5. The metadata of only one produced document shows Mr. Engle as its custodian.

6. From the meet and confer sessions between the parties, Plaintiffs believe that Ford is withholding the vast majority of Mr. Engle's documents under a claim of a privilege; however, Ford has refused to supply a privilege log.

Given the integral role played by Mr. Engle in investigating events of unintended acceleration, Plaintiffs contend that the meager quantity of documents attributed to Mr. Engle is, by itself, evidence of bad faith discovery tactics on the part of Ford.

Ford responds that its production of Mr. Engle's documents is complete. Ford has supplied Plaintiffs with all "relevant, non-privileged documents" from the open and closed litigation files maintained by Ford's Office of the General Counsel reflecting Mr. Engle's investigations, as well as the entirety of the non-litigation files involving Mr. Engle's investigations of sudden unintended acceleration. Ford concedes that it has not logged the remaining portions of Mr. Engle's files on a privilege log, but maintains that the documents are either irrelevant, or are "presumptively privileged" as attorney-client communications. (ECF No. 555 at 2). Ford further asserts that "documents and communications generated or received by Mr. Engle in connection with prior or pending litigation involving allegations of SUA [sudden unintended acceleration] in class vehicles is beyond the scope of discovery as defined by Rule 26(b)(1)" and, thus, need not be described on a privilege log. (*Id.*). With respect to Plaintiffs' accusation that Mr. Engle has not conducted a thorough search of his files (particularly, his e-mail communications) and Ford has not undertaken its own search, Ford argues that Mr. Engle knows what documents are in his possession and confirmed at deposition that he does not have any other relevant materials to provide to Plaintiffs. Mr. Engle corroborates Ford's position in a subsequently-filed

4

declaration, (ECF No. 589), stating that he has checked his files for non-litigation matters involving sudden unintended acceleration in putative class vehicles and could only find a few reports that he understood had been supplied to Plaintiffs. Mr. Engle adds that, to his knowledge, all of the documents he located pertaining to litigation files, both open and closed, were given to counsel and subsequently provided to Plaintiffs. (*Id.*).

In their reply, Plaintiffs take issue with Ford's "self-proclaimed 'presumptive privilege,'" stating that such a privilege does not apply to the type of documents being withheld by Ford. (ECF No. 568 at 5-12). Plaintiffs insist that Ford is required to identify these documents on a privilege log, and its failure to do so has resulted in a waiver of the privilege or protection asserted. Once again, Plaintiffs argue that the scant production of documents attributable to Mr. Engle attests to Ford's substandard collection process.

Addressing first Plaintiffs' contention that the small quantity of produced documents directly attributable to Mr. Engle is evidence of Ford's non-compliance with discovery mandates, the undersigned recognizes "that even an informed suspicion that additional non-privileged documents exist … cannot alone support an order compelling production of documents." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 (M.D.N.C. 2010) (collecting cases). It follows, then, that a suspicion cannot justify the award of sanctions. Here, Plaintiffs claim that Ford has made an incomplete production of documents related to Mr. Engle. Ford disputes Plaintiffs' claim, indicating that it has produced all non-privileged and relevant documents. The *Kinetic* Court described the dilemma faced by judicial officers in this type of situation, stating:

> [T]o the extent Plaintiffs allege that [Defendant] has not produced all documents, the Court notes the difficulty of the decision it faces. On one hand, Plaintiffs maintain that [Defendant's] document production remains incomplete, yet on the other [Defendant] contends that it has produced all that it can produce. Admittedly, there is no way for the Court to independently verify whether [Defendant] possesses the documents Plaintiffs allege exist and whether [Defendant] has in fact produced all relevant documents....

*Id.* at 251-52 (quoting *Ropak Corp. v. Plastican, Inc.,* No. 04C5422, 2006 WL 2385297, at *5 (N.D.Ill. Aug.15, 2006)). Thus, the best the court can do is bear in mind the parties' inconsistent positions and any troubling discrepancies, and require the producing party to provide information on the steps it took to locate, identify, collect, and produce responsive documents. *Id.* at 252. Plaintiffs have already acquired some knowledge of Ford's efforts in responding to discovery and will have the opportunity to depose a corporate designee on Ford's document retention, search, and production as those processes pertain to this litigation. Consequently, at present, there is little more the Court can do to address the matter.

As to the parties' disagreement regarding a "presumptive privilege," the undersigned is not persuaded that such a privilege applies to documents collected in prior litigation. *See, e.g., Beyer v. Medico Ins. Group,* 266 F.R.D. 333, 338 (D.S.D. 2009) (holding that non-privileged documents relating to prior litigation be produced, along with a privilege log for materials that are withheld). Indeed, none of the cases cited by Ford addresses the circumstances before this Court. Although Ford makes a logical point that creating a privilege log for attorney-client communications in unrelated cases is burdensome, Ford again fails to provide any of the factual support necessary to succeed on a burdensomeness argument. *See Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only

consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome"). Moreover, with only twenty seven files at issue, the burden associated with creating a log is unlikely to be heavy; particularly, when Plaintiffs have agreed to an abbreviated log. (*See* ECF No. 591 at 64). Therefore, the Court **GRANTS** Plaintiffs' motion for sanctions to the extent that Ford is hereby compelled to produce a log of the Engle documents that have been withheld based upon a privilege or protection. Ford is **ORDERED** to supply the privilege log within **twenty (20) days** of the date of this Order.

### B. Additional Sanctions

In addition to reasonable expenses, Plaintiffs seek sanctions against Ford, including a stay of the litigation until Ford runs specific word searches on Mr. Engle's documents, an order finding Ford in contempt of court, and a monetary award against Ford in favor of Plaintiffs. Plaintiffs argue that awarding these sanctions is the only way to force Ford to approach discovery in a good faith manner. In response, Ford asserts that none of these sanctions is appropriate when applying the four-factor

7

analysis outlined by the United States Court of Appeals for the Fourth Circuit in *Anderson v. Found. for Advancement, Educ., & Employment of Am. Indians,* 155 F.3d 500, 504 (4th Cir. 1998).

Other than compelling the production of a privilege log, the undersigned **DENIES** the motion for sanctions, declining to award the requested relief for several reasons.[3] First, Plaintiffs were not entirely successful in demonstrating a basis for the relief requested in their motion for sanctions. Ford claims that it has produced all relevant, non-privileged documents relating to Mr. Engle's investigations, and there is no compelling evidence before the Court to contradict that representation. Second, much of Plaintiffs' dissatisfaction with discovery arises from Ford's failure to run adequate word searches on its employees' (including Mr. Engle's) electronic files. For months, the undersigned has encouraged, prodded, and pressured the parties to agree on search terms; even threatening to hire a third-party expert to develop the terms if the parties could not resolve their issues expeditiously. Despite the Court's repeated urging, the parties only recently agreed to terms. Consequently, the delay in discovery occasioned by the lack of search terms can be attributed to both parties. Finally, although the cases have been pending for over two years, the issues are complex and discovery is still ongoing. Accordingly, Plaintiffs cannot demonstrate prejudice to a level that would justify the sanctions requested.

---

[3] Arguably, Plaintiffs' motion for sanctions is premature as Ford has not failed to comply with a written court order; failed to disclose or supplement answers; failed to attend a deposition, provide answers to discovery, or allow an inspection; or failed to participate in a discovery plan. Plaintiffs frame their motion as a motion for sanctions arising from Ford's failure to follow the Court's oral order to produce documents or provide a privilege log regarding Mr. Engle's inspections. However, as the undersigned explained at the hearing, that order pertained specifically to investigative documents and did not explicitly take into account alleged attorney-client communications prepared in prior litigation. (ECF No. 591 at 63).

On the other hand, Plaintiffs are entitled to an award of reasonable expenses. While Plaintiffs were not successful on their request for a stay, for a finding of contempt, for a monetary award, and for word-specific searches, they did succeed on their request for a privilege log. Ford's explanations for failing to provide a log are unavailing, and its failure to move for a protective order, or properly support an argument of burdensomeness, caused Plaintiffs to file and prosecute the motion to sanction. Therefore, it is hereby **ORDERED** that Plaintiffs shall have through and including **September 25, 2015** in which to file an affidavit of reasonable fees and costs incurred in making and arguing their motion related to Ford's failure to provide a privilege log, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009). Within **fourteen (14) days** after Plaintiffs have filed the aforementioned documents, Ford shall file a response either agreeing to the amount requested, or objecting to specific fees or costs. Ford is hereby notified that the failure to file a response shall be deemed an agreement with the representations and arguments of Plaintiffs.

The Clerk is directed to file a copy of this Order in all three actions and provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** September 11, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge

9