**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **CHARLES JOHNSON**, *et al.*, **individually and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | **FORD MOTOR COMPANY'S** |
| | ) | **OBJECTIONS TO MAGISTRATE** |
| Plaintiffs, | ) | **JUDGE'S ORDERS** |
| **v.** | ) | |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | **CIVIL ACTION NO.:** |
| | ) | **3:13-cv-6529** |
| Defendant. | ) | **Honorable Robert C. Chambers** |
| | ) | |
| | ) | |

Defendant Ford Motor Company ("Ford") moves under Federal Rule of Civil Procedure 72(a) to set aside Magistrate Judge Eifert's July 8 and September 11 orders (Dkt. Nos. 563 and 620) directing Ford to produce for deposition a corporate representative prepared to testify regarding Ford's discovery processes in this case.[1]

## INTRODUCTION

Since the earliest days of this suit, Ford has invested significant time and effort to comply with Plaintiffs' extensive discovery demands. Those demands that have shifted frequently as Plaintiffs try to articulate a common vehicle-related cause underlying their broad defect theory in Ford's vehicles—a defect that, by all accounts, does not exist. Ford's efforts have included producing over 1 million pages of documents; processing over 325 gigabytes of data to run search terms across; responding to 275 requests for production, 142 requests for admission, and

---

[1] Although objections to a magistrate judge's order are generally due 14 days following the order's entry, Fed. R. Civ. P. 72(a), that time is tolled when the objector seeks reconsideration from the magistrate judge. *See, e.g.*, *Epperly v. Lehmann Co.*, 161 F.R.D. 72, 74 (S.D. Ind. 1994); *Comeau v. Rupp*, 142 F.R.D. 683, 687 (D. Kan. 1992).

29 interrogatories; and producing 19 current or former Ford employees for deposition. Ford is also preparing a secure room for Plaintiffs to review Ford's ETC system source code.

Yet rather than appreciate Ford's Herculean efforts, Plaintiffs have insisted on more and more disclosure. In December 2014, before any significant discovery was underway, Plaintiffs demanded a corporate deponent to testify regarding Ford's discovery-response process. Plaintiffs have also complained that Ford has produced fewer documents than they expect and more slowly than they prefer. But Ford is in the business of building cars, not defending lawsuits. Ford uses multiple unique databases and systems to store its information: There is no Google-like function to query all of Ford's data and information sources simultaneously. Instead, Ford's search for responsive documents to Plaintiffs' broad requests and review of those documents for responsiveness and privilege takes time and effort from Ford's counsel and a multitude of Ford employees alike.

Judge Eifert nonetheless concluded that Ford should be more transparent regarding the steps it was taking to comply with Plaintiffs' discovery demands. Ford did not object to that portion of the order; Ford promptly sent a detailed letter to Plaintiffs' counsel outlining the custodians it searched, the topics of their searches, and a general description of the process used to select documents. In addition, Ford had previously agreed to word searches of the full hard drives of 12 key custodians, as well as 6 additional employees selected by Plaintiffs, which is ongoing. But Judge Eifert's orders required even more than that: They directed Ford to produce Plaintiffs' requested corporate deponent to answer questions regarding Ford's discovery-compliance process—in essence, discovery about discovery.

The orders were legally erroneous and an abuse of discretion, and the Court should set them aside. They were legally erroneous because courts require a showing of discovery

noncompliance before allowing discovery on discovery—not just speculative, subjective complaints from the requesting party that not enough documents have been produced.  That is particularly true where, as here, documents are still being searched using search terms and the productions are not complete.  The permissibility of discovery on discovery turns on Ford's discovery compliance, so the proper time to consider it is when discovery is complete—not before.  That is particularly true given that Judge Eifert just ordered additional, significant discovery that no doubt will be the source of further questions from Plaintiffs.  *See* Dkt. No. 627.

The July 8 and September 11 orders were also an abuse of discretion because they would require a single Ford corporate designee to learn the details of the individual searches performed by over 100 different document custodians and the search methodology for close to a dozen different databases.  That is information no one human can retain.  What's more, this discovery is entirely unnecessary.  Plaintiffs can obtain the same information they seek about Ford's discovery processes directly from Ford's counsel.  The Court should intervene.

## STATEMENT OF FACTS

**Plaintiffs' Shifting Claims And Discovery Requests.**  Plaintiffs have sued Ford, alleging that 34 different vehicle models manufactured over a nine-year time period are defective because they have an Electronic Throttle Control (ETC) system that is not "fault tolerant."  That is, Plaintiffs allege that Ford's system cannot detect multiple simultaneous faults, which can allegedly result in sudden, unintended acceleration.  Dkt. No. 563 at 2.

Legally, not every document in Ford's possession referencing the ETC system is discoverable; Plaintiffs are allowed discovery only of materials that are "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  And from a practical standpoint, the ETC system in Ford's vehicles is incredibly complex, with its design, development and implementation taking

place over more than 10 years and involving hundreds of Ford employees and multiple vehicle systems.  To identify the Ford employees most likely to have knowledge relevant to Plaintiffs' claims, and to respond to Plaintiffs' discovery requests, Ford needs to understand precisely what vehicle components Plaintiffs' contend are responsible for their alleged defect.

Plaintiffs, however, have never identified a specific cause or component of the ETC system underlying their allegations.  Their discovery requests have focused on every conceivable aspect of the ETC system, including the physical components; Ford's change from the use of a three to a two track accelerator pedal sensor system in 2008; the ETC monitor; electromagnetic compatibility and interference; floor mats; accelerator pedal spacing and height; Ford's 2010 stuck-pedal Brake Override Accelerator (BOA) feature; Ford's slow-e BOA failure mode effects management system; ETC system wiring; and the ETC system's computer source code.

This wide-ranging discovery in search of an underlying cause has resulted in increasingly demanding and voluminous discovery requests from Plaintiffs and concomitant searches for and production of documents by Ford.  In total, Plaintiffs have served 446 individual discovery demands, including 275 requests for production, 142 requests for admissions, and 29 interrogatories.  And when Plaintiffs specifically identified a component or a system, Ford responded with the production of targeted information.  For example, when Plaintiffs sought information about Ford's 2010 development of a stuck-pedal BOA feature, Ford produced documents regarding the feature's design, development and implementation, and later supplemented its production with more documents from additional custodians at Plaintiffs' request.  But as Plaintiffs' requests grew to encompass practically the entire ETC system in all 34 vehicles models over nine years, Ford has had to dedicate more and more resources to comply.

Ford's efforts have succeeded. Ford has produced over 33,000 documents, totaling over 1.3 million pages. And production is ongoing. Ford has collected the hard-drives of 18 custodians, and extracted over 325 gigabytes of data. Dkt. No. 577-1 at 5. Ford is in the process of word-searching that data, reviewing it, and producing responsive non-privileged documents. *Id.*

Ford has also interviewed 128 other employees and has produced documents from over 60 of them. *Id.* at 3. For these 128 custodians, Ford used a targeted-collection approach designed to maximize the recovery of relevant, non-privileged documents, which would ultimately streamline the discovery process and get documents identified, reviewed and produced more quickly and efficiently. *Id.* Ford's in-house and outside counsel identified relevant Ford employees, briefed each custodian regarding the nature of Plaintiff's claims and discovery requests, and with the help of Ford's Digital Forensics team ensured that the custodian searched all possible locations for responsive documents. *Id.* Ford's counsel then reviewed the collected documents for responsiveness and privilege, and produced them to Plaintiffs. *Id.* at 4.

**Plaintiffs' Objections To Ford's Exhaustive Collection Efforts.** Plaintiffs in December 2014—just as discovery was getting underway—served Ford with a Rule 30(b)(6) deposition notice. The notice requested a corporate deponent to testify regarding the "identity of the custodians of the documents produced by Ford in this litigation and the process by which the custodians reviewed his or her records and e-mails to acquire the responsive documents requested." Dkt. No. 438-1 at 1.

Plaintiffs never articulated why such a deposition was necessary so early in discovery, and they have struggled to explain why it is necessary even today. Plaintiffs, for instance, have largely no complaints about the ETC-system design-and-development documents Ford has

produced to date.  And Plaintiffs have taken 19 depositions where they have been able to question Ford's custodians about their record-creation practices.

Instead, Plaintiffs have complained about Ford's e-mail productions.  Primarily, Plaintiffs theorize that Ford could not be looking hard enough for relevant e-mail because only a limited number of custodians appeared in Plaintiffs' metadata searches, and many of those custodians produced only a few documents.  Dkt. No. 563 at 7.  Ford pointed out Plaintiffs' imprecise discovery requests were leading to dragnet searches that returned mostly unresponsive documents.  *Id.*  Moreover, many of Ford's custodians simply opted to speak face-to-face about the issues on which Plaintiffs had requested discovery, rather than send e-mails.  *Id.* at 8.  There was nothing nefarious about the lack of e-mails.

**Ford's Motion to Quash and The Initial July 8 Order.**  Ford therefore moved to quash Plaintiffs' deposition notice as to Ford's discovery procedures.  Dkt. No. 438.  Ford argued that its custodian-identification and search strategies were work-product protected; that Plaintiffs' requests were impermissible "discovery on discovery"; and that the burden of preparing a corporate designee would far outweigh its usefulness.  Dkt. No. 438 at 5-11, 15-17.  Plaintiffs, in turn, cross-moved to forbid what they characterized as Ford's "self-selection" process of document collection in favor of a Plaintiff-driven word-search strategy.  Dkt. No. 476 at 3-4.

Judge Eifert denied both motions in a July 8 order.  Dkt. No. 563.  The July 8 order concluded that modern principles of "[c]ooperation in a transparent discovery process" rendered Ford's objections to " 'discovery on discovery' and 'non-merits' discovery . . . outmoded and unpersuasive."  *Id.* at 17, 19.  The order further viewed Ford's assertion of work-product protection as "lead[ing] to skepticism about the thoroughness and accuracy" of Ford's

productions.  *Id.* at 19.  And it concluded that Ford's custodian-identification and document-selection strategies could be disclosed without divulging work-product materials.  *Id.* at 20-21.

The order also rejected Ford's arguments regarding the burden of preparing a deponent. The order reasoned that if Ford had queried documents from 20 custodians, it would not be burdensome to prepare a designee to testify about each.  *Id.* at 22.  But it admitted that "the task grows in difficulty as the number of custodians and search terms increase" and that more custodians could change its analysis.  *Id.*  Yet even though Ford represented that it collected from over 100 custodians, Dkt. No. 529 at 4, the order found that Ford had not provided specific details as to the burden of production.  Dkt No. 563 at 22.

As for Plaintiffs' cross-motion, the July 8 order agreed that a "more transparent process" was warranted.  *Id.* at 23.  But it denied as "premature" Plaintiffs' motion for a Plaintiff-driven search process, leaving it for further consultation between the parties.  *Id.*  The order instead directed Ford to disclose its collection methods, including the names of custodians whose records will be searched, and to continue to streamline search methods.  *Id.*

**Ford's Motion for Reconsideration.**  Ford sought reconsideration of the July 8 order. Dkt. No. 577.  Ford explained that it had sent a letter to Plaintiffs thoroughly explaining all the topics its Rule 30(b)(6) witness was meant to address—what custodians had their documents searched, what topics of those collections were, and how Ford instructed its employees to conduct their collections.  Dkt No. 577 at 9-14 (citing Dkt. No 577-1).  The letter, Ford explained, provided far more detail than any one corporate representative could, particularly because it was drafted with input from Ford's in-house and outside counsel responsible for Ford's discovery responses.  *Id.* at 11.  The letter therefore obviated the need for a corporate representative to relay the same information.

In light of the July 8 order overruling its work-product objections, Ford also disclosed additional information about the burden of preparing a Rule 30(b)(6) deponent. *Id.* at 5-9. Ford reiterated that it had requested data from over 100 custodians, including the 18 full-data collections. *Id.* at 6. That was over five times the 20 custodians the July 8 order had offered an example. Moreover, obtaining accurate information regarding all of these 100 custodians would be close to impossible. Some custodians' data was collected years ago, in connection with prior litigation, and re-interviews combined with hope that the custodian had not forgotten his or her collection process would be the only way to prepare the corporate deponent. *Id.* at 6-7. And yet other custodians were asked to help with multiple productions, making it hard for a single Ford representative to testify about of what those custodians did for each production, much less for the custodian to remember what he or she did in response to each request. *Id.* at 7. In sum, it would be incredibly difficult—if not impossible—for Ford to produce an adequately prepared witness.

Judge Eifert denied reconsideration on September 11, concluding that there was "no basis" for her to do so. Dkt. No. 620 at 1. The September 11 order further directed that Ford choose a date for the deposition of its corporate representative by September 18—which Ford has done—and for the deposition to be completed by October 14, 2015. *Id.* at 2.

## ARGUMENT

This Court will set aside a magistrate judge's order on a non-dispositive discovery matter where the order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A magistrate's order is "contrary to law" if it " 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.' " *Simpson v. Kapeluck*, No. 2:09-cv-21, 2009 WL 3017462, at *1 (S.D. W. Va. Sept. 16, 2009) (quoting *Transamerica Life Ins. Co. v. Lincoln Natl'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)). By contrast, an order is "clearly erroneous" if the Court is left

with a "definite and firm conviction that a mistake has been made." *Marks v. Global Mortg.*

*Grp., Inc.*, 218 F.R.D. 492, 495 (S.D. W. Va. 2003).

## I.   DISCOVERY ON DISCOVERY IS IMPERMISSIBLE AS A MATTER OF LAW ABSENT PROOF OF DISCOVERY NONCOMPLIANCE, WHICH PLAINTIFFS NEVER PRODUCED.

The July 8 and September 11 orders are contrary to law because they allow discovery on

discovery—that is, discovery about Ford's discovery processes—without the showing of

discovery noncompliance required by the caselaw.  For that reason alone, the orders should be

set aside.

Under Federal Rule of Civil Procedure 26(b)(1), Plaintiffs may seek discovery

"regarding any nonprivileged matter that is relevant to any party's claim or defense."   In this

inquiry, " 'threshold issue regarding all discovery requests is relevancy,' " which " 'involves a

determination of how substantively the information requested bears on the issues to be tried.' "

*Mills v. E. Gulf Coast Preparation Co.*, 259 F.R.D. 118, 131 (S.D. W. Va. 2009) (citation

omitted).

Although the " '[t]he dividing line between information relevant to the claims and

defenses [and other information] cannot be defined with precision,' " *Robinson v. Miller*, No.

2:14-0330, 2015 WL 1431176, at *5 (S.D. W. Va. Mar. 27, 2015) (quoting Fed. R. Civ. P. 26,

Advisory Committee Note), even the most liberal construction of the phrase does not include

discovery about a party's discovery-response methods.  How Ford generated its (ongoing)

responses to Plaintiffs' discovery request has no bearing at all on the issues Plaintiffs propose to

try in this case.  Plaintiffs have never argued that Ford's discovery methods will prove or

disprove the existence of a defect with Ford's ETC systems.

Courts have consistently held as much.  One rejected discovery on discovery on the

ground that the plaintiff "never explain[ed] why discovery about discovery meets [Rule

26(b)(1)'s] standard, no matter how liberally it is construed, nor any legal authority for the proposition that federal courts deem the discovery process itself a fit subject for additional discovery." *Hanan v. Corso*, No. Civ. A 95-0292, 1998 WL 429841, at *7 (D.D.C. 1998). Another rejected requests for a defendant's search reports because they were "outside the bounds of Rule 26"—the reports "do not meet" Rule 26's "relevant to any party's claim or defense" standard. *Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 3767034, at *3 (S.D.N.Y. Jul. 25, 2014). Yet a third court has held that discovery about discovery, is, by definition, not "information reasonably calculated to lead to the discovery of admissible evidence." *Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022, 2006 WL 3371576, at *4 (N.D. Cal. Nov. 21, 2006) (citing Fed. R. Civ. P. 26(b)(1)). And these cases do not stand alone. *See, e.g.*, *India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 192 (E.D. Wis. 2006) (defendant's document-retention policy was not "relevant to any claim or defense alleged in the pleadings"); *Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538, 2008 WL 2668301, at *5 (D. Colo. July 1, 2008) (defendant insurance company's e-mail retention policy "is not relevant to whether Defendants breached Plaintiff's insurance policy or acted in bad faith in adjusting his claim"). Discovery on discovery, in short, is presumptively improper under Rule 26(b)(1).

The July 8 order thought otherwise, contending that these cases are "outmoded" and "unpersuasive" in the modern world of cooperative e-discovery. Dkt. No. 563 at 19. Of course, a prevailing ethos cannot override the language of the Federal Rules.[2] More fundamentally, the

---

[2] Indeed, to the extent that modern trends are relevant, they cut against the discovery on discovery the July 8 order requires. Under the revised Rule 26(b)(1), which is to go into effect on December 1, 2015, the question is whether Plaintiffs' requested discovery is "proportional to the needs of the case," not whether the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." That limitation on the scope of discovery reflects the

July 8 order confuses the way parties and counsel should approach their discovery obligations with the scope of discovery itself. Take Federal Rule of Civil Procedure 26(f), which the July 8 order primarily relied on (at 17) for its conclusion that discovery on discovery is generally permissible. Under the Rule, it is the "attorneys of record" that have the responsibility for developing the discovery plan, which is to include "any issues about disclosure or discovery of electronically stored information." Fed. R. Civ. P. 26(f)(1), (3)(C). That is, Rule 26(f) presumes that transparency regarding electronically stored information will be conveyed through *counsel*, not corporate representatives. *See id.* Rule 26(f) therefore supports, not undermines, Ford's argument that discovery on discovery is presumptively impermissible. As one court has said, requests for " 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Freedman*, 2014 WL 3767034, at *7.

The July 8 order also relied (at 17) on the Advisory Committee's note to Rule 26 that "early discovery from individuals with knowledge of a party's computer systems may be helpful." But there is a world of difference between discovery regarding how a defendant maintains its files—discovery that might, in some cases, fall under Rule 26(b)(1)'s current allowance for discovery regarding "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter"—and discovery about how a defendant has *searched* those files for responsive documents. Ford has never denied that Plaintiffs may ask the custodians they depose about how they maintain their files and who else at Ford might know about Plaintiffs'

---

drafters' concern that expansive discovery requests like Plaintiffs' inflict too great a burden on defendants like Ford. *See* Fed. R. Civ. P. 26, 2015 Advisory Committee Notes (the 2015 amendments to Rule 26(b)(1) are "designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information").

claims.  *See* Dkt. No. 438 at 10.  What Ford *has* objected to, and objects to now, is discovery about how it has conducted discovery.  Rule 26's advisory committee notes do not support the July 8 order.

   None of this is to say that discovery on discovery may *never* be ordered.  Federal Rule of Civil Procedure 26(b)(1) allows that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  But in order to show "good cause" for discovery on discovery, courts have repeatedly held that the plaintiff must show "there is reason to believe that additional, relevant information exists which [the] defendant did not produce."  *Orillaneda v. French Culinary Inst.*, No. 07 Civ. 3206, 2011 WL 4375365, at *6 (S.D.N.Y. Sept. 19, 2011); *see also Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418 (D.N.J. 2009) (discovery on discovery requires "a colorable showing that Ford is purposefully (or even negligently) withholding documents"); *In re Jemsek Clinic, P.A.*, No. 06-31766, 2013 WL 3994666, *7 (W.D.N.C. Bankr. Aug. 2, 2013)  (noting that "[v]arious courts have held that such non-merits-based discovery is improper when the requesting party has not made a threshold showing that spoliation has actually occurred").

   This alone is sufficient to set aside the July 8 order.  The July 8 order believed that discovery on discovery "is not contingent upon a claim of spoliation or proof of discovery abuses."  Dkt. No. 563 at 19.  The cases above prove otherwise.  The July 8 order is therefore contrary to law because it applied the wrong legal standard to Plaintiffs' request for discovery on discovery.  *See Simpson* 2009 WL 3017462, at *1.

   But even if the July 8 order had applied the proper standard, Plaintiffs did not prove any discovery abuses warranting discovery on discovery.  Plaintiffs primarily argued that Ford's production must be deficient because some of Ford's custodians produced few documents.  Dkt

No. 475 at 5-7.  For many of these custodians identified by Plaintiffs in their briefing, however, Ford's review of their data is ongoing, making any conclusions about production premature.  *See* Dkt. No. 577-2 at 1.  And even if production were complete, courts have time and again rejected arguments that the number of documents produced is probative of a defendant's discovery compliance.  As one has said, "[c]ourts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed."  *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008).  But "[s]peculation there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end."  *Id.*; *see also Edgewood Props.*, 257 F.R.D. at 428 ("[t]he notion that a document production is insufficient based on a belief that documents must exist simply is not enough" to warrant additional discovery); *Bethea v. Comcast*, 218 F.R.D. 328, 330 (D.D.C. 2003) ("[A] party's suspicion that another party has failed to respond to document requests fully and completely does not justify compelled inspection . . . .").

The July 8 order's charge (at 19) that Plaintiffs have raised "repeated concerns" regarding "the thoroughness of Ford's document search, retrieval, and production" is nothing more than speculation.  Plaintiffs' subjective complaints are not evidence that Ford has withheld documents.  Rather, Ford asserted work-product protection over that information, and a good-faith assertion of privilege cannot constitute discovery misconduct, even if overruled.  Courts have before recognized the unfairness of "put[ting] parties to the unenviable choice between demonstrating they have complied with discovery obligations in good faith and waiving their privilege, or maintaining their privilege and subjecting themselves to motions seeking discovery sanctions."  *Chicago Bd. Options Exch., Inc. v. Int'l Securities Exch, LLC*, No. 07-C-623, 2008 WL 3285751, at *4 (N.D. Ill. Aug. 8, 2008); *see also Usery v. Brandel*, 87 F.R.D. 670, 684

(W.D. Mich. 1980) (assertion of privilege is not sanctionable unless assertion was "groundless and obfuscatory").  The July 8 order therefore should not have inferred discovery misconduct from Ford's good-faith assertion of work-product protection.

Taking a different tack, Plaintiffs complained to Judge Eifert that Ford's production must be deficient because two witnesses testified to engaging in searches different than Plaintiffs would have liked.  *See* Dkt. No. 475 at 9-11.  Neither deposition exchange was proof of discovery noncompliance.  The first witness, Kelly Arbanas, stated that she had not searched her own files for all documents relating to the ETC system, Dkt. No. 475-1 at 2, but only because Ford had a standing objection to such a broad search, which even Plaintiffs agreed had merit. *See* Dkt. No. 499 at 26 (Plaintiffs' counsel agreeing that Plaintiffs don't want "any document that says 'ETC' ").  The second witness, Glenn Humphries, repeatedly told Plaintiffs' counsel that he had no responsive documents.  Dkt. No. 500-4; *see also Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 5959 (S.D.N.Y. 1978) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist . . . should resolve the issue of failure of production.").  And in any event, Ford has agreed to, and has, done full collections of all of Arbanas's electronic files with agreed-upon word-search terms—a sign of discovery *compliance*, not noncompliance.  *See* Dkt. Nos. 577-1 at 5, 577-2 at 1.  Plaintiffs cannot prove any discovery violation by Ford that would warrant the intrusive remedy of discovery on discovery.

In the end, the July 8 order confuses the circumstances justifying *discovery on discovery* and the circumstances justifying *greater transparency between counsel*.  The July 8 order concluded that greater transparency in Ford's efforts was warranted, and Ford has provided that transparency through counsel, as Rule 26 contemplates.  The July 8 order's separate conclusion

that Plaintiffs were entitled to discovery transparency *through a Rule 30(b)(6) witness* is contrary to law.

## II.    FORD PRODUCING A 30(b)(6) DEPONENT REGARDING ITS DISCOVERY EFFORTS WOULD YIELD NO BENEFIT FOR THE COURT OR PLAINTIFFS AND IMPOSE SIGNIFICANT BURDENS ON FORD.

Even assuming that the July 8 order correctly concluded that discovery on discovery was *available*, it and the September 11 order clearly erred in concluding that the benefits to Plaintiffs from a corporate deponent outweighed the significant burdens to Ford of preparing such a witness.  In fact, forcing Ford to undertake the laborious process of preparing a Rule 30(b)(6) deponent on all of its discovery efforts would yield no more—and quite likely less—information than its ongoing disclosures through counsel and would likely generate even more pointless satellite litigation.

The Court is required to limit Plaintiffs' discovery requests when the "discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  This rule applies to Rule 30(b)(6) corporate deposition as much as any other form of discovery, *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010), and the July 9 and September 11 orders clearly erred in holding that Ford's motion to quash did not satisfy it.

Consider the steps Ford would have to take in order to "prepare the designated witness . . . 'so that [he or she] may give knowledgeable and binding answers for the corporation,' " as Rule 30(b)(6) requires.  *Wellman v. Bobcat Oil & Gas, Inc.*, No. 3:10–cv– 00147, 2011 WL 3735975, at *1 (S.D. W. Va. Aug. 24, 2011) (citation omitted).  Ford queried over 100 potential custodians, stretching back as far as 2010.  Dkt. No. 577-2 at 1-5.  Ford would

need to interview each of those custodians, reconstruct (to the extent it can do so) how those custodians searched their personal files, and then prepare a corporate designee to parrot what those 100-plus custodians said in their interviews.  But that is not all.  Ford also searched ten different databases, with an alphabet soup of acronyms—WERS, WIPS, GCQIS, AWS, GOASIS, and DURIS, to name a few.  Dkt. No. 571-1 at 2.  Ford's corporate designee would need to learn about each of these databases, how they were searched, and how they their data is maintained.  And then the designee would need to be able to answer any question that Plaintiffs' counsel might have about any of these topics.

That is a task no one human can responsibly carry out.  After all, "Rule 30(b)(6) is not designed to be a memory contest."  *EEOC v. Am. Int'l Grp., Inc.*, No. 93 CIV 6390, 1994 WL 376052, at *3 (S.D.N.Y. Jul. 18, 1994).  Courts have therefore quashed Rule 30(b)(6) deposition notices where "no human being (especially a non-lawyer) could reliably and completely set forth th[e] material" called for by the notice.  *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991), *set aside in part on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991); *see also Apple Inc. v. Samsung Elecs. Co.*, No. C 11–1846, 2012 WL 1511901, at * 2 (N.D. Cal. 2012) (quashing Rule 30(b)(6) notice where it was "less realistic and increasingly impossible" to prepare a corporate designee); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at * 9 (N.D. Ill. 2000) (quashing Rule 30(b)(6) deposition notice where "it would require having a witness study the vast amount of discovery pertaining to the case").  The July 8 and September 11 orders should have done the same.

The July 8 order itself recognized that a Rule 30(b)(6) deposition of the scope Plaintiffs' notice calls for would be unduly burdensome.  It drew a distinction between a deposition encompassing collections from 20 different custodians—which, in the order's view, was

16

manageable—and a deposition encompassing collections from more custodians, which, the order suggested, would be unduly burdensome.  *See* Dkt. No. 563 at 22.  Yet in the face of Ford's representations in both its motion to quash and motion to reconsider that Ford collected from over 100 custodians, the July 8 and September 11 orders declined to follow the July 8 order's reasoning.  *See* Dkt. No. 529 at 4; Dkt. No. 577 at 4.  That is a clear error that warrants setting the orders aside.

The deposition called for by the July 8 and September 11 orders is even more fraught than the average overbroad Rule 30(b)(6) deposition notice because it essentially "require[s] the deposition of [Ford] counsel or a proxy prepared by counsel."  *EEOC v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN–08– CV–984, 2010 WL 2572809 at *5 (D. Md. June 22, 2010).  Answering discovery requests is "customarily . . . performed with the assistance of counsel," and a deposition regarding discovery responses risks invading counsel's mental processes and strategies, which are protected by the work-product doctrine.  *Smtihkline*, 2000 WL 116082, at *9; *see also McCormick & Schmick's*, 2010 WL 2572809, at *4-*5 (raising similar concerns regarding deposition notice seeking information regarding a government agency's investigation).  Questioning a lay witness about those processes could lead to more litigation over what communications regarding discovery productions are protected and further depositions once those questions are resolved.  *See Bellinger v. Astrue*, No. CV-06-321 (CAN), 2011 WL 317836, at *2 (E.D.N.Y. Jan. 31, 2011) (involving a dispute over whether allowing a witness to answer questions about her search strategies waives work-product protections over other documents and communications).

In addition, a discovery response is the synthesis of client and counsel working in close consultation as the lawyer parses what a request calls for, and the two work together to locate

responsive documents.  A lay designee alone "cannot be expected to have the range of understanding . . . to reliably identify and accurately articulate all of the predicates for [Ford's] legal positions" regarding discovery.  *McCormick-Morgan*, 134 F.R.D. at 287.  That is particularly so because the e-discovery the Plaintiffs seek information regarding is managed exclusively by outside counsel and vendors.  Ford does not have insight into that process absent speaking with counsel.

Putting Ford to the trouble of preparing a corporate designee is particularly unwarranted because the same information is available in significantly less burdensome ways.  Indeed, Ford has already *made* the information available in its detailed letter to Plaintiffs' counsel outlining the custodians it contacted, the issues they searched, whether documents were produced, and how documents generally were chosen.  *See* Dkt. Nos. 577-1 & 577-2.  It is hard to see what more a Rule 30(b)(6) deponent could say other than read the letter to Plaintiffs' counsel.  Courts have insisted that "a 30(b)(6) deposition, which by its nature can be time-consuming and inefficient, be productive and not simply an excuse to seek information that is already known." *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005).  And they have therefore refused Rule 30(b)(6) depositions when the information sought "could more easily be obtained from another source."  *Dogguk Univ.*, 270 F.R.D. at 74; *see also In re Independ. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (quashing Rule 30(b)(6) deposition notice where proponent "failed to convince the court that the factual information it seeks cannot be discovered by less problematic means").  In light of the detailed proffer made by Ford in its July letter, additional inefficient discovery from a corporate deponent is unwarranted.  *See Independ. Serv. Orgs.*, 168 F.R.D. at 654 (concluding that party served with

Rule 30(b)(6) deposition notice "offered a reasonable compromise by agreeing to provide [its opponent] with a summary of the underlying facts").

Before Judge Eifert, Plaintiffs argued that the burden on Ford was self-inflicted because it chose to tailor its search strategy to each custodian rather than run standardized word searches. Dkt. No. 587 9 n.7.  That is factually, legally, and practically incorrect.  Factually, Ford *had* to tailor its searches to each custodian; Ford uses a myriad of databases and technological platforms, and one search solution cannot fit them all.  Plaintiffs' argument to the contrary is "predicated on an unproven assumption—that Ford's attorneys can access [a] database, make a few keystrokes on a computer, and [responsive documents] would spit out onto a laser printer, readily available for disclosure."  *Ford Motor Co. v. Hall-Edwards*, 997 So. 2d 1184, 1152 (Fla. Dist. Ct. App. 2008).  Legally, the choice of how to search for responsive documents was "clearly within [Ford's] sound discretion."  *Edgewood Props.*, 257 F.R.D. at 427.  And practically, Ford's tailored search process was the best way to recover responsive documents given the diversity of Ford's technology platforms—each custodian knew his or her own files best.  *See Mastr Adj. Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Secs., Inc.*, 295 F.R.D. 77, 85 (S.D.N.Y. 2013) (self-selection process was acceptable where it was "guided by both business people and counsel and thereafter monitored by counsel").  Ford's choice to use that process for non-key custodians does not justify the burdensome preparation process the July 8 and September 11 orders imposed.

Moreover, the deposition called for by the July 8 and September 11 orders threatens to embroil the Court in collateral litigation.  If Plaintiffs are unsatisfied with the level of detail Ford's corporate representative can provide, Plaintiffs may well argue that Ford has inadequately prepared its designee and seek sanctions.  *See Robinson v. Quicken Loans, Inc.*, No. 3:12-cv-981,

2013 WL 1776100, at *3 (S.D. W. Va. Apr. 25, 2013).  That, in turn, will lead to motion practice over whether Ford's witness's answers were " 'substantially justified.' "  *Id.*  And it could lead to discovery on how Ford prepared its discovery witness—discovery on discovery on discovery— which would further distract the Court from the merits.

The deposition is also premature.  Judge Eifert has directed additional production.  Dkt. No. 627.  Plaintiffs presumably will want transparency regarding those productions, as well, which creates a risk of further discovery on discovery depositions.  And though Ford will be objecting to the further discovery Judge Eifert has ordered, it demonstrates just how disruptive it would be to inquire into Ford's discovery processes while discovery is still underway.

Ultimately, July 8 and September 11 orders do not further the concerns that underlie them.  Judge Eifert found that Ford was not providing sufficient transparency to Plaintiffs and the Court regarding its process for selecting, searching, and producing documents.  *See* Dkt. No. 563 at 17-21.  The most efficient way to provide that transparency is not for Ford's counsel to brief a deponent and then for the deponent repeat back Ford's counsel's answers to Plaintiffs' counsel.  It is for Ford's counsel to provide details directly to Plaintiffs' counsel. In holding otherwise, the July 8 and September 11 orders clearly erred.

## CONCLUSION

For the foregoing reasons, the orders should be set aside.

This the 25th day of September, 2015.

Respectfully submitted,


/s/ Bradley J. Schmalzer
Michael Bonasso (WV Bar No. 394)
William J. Hanna (WV Bar No. 5518)
Susan W. Romaine (WV Bar No. 9936)
Bradley J. Schmalzer (WV Bar No. 11144)

20

**Flaherty Sensabaugh Bonasso PLLC**
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 344-4259
Facsimile: (304) 345-0260
mbonasso@fsblaw.com
whanna@fsblaw.com
sromaine@fsblaw.com
bschmalzer@fsblaw.com

J. Tracy Walker, IV
Tennille J. Checkovich
Jill Crawley Griset
S. Virginia Bondurant
**McGuireWoods LLP**
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Telephone: (804) 775-1131
Facsimile: (804) 698-2201
twalker@mcguirewoods.com
tcheckovich@mcguirewoods.com
jgriset@mcguirewoods.com
vbondurant@mcguirewoods.com

Peter J. Fazio
**Aaronson Rappaport Feinstein &
Deutsch, LLP**
600 Third Avenue
5th Floor
New York, NY 10016
Telephone: (212) 593-5458
Facsimile: (212) 593-6970
pjfazio@arfdlaw.com

*Visiting Attorneys*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

| | |
|---|---|
| **CHARLES JOHNSON, *et al.*, individually and on behalf of all others similarly situated,** ) ) ) ) | |
| Plaintiffs, ) | **CIVIL ACTION NO.:** |
| **v.** ) | **3:13-cv-6529** |
| ) | **Honorable Robert C. Chambers** |
| **FORD MOTOR COMPANY,** ) ) | |
| Defendant. ) ) ) ) ) | |

**CERTIFICATE OF SERVICE**

I, Bradley J. Schmalzer, do hereby certify that, on this 25th day of September 2015, I filed a true

and correct copy of the above and foregoing **FORD MOTOR COMPANY'S OBJECTION**

**TO MAGISTRATE JUDGE'S ORDERS** with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the following counsel for Plaintiffs:

Niall A. Paul (WV Bar No. 5622)
**Spilman, Thomas & Battle, PLLC**
300 Kanawha Boulevard, East (25301)
P.O. Box 273
Charleston, WV 25321
Telephone  (304) 340-3800
Facsimile   (304) 340-3801
npaul@spilmanlaw.com

Nathan B. Atkinson (WV Bar No. 10757)
**Spilman, Thomas & Battle, PLLC**
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina 25321
Tel: (336) 725-4710
Fax: (336) 725-4476

Joseph J. Siprut
Aleksandra M.S. Vold
**Siprut P.C.**
17 North State Street, Suite 1600
Chicago, Illinois 60602
Tel: (312) 236-0000
Fax: (312) 948-9212
jsiprut@siprut.com
avold@siprut.com

Keith G. Bremer
Alison K. Hurley
Benjamin L. Price
**Bremer, Whyte, Brown
& O'Meara LLP**

22

natkinson@spilmanlaw.com

Adam J. Levitt
John E. Tangren
**Grant & Eisenhofer P.A.**
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Tel: (312) 214-0000
Fax: (312) 214-0001
alevitt@gelaw.com
jtangren@gelaw.com

Jeff A. Almeida
Kyle J. McGee
**Grant & Eisenhofer P.A.**
123 Justison Street
Wilmington, Delaware 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
jalmeida@gelaw.com
kmcgee@gelaw.com

Mark DiCello
Robert F. DiCello
**The DiCello Law firm**
Western Reserve Law Building
7556 Mentor Avenue
Mentor, Ohio 44060
Tel: (440) 953-8888
Fax: (440) 953-9138
markdicello@dicellolaw.com
rfdicello@dicellolaw.com

Guy R. Bucci (WV Bar No. 0521)
Timothy C. Bailey (WV Bar No. 5839)
L. Lee Javins II (WV Bar No. 6613)
**Bucci Bailey & Javins L.C.**
213 Hale Street
Charleston, West Virginia 25301
Tel: (304) 932-4639
Fax: (304) 345-0375
Gbucci@BBJLC.com
Timbailey@BBJLC.com
Ljavins@BBJLC.com

James R. Bartimus

20320 S.W. Birch Street, Second Floor
Newport Beach, California 92660
Tel: (949) 221-1000
Fax: (949) 221-1001
kbremer@bremerwhyte.com
ahurley@bremerwhyte.com
bprice@bremerwhyte.com

E. Powell Miller
Richard L. Merpi II
**The Miller Law Firm, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
rlm@millerlawpc.com

Grant L. Davis
Thomas C. Jones
Timothy C. Gaarder
**Davis, Bethune & Jones, LLC**
1100 Main Street, Suite 2930
Kansas City, Missouri 64105
Tel: (816) 421-1600
Fax: (816) 472-5972
gdavis@dbjlaw.net
tgaarder@dbjlaw.net

Edgar F. Heiskell, III (WV Bar No. 1668)
Attorney at Law
Post Office Box 3232
Charleston, West Virginia 25332
Tel: (304) 989-4459
heiskell.action@ymail.com

Gregory M. Travalio
Mark H. Troutman
**Isaac Wiles Burkholder & Teetor**
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Tel: (614) 221-2121
Fax: (614) 221-5692
gtravalio@isaacwiles.com
mtroutman@isaacwiles.com

Stephen M. Gorny
**Bartimus, Frickleton,**
**Robertson & Gorny, P.C.**
11150 Overbrook Road, Suite 200
Leawood, Kansas 66211
Tel: (913) 266-2300
Fax: (913) 266-2366
jb@bflawfirm.com
steve@bflawfirm.com

John T. Murray
**Murray and Murray Co., L.P.A.**
111 East Shoreline Drive
Sandusky, Ohio 44870
Tel: (419) 624-3000
Fax: (419) 624-0707
jotm@murrayandmurray.com

John Scarola
C. Calvin Warriner III
**Searcy, Denney, Scarola,**
**Barnhart & Shipley PA**
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Tel: (800) 780-8607
Fax: (561) 686-6300
jsx@searcylaw.com
ccw@searcylaw.com

Stacey Kelly Breen
**Wolf Haldenstein Adler Freeman & Herz,**
**LLP**
270 Madison Avenue
New York, New York  10016
Tel:  (212) 545-4728
Fax:  (212 545-4653
breen@whafh.com


/s/ Bradley J. Schmalzer
Bradley J. Schmalzer (WV Bar. No. 11144)