IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES JOHNSON, et al.,

        Plaintiffs,

v.                                  CIVIL ACTION NO.   3:13-6529

FORD MOTOR COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Ford Motor Company's Objections to Magistrate Judge's Orders entered on July 8 and September 11, 2015. ECF No. 634. In addition, Ford filed a Motion to Stay Magistrate Judge's Orders pending resolution of its objections. ECF No. 633. As the objections are nondispositive pretrial matters, this Court's review of the Magistrate Judge's Orders is governed by the clearly erroneous or contrary to law standard of review. Fed. R. Civ. P. 72(a) (providing, in part, that a district judge may, upon objection, modify or set aside any part of a nondispositive "order that is clearly erroneous or is contrary to law"); 28 U.S.C. § 636(b)(1)(A) (providing, in part, "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").   Utilizing this standard and for the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the objections and **DENIES AS MOOT** Ford's Motion to Stay.

In the July 8 and September 11, 2015 Orders,[1] the Magistrate Judge addressed pending motions to quash and for a protective order, each arising from Plaintiffs' request for Rule 30(b)(6) depositions of corporate designees.  The July 8, 2015 Order, which was reaffirmed by the September 11, 2015 Order, explained the four topics at issue.  Each topic relates to how Ford determined its discovery responses and engaged its employees in the search for, and production of, documents.  As the July 8, 2015 Order describes, the parties have struggled with Ford's document production for many months, and despite active prodding by the Magistrate Judge in regular discovery conferences, the parties were unable to resolve, to their mutual satisfaction, how and what Ford should produce.  This context for the July 8, 2015 Order is clear.

Topics 15, 18, and 78 each focus on Ford's documents relating specifically to unintended acceleration.[2]  Topic 79 concerns the method by which Ford directed its employees to search their individual computers for emails or similar documents.  Ford's principle objection is that the Magistrate Judge should not order it to produce a corporate designee to testify about how its many employees performed their "self-selected" document searches, primarily of their respective emails or databases.

---

[1] ECF Nos. 563 and 620, respectively.

[2] Topic 15 involves the identification and explanation of how Ford handled complaints of unintended acceleration. Topics 18 and 78 deal with Ford's document retention policies and practices, and its knowledge of the destruction or loss of any documents relating to unintended acceleration or stuck throttle incidents. *See Mem. Op. & Order* (July 8, 2015). ECF No. 563.

To the extent Ford's objection is intended to challenge a corporate designee to testify about Topics 15, 18, and 78, the Court **DENIES** the objections.  Each of these topics is relevant and a permissible area of inquiry given the Magistrate Judge's conclusions about discovery at this stage.

As to the July 8, 2015 Order's inclusion of Topic 79 in the requested Rule 30(b)(6) deposition, the Court **GRANTS** the objections in part.  As Ford recites in its objections memoranda, and considering its representations to the Court by offering Exhibits 577-1 and 2 (Ford's July 21, 2015 letter to Plaintiffs' counsel with attachment), the information sought in response to Topic 79 is best supplied by counsel, not a designee witness.  Here, Ford's counsel already has assembled its explanation for the document search protocol on which it relied.  Ford's July 21, 2015, letter provides a practical, useful guide to explain and support Ford's approach.

Ford has represented to Plaintiffs, and now to the Court, that counsel explained the lawsuit and discovery, identified the core allegations, and guided the custodians where to look and what to look for.  The document searches were conducted by over 100 employees across many departments, and covered a number of years and a long list of interrelated subjects.  Exhibit 577-2 groups the custodians for the specific topics for which they were to produce any identified documents, and reports whether each custodian found documents (which it then produced) or not.  Further, a number of databases were searched, likely including most of the documents individual custodians would have produced.

At best, a corporate designee could only superficially address how each employee created, managed, retained, and then searched for whatever documents were within the scope of production.  Any corporate designee would have to interview each custodian at length, to determine what the custodian understood to be the scope of the search directed by counsel and then to examine where the custodian searched.  This preparation would be conducted by the lawyers who provided those directions, the same lawyers who supplied the July 21, 2015 letter.  Any corporate designee's explanation of the detailed methods for the document search by all 100 custodians would add little light to the matter.

Plaintiffs argued that Ford's handling of Mr. Davenport illustrated the inadequacy of Ford's search for responsive documents.  However, Ford supplied a cogent rebuttal that, instead, supports its position.  Plaintiffs' opposition does little to explain how the limited benefit of a deposition outweighs the burden to Ford.  This inquiry would be too broad and yet too far removed from the underlying source to be of value.  There is no real basis for Plaintiffs' claim that this third-hand description will reveal any substantive information.

This Court recently affirmed the extensive scope of discovery ordered by the Magistrate Judge.  The additional depositions and document production now in the offing, which overlaps with several of the custodians and topics identified by Ford's letter and which includes a list of eighteen key employees who will conduct a word-search review of their files, are sufficient and proportionate to meet the Rules.[3]  Accordingly, for these reasons, Ford's objections to the

---

[3] By letter dated November 4, 2015, Ford submitted a "Joint" status report describing the

July 8 and September 11, 2015 Orders are **DENIED, in part,** and **GRANTED, in part**, and Ford's Motion to Stay is **DENIED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: November 5, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE

---

status of the word-search document collection process, in response to the Court's Order dated October 29, 2015.