IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CHARLES JOHNSON, et al.,

                Plaintiffs,

v.                                CIVIL ACTION NO.   3:13-6529

FORD MOTOR COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

On September 15, 2015, this Court made its initial ruling on Plaintiffs' Motion for Leave to File First Amended Master Consolidated Class Action Complaint (hereinafter the Consolidated Complaint).  In that decision, the Court ruled as follows: (1) the Court granted Plaintiffs' motion to consolidate Civil Actions 3:13-6529, 3:13-14207, and 3:13-20976 into a single action; (2) the Court held Plaintiffs could not name sixteen new Plaintiffs in the consolidated action; (3) the Court denied Plaintiffs' attempt to add any new facts or claims solely related to these sixteen proposed Plaintiffs, but the Court allowed Plaintiffs to include additional factual allegations and make new or revived claims as to existing Plaintiffs;[1] (4) the Court required Plaintiffs to file motions pursuant to Rule 41 before it could remove any existing Plaintiffs; and (5) the Court reserved judgment on a number of specific arguments that certain claims must be dismissed on a variety of grounds. *Johnson v. Ford*, *Burnett v. Ford, and Burd v. Ford*, Civ. Act. Nos. 3:13-6529; 3:13-14207; and 3:13-20976, 2015 WL 5443550 (S.D. W. Va. Sept. 15, 2015).

---

[1]However, those new and revived claims are subject to any related decision the Court makes in this Memorandum Opinion and Order.

Thereafter, Plaintiffs filed a motion for the voluntary dismissal of six named Plaintiffs, and the Court granted the motion by Order entered on September 29, 2015. ECF No. 638.   Having now considered Ford's specific challenges to a number of individual claims, the Court **GRANTS, in part,** and **DENIES, in part,** the balance of Plaintiffs' Motion for Leave to File First Amended Master Consolidated Class Action Complaint. ECF No. 381.

## I.
## PRELIMINARY RULINGS, STRUCTURE, AND STANDARD OF REVIEW

Initially, the Court recognizes that there are a number of claims for which there is no longer a named Plaintiff because the Court denied Plaintiffs' motion to add sixteen new Plaintiffs and Plaintiffs have voluntarily dismissed several other named Plaintiffs.[2]   Therefore, for those Counts with no named Plaintiff, the Court will not permit Plaintiffs to include those claims in the final version of the Consolidated Complaint.   Based upon the Court's review, these claims include: Counts 12, 13, & 14 (Florida); Counts 22, 23, 24, 25, & 26 (Illinois); Counts 41, 42, 43, 44, & 45 (Massachusetts); Counts 52, 53, 54, 55, & 56 (Missouri); Counts 62, 63, 64, & 65 (New Jersey); Counts 76, 77, 78, 79 & 80 (Ohio);[3]   Count 88 (South Carolina); and Counts 90, 91, & 92 (Texas).[4]   In addition, to the extent Ford objects to any of these Counts on other grounds, the Court finds the objections moot and declines to address them.   Plaintiffs also do not oppose Ford's

---

[2] In addition to the six named Plaintiffs recently voluntarily dismissed, other named Plaintiffs have been voluntarily dismissed in the past.

[3] There is a named Plaintiff in Count 75 for a violation of the Ohio Consumer Sales Practices Act.

[4] There is a named Plaintiff in Count 89 for a violation of the Texas Deceptive Trade Practices Act.

objections to Counts 16, 29, 82, and 84.   Accordingly, the Court directs Plaintiffs not to include those Counts in the final version of the Consolidated Complaint.

In considering the remainder of Ford's arguments, the Court divides them into four very general categories: (1) arguments that the statute of limitations has run on certain claims; (2) arguments that the law of a particular State prevents a specific claim; (3) arguments with respect to the Magnuson-Moss Warranty Act; and (4) arguments that certain claims fail to meet the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.   Although there is overlap of these arguments with respect to some claims, the Court finds these categories the most comprehensive manner in which to ferret out those claims Plaintiffs may include in the final draft of their Consolidated Complaint.

In addition, with respect to categories one, two, and three, Ford's arguments are, in essence, that these claims are futile.   In assessing futility, this Court uses the same standard of review as it would use in assessing whether a claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (finding the district court did not abuse its discretion in denying a motion to file an amended complaint where the proposed amended complaint did "not properly state a claim under Rule 12(b)(6) and lacks sufficient particularity under Rule 9(b)"); *City of Charleston v. Hotels.com, LP*, 520 F. Supp. 2d 757, 775 (D.S.C. 2007) ("The standards of review for determining whether a motion to amend should be denied for futility under Fed.R.Civ.P. 15(a) and determining whether a motion to dismiss should be granted under Fed.R.Civ.P. 12(b)(6) are

identical." (citations omitted)).   Indeed, Ford even frames its arguments in its Response brief as motions to dismiss.[5]   Pursuant to this standard, the Consolidated Complaint only must present enough factual content to render a claim "'plausible on its face'" and to enable the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556 & 570 (2007)).   In doing so, the Court considers all well-pled factual allegations in the Consolidated Complaint as true and construes them in the light most favorable to Plaintiffs.   However, the Court may not rely upon naked assertions, speculation, or legal conclusions. *Id*. at 678-79.

## II.
## DISCUSSION

### A.
### Statute of Limitations
### for Warranty, Consumer Protection Act,
### and Unjust Enrichment Claims

### 1.
### *Breach of Express Warranty*
### *(Counts 10, 18, 28, 38, 67, & 97)*

*(California—Timothy Matthews; Idaho—Rhoda Jeffers;*
*Kentucky—William S. Troutman; Maryland—Charles Johnson;*
*New York—Michael Antramgarza; Washington—Shelley Riley)*

Ford argues there are six breach of express warranty claims and six breach of implied warranty of merchantability claims—in which Plaintiffs experienced a sudden unintentional acceleration—that should be dismissed because they were filed outside the

---

[5]Although technically there is not a "motion to dismiss" pending, the Court often refers to Ford's "motion to dismiss" because that is the way the arguments are framed and are being treated by the Court in terms of the standard of review.

applicable statute of limitations.   The Court first will consider the claims for breach of express warranty.

For each of these breach of express warranty claims, Ford argues that the applicable state statutes of limitations apply, effectively barring all claims.   The following language is taken verbatim from the Uniform Commercial Code ("UCC") § 2-725 and is identical in each of the States in which Ford has raised this defense.   The UCC and these statutes provide:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.   A breach of warranty occurs when tender of delivery is made, *except* that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

U.C.C. § 2-275 (emphasis added).

The discovery exception to the statute of limitations, identified in UCC § 2-725(2), has been interpreted in each of the States in which Ford has raised this defense: California, Idaho, Kentucky, Maryland, New York, and Washington.   These states have reached similar findings, all agreeing that the exception language—"where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered"—must be read and construed narrowly. *Kittitas Reclamation Dist. v. Spider Staging Corp.*, 27 P.3d 645, 649 (Wash. Ct. App. 2001).   This exception applies only when "the seller has expressly agreed to warrant its

product for a specific and defined period of time." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 16 (Cal. Ct. App. 2008); *accord In re Lone Star Indus., Inc., Concrete R.R. Cross Ties Litig.*, 776 F. Supp. 206, 219 (D. Md. 1991) ("For a warranty of future performance to exist under § 2-275, the terms of the warranty must unambiguously and explicitly indicate that the manufacturer is warranting the future performance of the goods for a specified period of time."); *Wyandanch Volunteer Fire Co., Inc. v. Radon Constr. Corp.*, 798 N.Y.S.2d 484, 591 (N.Y. App. Div. 2005) ("A warranty of future performance is one that guarantees that the product will work for a specified period of time."); *Kittitas,* 27 P.3d at 649 ("In order for a warranty to be explicit, the warranty of future performance must be unambiguous, clearly stated, or distinctly set forth."). In other words, this exception "does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods.   Instead, the majority view is that the exception . . . applies only when the seller has expressly agreed to warrant its product for a specific and definite period of time." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014) (citing *Carrau v. Marvin Lumber and Cedar Co.*, 112 Cal. Rptr. 2d 869, 876 (Cal. Ct. App. 2001)).

As vehicle warranties typically comprise years and/or miles, such warranties may be specific and definite enough to extend to future performance under UCC § 2-725.   However, the precise terms of the warranties are not part of the record at this stage of the litigation.   As such, the Court cannot properly evaluate Ford's statute of limitations arguments with regard to the express warranty claims because the Court does not have the relevant language of the express warranties.   In addition, except with respect to Plaintiff William S. Troutman from Kentucky, the parties did not provide the Court some of the following necessary information for each individual

Plaintiff: the date the unintended acceleration first occurred, the date Plaintiff took the vehicle to a Ford dealership (regarding the unintended acceleration), and what specifically the Ford dealership told Plaintiff.   In the absence of complete information, the Court **DENIES** Ford's motion as to Counts 10, 18,[6] 38, 67, and 97.

With respect to Plaintiff Troutman, however, the Court was provided sufficient information to make a ruling on his claim in Count 28 for breach of express warranty with respect to his Ford Mustang.[7]   Plaintiff Troutman asserts in the Consolidated Complaint that he purchased his Ford Mustang on November 4, 2006. *Consol. Complaint*, at ¶ 51.   The events of unintended

---

[6]Ford also makes an argument regarding Count 18, that this claim should be barred because Plaintiff Jeffers lacked privity with Ford.   First, the Court has not issued a ruling yet regarding the nature of Ford's relationship with Ford dealerships.   Therefore, a decision regarding the privity requirement for Plaintiff Jeffers' express warranty claim is premature.

Second, Ford argues there is case law in Idaho that stands for the notion that privity of contract between the manufacturer and purchaser is a necessary requirement to sustain a contract action to recover economic loss for breach of *implied warranties*. *Salmon Rivers Sportman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 312 (Idaho 1975) (emphasis added).   However, Count 18 is a claim for breach of express warranty.   There have been no Idaho cases that have addressed the issue of whether this Idaho rule regarding privity for implied warranties, which the Idaho Supreme Court has recently called into question, extends to express warranties. *D. Blosch Crushing, Inc., v. Modern Mach. Co.*, No. CV 05-367 ELMB, 2007 WL 118867, at *3 (D. Idaho Jan. 11, 2007) ("However, this rule has been called into question on several occasions by the Supreme Court of Idaho."); s*ee State v. Mitchell Constr. Co.*, 699 P.2d 1349, 1351 (Idaho 1984) ("We therefore do not address the issue of privity of contract in express warranty.")   As such, this Court will not extend the law regarding privity requirements for express warranties at this juncture.

Ford also makes the argument that Count 18 should be dismissed as non-actionable puffery. Courts previously have held, however, that "whether a statement by the seller was an express warranty is a question of fact." *April Beguesse, Inc. v. Rammell*, 328 P.3d 480, 492 (Idaho 2014). As such, Ford's argument for dismissal of Count 18 is premature.

[7]Plaintiff Troutman also purchased a Ford Expedition.

acceleration experienced by Plaintiff Troutman occurred first in 2007. *Id.* at ¶ 359.   The Consolidated Complaint does not indicate that Plaintiff Troutman ever took the vehicle to a Ford dealership after experiencing the unintended acceleration. *Id.*   As such, giving Plaintiff Troutman the benefit of the doubt that he had a warranty that extended to future performance, his cause of action would have begun to accrue in 2007, at the latest.   Also, as stated before, there is no indication that Plaintiff Troutman ever took his vehicle to a Ford dealership upon discovering its unintended acceleration.   *Id.*   Therefore, there is no argument for tolling due to fraudulent omission or concealment on the part of Ford.   As such, the latest that Plaintiff Troutman could have brought his complaint regarding the Ford Mustang would have been sometime in 2011, four years after the first unintended acceleration event in 2007.   Plaintiff Troutman brought his claim in July 2013.   Therefore, his claim for breach of express warranty on his Ford Mustang is barred by the statute of limitations, and the Court **DISMISSES** Count 28 with respect to the Mustang.[8]

---

[8]Count 28 is not dismissed with respect to Plaintiff Troutman's Ford Expedition.   Ford argues that Count 28 should be dismissed in regard to the Expedition because Plaintiff Troutman failed to sufficiently plead his claim.   The Court finds Ford's argument unpersuasive at this stage of litigation.   Under Kentucky law, "an express warranty may be created by any affirmation of fact or promise made by a seller which relates to the goods." *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982).   An express warranty must also be "part of the basis of the bargain" between the parties. *Id.* at 1291 (quoting Ky. Rev. Stat. Ann. § 355.2-313(1)(a)). Plaintiff Troutman has alleged facts that, if true, would satisfy each requirement.   In the Consolidated Complaint, Plaintiff Troutman alleged two kinds of statements that qualify as an "affirmation of fact or promise": (1) that Ford "expressly warranted to repair and adjust to correct defects in materials and workmanship of any part supplied by Ford," and (2) that Ford "expressly warranted through statements and advertisements that the Ford Vehicles were of high quality, and at a minimum, would actually work properly and safely." *Consol. Compl.*, at ¶¶ 710-711.   As such, the Court will not dismiss Count 28 at this time, with regard to Plaintiff Troutman's Ford Expedition.

-8-

2.
*Breach of Implied Warranty of Merchantability*
*(Counts 8, 11, 19, 68, & 98)*

*(California—Timothy Matthews; Idaho—Rhoda Jeffers;*
*New York—Michael Antramgarza; Washington—Shelley Riley)*

Turning next to claims for breach of implied warranty of merchantability, Plaintiffs cite a California case, *Ehrlich v. BMW of N. Am., L.L.C.*, 801 F. Supp. 2d 908, 924–25 (C.D. Cal 2010), in support of their argument that if a plaintiff has a warranty that extends to future performance, thereby tolling the express warranty claims, the warranty (extending to future performance) tolls any implied warranty claims as well.   Upon further review of other cases from California, in addition to case law from other States in which Ford has raised this statute of limitations defense, the Court finds this unpersuasive.


Although *Ehrlich* marks a departure from this trend, "[c]ourts have consistently held [an implied warranty] is not a warranty that explicitly extends to future performance of goods." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014) (quoting *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 20 (Cal. Ct. App. 2008)); *accord W. Recreational Vehicle, Inc., v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550 (9th Cir. 1994) ("[I]mplied warranties, by their very nature, never explicitly extend to future performance."); *Clark v. De Laval Separator Corp.*, 639 F.2d 1320, 1325 (5th Cir. 1981); *Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667, 669 (7th Cir.1981); *Standard All. Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813 (6th Cir. 1978); *In re Lone Star Indus., Inc., Concrete R.R. Cross Ties Litig.*, 776 F. Supp. 206, 220 (D. Md. 1991) ("It is well established that an implied warranty cannot extend to the future performance of goods. . . . There is overwhelming authority that when the sale of goods is involved,

implied warranties cannot extend to future performance of the goods."); *Holdridge v. Heyer-Schulte Corp.*, 440 F. Supp. 1088 (N.D.N.Y. 1977).

"In effect, therefore, there is no 'duration' of the implied warranty under the Uniform Commercial Code in any meaningful sense; the product is either merchantable or not (and a breach of the implied warranty occurs or not) only at the time of delivery." *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 290 (Cal. Ct. App. 2009); *accord Dickerson v. Mountain View Equip. Co.*, 710 P.2d 621, 626 (Idaho Ct. App. 1985) ("The implied warranty of merchantability relates to the condition of goods at the time of the delivery and does not extend to the future."). In a Missouri district court case interpreting Kentucky law, the Court noted:

> The plain meaning of the words of § 355.2-725(2) is the best expression of the legislative intent: "A cause of action accrues when the breach occurs, . . . . A breach of warranty occurs when tender of delivery is made . . . ." The plain meaning of these words is that the statute of limitations begins to run when the delivery of the product is tendered to the purchaser. To read this statute in any other way would be to construe it against its plain and unambiguous meaning.

*Teel v. Am. Steel Foundries*, 529 F. Supp. 337, 343 (E.D. Mo. 1981). Therefore, "[a]n action for breach of implied warranty must be commenced within four years from the date that the defendant tenders delivery of the product. The cause of action accrues upon tender of delivery despite the aggrieved party's lack of knowledge of the breach." *Vanata v. Delta Int'l. Mach. Corp.*, 702 N.Y.S.2d 293, 295 (N.Y. App. Div. 2000) (citing *Camillo v. Olympia & York Prop. Co.*, 554 N.Y.S.2d 532 (N.Y App. Div. 1990)).

As such, the discovery exception regarding section 2 of UCC § 2-725 does not apply to the implied warranty claims brought by Plaintiffs, and therefore, absent any tolling, all

Plaintiffs' causes of action under the implied warranty theory would have accrued on the purchase date of their respective Ford vehicle. However, Plaintiffs Rhoda Jeffers and Shelley Riley plead that they took their vehicles to a Ford dealership, after events of unintended acceleration, and allege they were told, something to the effect of, "there is nothing wrong" with the vehicle.[9] *Consol. Compl.*, at ¶¶ 347, 352. These Plaintiffs provided no details regarding the date upon which the first event of unintended acceleration occurred, the date when Plaintiffs took their vehicle to the Ford dealership for inspection, or what specifically the Ford dealership relayed to them. In the absence of this information, which is necessary for the Court to evaluate any tolling arguments, the Court **DENIES** the motion with respect to the implied warranties of Plaintiffs Jeffers and Riley in Counts 19 and 98, respectively.

The only Plaintiff that the Court has enough information at this point to make a ruling on with regard to the statute of limitations defense as to implied warranty claims is Plaintiff Timothy Matthews. The Consolidated Complaint indicates that Plaintiff Matthews purchased his Ford vehicle on July 24, 2007. *Consol. Compl.,* at ¶ 28. The first event of unintended acceleration occurred in 2013, upon which he immediately took it to a Ford dealership. *Consol. Compl.*, at ¶ 355. However, as indicated above in the discussion interpreting the statute of limitations for implied warranty claims, Plaintiff Matthews' cause of action began accruing in 2007 when the vehicle was tendered to him. As the first event of unintended acceleration, and the subsequent visit to the Ford dealership, occurred in 2013, it already was outside the four-year statute of

---

[9]The Consolidated Complaint is very vague regarding the specifics of what each Ford dealership relayed to each individual Plaintiff when they took their vehicle in to be inspected due to unintended acceleration.

limitations.   The latest date that Plaintiff Matthews could have brought this action would have been in July of 2011, four years from his purchase date in 2007.   Furthermore, the statute of limitations on Plaintiff Matthews' claim cannot be tolled by omission or concealment because he did not take his vehicle into the Ford dealership until after the statute of limitations for his implied warranty claim already had run.   Therefore, the Court **DISMISSES** Plaintiff Matthews' claim for breach of implied warranty of merchantability found in Count 8.[10]

Similarly, Count 11 is dismissed.   "[T]he Song-Beverly Act does not include its own statute of limitations.   Instead the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by . . . . the Uniform Commercial Code: section 2725." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014). *See Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 291 (Cal. Ct. App. 2009) ("California courts have held that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by the same statute that governs the statute of limitations for warranties arising under the Uniform Commercial Code . . . ."). As such, "the statute of limitations for an action for breach of warranty under the Song-Beverly Act is four years . . . ." *Mexia*, 95 Cal. Rptr. 3d at 292.   Pursuant to the discussion above, regarding when implied warranty claims begin to accrue, Plaintiff Matthews' implied warranty claim under the Song-Beverly Act also began to accrue on the date he purchased

---

[10]The fact the Court lacks similar information regarding Plaintiffs Jeffers and Riley is precisely why it denies Ford's motion with respect to these two Plaintiffs.   The Court does not know if Plaintiffs Jeffers and Riley took their vehicles to Ford during their four-year statute of limitations for implied warranty claims, which began running on the date of purchase of each Plaintiff's vehicle, and if anything represented to Plaintiffs by the Ford dealerships would be enough to toll the statute of limitations due to fraudulent omission or concealment.

his vehicle in 2007.   Therefore, the latest he could have brought his claim under Count 11 would have been in 2011, four years after the purchase date.   Plaintiff Matthews filed his claim in June of 2013.   Therefore, the Court **DISMISSES** Count 11 as it is barred by the four-year statute of limitations.

Furthermore, although there is not enough information on Count 68 to dismiss it as barred by the statute of limitations, Ford argues that this Count should be dismissed because Plaintiff Michael Antramgarza cannot establish privity with Ford.   New York law generally requires privity of contract in order to assert a breach of implied warranty to recover for economic losses against a manufacturer.   As such, because Plaintiff Antramgarza is only in privity of contract with the seller, he would be barred from asserting his claims against Ford.   However, Plaintiff Antramgarza cites an unreported district court case, *Hubbard v. General Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. 1996), where the court recognized an exception to the privity requirement "where the product in question is a 'thing of danger.'" 1996 WL 274018, at *5.   Plaintiff Antramgarza argues that his claim falls within the "thing of danger" exception.

In reviewing this exception, the Court has found that several courts since the *Hubbard* decision have not followed its line of reasoning due to its contradiction of decades of established New York case law.   A recent case that did not follow the *Hubbard* "thing of danger" exception, reasoned as follows:

> *Hubbard*, an unreported case, relies almost exclusively on the New York Court of Appeal's 1963 decision in *Goldberg* [*v. Kollsman Instrument Corp.*, 12 191 N.E.2d 81 (N.Y. 1963))], which held that a personal injury plaintiff can bring an implied warranty claim against a manufacturer even in the absence of privity.

However, in the more than 50 years since *Goldberg* was decided, no New York state court has adopted *Hubbard's* "thing of danger" exception or followed a similar approach in purely economic loss cases.  Moreover, post-*Goldberg*, New York state courts have stressed that *Goldberg* was a personal injury case and have recognized that the holding in *Goldberg* "has since been defined and refined." *Miller v. General Motors Corp.*, 471 N.Y.S.2d 280, 282 (N.Y. App. Div. 1984). Furthermore, although no New York state court has explicitly rejected (or even discussed *Hubbard*), numerous New York state court decisions have rejected economic loss claims based on a lack of privity in situations where the product at issue was clearly dangerous. *See Ofsowitz v. Georgie Boy Mfg., Inc.*, 647 N.Y.S.2d 887 (N.Y. App. Div. 1996) (dismissing cause of action for breach of implied warranty against manufacturer of a motor home after motor home caught fire when there were no allegations of personal injury); *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 793 N.Y.S.2d 576 (N.Y. App. Div. 2005) (dismissing cause of action for breach of implied warranty against manufacturer of a boiler where there was no claim for personal injuries).

Plaintiff argues that, despite the above, this Court should follow *Hubbard* because a few federal district courts have done so. *See Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 191 (N.D.N.Y. 2009); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011).  These decisions, however, provide little or no analysis explaining why *Hubbard* was rightly decided.  Accordingly, this Court declines to follow *Hubbard* and its progeny.  Instead, this Court concludes that, under New York law, there is no "thing of danger" exception to the privity rule for implied warranty claims that involve purely economic loss.

*Dixon v. Ford Motor Co.*, No. 14–CV–6135 (JMA)(ARL), 2015 WL 6437612, at *5 (E.D.N.Y. 2015).

This Court concurs with the *Dixon* Court's reasoning, and finds the *Hubbard* analysis unpersuasive.  Without a "thing of danger" exception, Plaintiff Antramgarza lacks privity with Ford regarding its claim for breach of implied warranty of merchantability. *Miller v. Gen. Motors Corp.*, 471 N.Y.S.2d 280, 282 (N.Y. App. Div. 1984) ("Where, as here, the suit has been one to recover for economic loss, it has consistently been held that a cause of action does not lie against a remote manufacturer for the breach of an implied warranty.").  Plaintiff Antramgarza

-14-

purchased his vehicle from an authorized Mercury dealership in 2004 (*Consol. Compl.*, at ¶¶ 84, 85) and has only alleged economic injury.   As such, he has failed to plead facts that he was ever in privity with Ford.   Therefore, the Court **DISMISSES** Count 68.

In conclusion, Counts 8, 11, and 68 **ARE DISMISSED** in their entirety.   The Court **DENIES** Ford's motion with respect to Counts 19 and 98.

3.
*Consumer Protection Act Claims*

a.
Kentucky Consumer Protection Act ("KCPA")
(Count 27)

(William S. Troutman)

Ford alleges that Count 27 of Plaintiffs' Consolidated Complaint, in regards to Plaintiff William S. Troutman's Ford Mustang, should be dismissed because it is time-barred. Plaintiffs did not respond to this allegation in their Reply Memorandum. *Pls.' Reply to Ford's Resp. to Pls.' Mot. for Leave to File First Am. Master Consol. Class Act. Compl.*, ECF No. 532. After reviewing the statute and a Kentucky case directly on point, the Court agrees with Ford.

"To maintain a claim for violation of the Kentucky Consumer Protection Act ("KCPA"), Plaintiff Troutman must allege that [Ford] engaged in '[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce,' Ky. Rev. Stat. Ann. § 367.170(1), and that such practices caused Plaintiff's harm." *Mitchell v. Gen. Motors L.L.C.*, No. 3:13-CV-498-CRS, 2014 WL 1319519, at *4 (W.D. Ky. Mar. 31, 2014).   Plaintiff Troutman claims that Ford violated the KCPA by misrepresenting Ford vehicles' safety "with the intent that

Plaintiff and the other Class members rely on such representation in their decision regarding the purchase, lease, and/or use of the Ford Vehicle." *Consol. Compl.*, at ¶ 700.

A person bringing a claim under Ky. Rev. Stat. Ann. § 367.170 must file the action within two years after the violation. *Mitchell*, 2014 WL 1319519, at *4; Ky. Rev. Stat. Ann. § 367.220(5).   Ford argues that Plaintiff Troutman's claim accrued on November 4, 2006, when he purchased the Mustang from the Ford dealership, because that is the time at which Ford made the alleged misrepresentation and omissions that serve as the basis for his KCPA claim.[11]   The Court agrees, and finds the statute of limitations in this action expired in November of 2008. As Plaintiff did not file his action until July of 2013, the Court **DISMISSES** Count 27 as time-barred.

b.
Ohio Consumer Sales Practices Act ("OCSPA")
(Count 75)

(Jonathan Poma)

Ford further argues that Plaintiff Jonathan Poma's Ohio Consumer Sales Practices Act ("OCSPA") claim in Count 75 should be dismissed because it is time barred.   Plaintiffs do not respond to this argument in their Reply Memorandum. *Pls.' Reply to Ford's Resp. to Pls.' Mot. for Leave to File First Am. Master Consol. Class Act. Compl.*, ECF No. 532.   Pursuant to the OCSPA, a claim "may not be brought more than two years after the occurrence of the violation which is the subject of the suit." Ohio Rev. Code Ann. § 1345.10(C).   Furthermore, courts have

---

[11]Plaintiff Troutman never alleged in the Consolidated Complaint that he took his Ford Mustang to a Ford dealership after the events of unintended acceleration in 2007 and 2008; therefore, the only omissions or misrepresentations that could have occurred, would have occurred at or before the date on which he purchased his vehicle.

held that "[w]here a plaintiff seeks recovery of damages under the OCSPA, the limitations period is absolute, and the discovery rule does not apply." *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006); s*ee Lloyd v. Buick Youngstown, GMC*, 868 N.E.2d 350, 353 (Ohio Ct. App. 1996); *Cypher v. Bill Swad Leasing Co.*, 521 N.E.2d 1142, 1144 (Ohio Ct. App. 1987).   Plaintiff Poma purchased his vehicle in March 2010, (*Consol. Compl.*, at ¶ 109), more than two years before his original Complaint was filed in June 2013.   As such, Plaintiff Poma's claim is time-barred and Count 75 **IS DISMISSED**.[12]

### 4.

*Unjust Enrichment (Count 100)*

*(Washington--Shelley Riley)*

Ford next argues that Plaintiff Riley's claim for unjust enrichment should be dismissed because it is time-barred, and she failed to sufficiently plead that she conferred a benefit on Ford.   Under Washington law, unjust enrichment claims have a three-year statute of limitations. *Eckert v. Skagit Corp.*, 583 P.2d 1239, 1240 (Wash. 1978).   The Supreme Court of Washington only has upheld a discovery rule in unjust enrichment cases in a very limited context: "construction contracts involving allegation of latent construction defects." *1000 Virginia Ltd. Partnership v. Vertects Corp.*, 146 P.3d 423, 435 (Wash. 2006).   A recent case, *Stillaguamish Tribe of Indians v. Nelson*, No. C10–327 RAJ, 2013 WL 1661244 (W.D. Wash. 2013), cited by both parties, indicated that besides the *Vertects* exception referenced above, "the court is not aware of any published Washington legal authority applying the discovery rule to an unjust enrichment

---

[12]Although the parties raise the issue of whether certain statements made by Ford constitute puffery in the context of the OCSPA, the Court need not address that issue because the claim is time barred.

claim." 2013 WL 1661244, at *13.   The Court in *Stillaguamish* later concluded that it would not apply the discovery rule because the case did not involve a construction contract.

Plaintiff Riley urges the Court to apply the discovery rule in this context noting that it is "supported by both case authority and sound policy." *Pls.' Reply to Ford's Resp. to Pls.' Mot. for Leave to File First Am. Master Consol. Class Act. Compl.*, at 61, ECF No. 532.   The Court does not find this argument persuasive.   First, the Washington Supreme Court noted the limited circumstance in which it was choosing to apply the discovery rule.   If the Washington Supreme Court wanted to create a broader discovery rule, it would have done so.   Second, since the decision in *Vertects*, other Washington courts have not attempted to expand the discovery rule to encompass other instances of unjust enrichment.   Therefore, this Court will not attempt to expand Washington law regarding the discovery rule in unjust enrichment cases at this juncture. Accordingly, because Plaintiff Riley purchased her Ford F-150 in 2005 (*Consol. Compl.*, at ¶ 148) and did not file suit until June of 2013, Plaintiff Riley's claim for unjust enrichment in Count 100 is time barred, and the Court **DISMISSES** this Count.[13]

## B.
## State Laws

### 1.
*Breach of Implied Warranty of Merchantability*
*(Count 15)*

*(Georgia—Samuel Hairston)*

---

[13]Given this decision, the Court finds it unnecessary to address whether Plaintiff Riley sufficiently pled her claim.

Ford argues Plaintiff Samuel Hairston's breach of implied warranty of merchantability claim should be dismissed because he failed to allege contractual privity existed between him and Ford, an element required under Georgia law for a breach of implied warranty claim.   In response, Plaintiff Hairston claims privity existed here because under Georgia law a manufacturer's express warranty issued to a purchaser by an authorized dealer, under Georgia law, gives rise to privity between the manufacturer and ultimate purchaser.

In support of his position, Plaintiff Hairston cites *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974).   In *Chrysler*, the Georgia court of appeals held that if an authorized automobile dealer issues the purchaser a warranty running from the manufacturer to the purchaser, privity for purposes of bringing an implied warranty of merchantability claim could exist between the manufacturer and purchaser.[14]   *Chrysler*, 208 S.E.2d at 323 (citing *Studebaker Corp. v. Nail*, 82 Ga. App. 779, 784, 62 S.E.2d 198, 202 (Ga. Ct. App.

---

[14]More specifically, the Georgia court said:

> While ordinarily . . . there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that no privity of contract exists between the two.   However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists and Code § 109A-2-314 becomes operative. *See Studebaker Corp. v. Nail*, 82 Ga.App. 779, 784, 62 S.E.2d 198 [(Ga. Ct. App. 1950)].   The manufacturer, therefore, if it desires to exclude the implied warranty arising by operation of law, must meet the requirements of Code § 109A-2-316(2), that is, by a writing expressly referring to merchantability . . . .

*Chrysler Corp.*, 208 S.E.2d at 323 (citation omitted).

1950)).   In *Studebaker Corp.*, the Georgia court of appeals stated that implied warranties generally are not created by law to "bridge the gap between the manufacturer and ultimate purchasers[,]" but the law "throws up no barrier preventing a manufacturer from itself bridging the gap.   There is no obstacle preventing a manufacturer from making a contract with an ultimate consumer to guarantee an article sold to the latter, directly or indirectly, if the elements of intention to contract and consideration are present . . . ." *Studebaker Corp.*, 62 S.E.2d at 202.

Hence, in this case, if Plaintiff Hairston can show that Ford issued him an express warranty through an authorized Ford dealer who sold him his vehicle, he can proceed with his breach of implied warranty claim despite failing to allege contractual privity between him and Ford. *Chrysler Corp.*, 208 S.E.2d at 323; *see also McQueen v. Minolta Bus. Sols., Inc.*, 620 S.E.2d 391, 393 (Ga. App. Ct. 2005) (indicating continued approval of *Chrysler*'s rule); *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010) (denying motion to dismiss claim for breach of implied warranty because, although plaintiff-purchaser failed to allege privity between it and manufacturer, under *Chrysler* a manufacturer that extends an express warranty to a purchaser is in privity of contract with the purchaser).   Accordingly, this Court **DENIES** Ford's motion to dismiss Plaintiff Hairston's claim for breach of implied warranty of merchantability in Count 15.

2.
*Idaho Consumer Protection Act*
*(Count 20)*

*(Idaho—Rhoda Jeffers)*

Ford argues Plaintiff Jeffers' claim under Idaho's Consumer Protection Act ("ICPA") should be dismissed because Plaintiff Jeffers does not allege that she was in a contractual relationship with Ford, which is required in order for an aggrieved party to have standing to bring a claim under the ICPA. *See Duspiva v. Fillmore*, 293 P.3d 651, 660 (Idaho 2013) (providing that "[i]n order to have standing under the ICPA, the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively" (internal quotation marks and citation omitted)).   Plaintiff Jeffers first responds that she did allege she had a contractual relationship with Ford, albeit through Ford's authorized agent who sold her the allegedly defective vehicle.   Plaintiff Jeffers contends that because she purchased her vehicle from an authorized Ford dealer, there is a factual issue over whether that dealer is an agent of Ford with authority to bind Ford to a contract with her.   The Idaho Supreme Court has ruled that "[t]he existence of an agency relationship is a question of fact" and "'[t]here are three separate types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party[.]'" *Am. W. Enters., Inc. v. CNH, LLC*, 316 P.3d 662, 669 (Idaho 2013) (quoting *Bailey v. Ness*, 708 P.2d 900, 902–03 (Idaho 1985)).   As Plaintiff Jeffers did allege she purchased her vehicle from an authorized Ford dealer, and because that dealer may have been an agent that bound Ford to a contract with her, Plaintiff Jeffers has pled she had a contractual relationship with Ford.[15]

---

[15]However, the Court notes the relatively low standard for surviving this motion to dismiss, and that in order to survive a motion for summary judgement, Plaintiff Jeffers will have to adduce evidence that the contract for sale she entered into contained terms that bound Ford itself and not just the authorized Ford dealer.

Second, Plaintiff Jeffers alleges that Ford extended her a "warranty of repair and/or adjustments to defective parts[.]" *Consol Compl.*, at ¶ 444. By definition, if Plaintiff Jeffers alleges that Ford extended her a warranty, she alleges that she was in a contractual relationship with Ford because warranties can arise only between contracting parties. *See Duff v. Bonner Bldg. Supply, Inc.*, 666 P.2d 650, 652 (Idaho 1983) (observing "a breach of warranty action is based on a contractual claim"). Thus, by alleging Ford breached a warranty attached to the vehicle she purchased, Plaintiff Jeffers further has alleged a contractual relationship existed between her and Ford.

Therefore, for these two reasons, the Court **FINDS** Plaintiff Jeffers has standing to bring a claim against Ford under Idaho's Consumer Protection Act and **DENIES** Ford's motion to dismiss this claim in Count 20.

3.
*Louisiana Products Liability Act (Count 32)*
*Louisiana's Unfair Trade Practices and*
*Consumer Protection Act (Count 34)*
*Fraudulent Omission (Count 35)*
*Unjust Enrichment (Count 36)*

*(La.—Shane Mayfield)*

In response to Plaintiff Shane Mayfield's claims in Count 32 for violations of Louisiana's Products Liability Act ("LPLA"), in Count 34 for violations of Louisiana's Unfair Trade Practices and Consumer Protection Act ("LUTPA"), in Count 35 for fraudulent omission, and in Count 36 for unjust enrichment, Ford argues that, under Louisiana law, redhibition is the only claim Plaintiff Mayfield may pursue based on the facts alleged. With regard to Plaintiff Mayfield's LPLA claim, Ford asserts *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644 (E.D. La.

Sept. 30, 2014), stands for the principle that when damages are available under a redhibition theory, damages are precluded under the LPLA. Recently, this argument was considered and squarely rejected by at least one Louisiana court of appeals. *See United Fire Grp. v. Caterpillar, Inc.*, Case No. 2013-CA-2115, 2014 WL 4067756, at *4–5 (La. Ct. App. Aug. 18, 2014) (unpublished) (rejecting defendant's attempt to have the court construe the LPLA to mean that the LPLA does not apply at all when redhibition is applicable); *see also Bearly v. Brunswick Mercury Marine Div.*, 888 So. 2d 309, 312 (La. Ct. App. Oct. 27, 2004) ("Although [Louisiana Rev. Stat. § 9:2800.53(5)] and its relation to a claim in redhibition has been questioned by commentators concerning its clarity, all seem to agree that the consumer will have a right to recover against the manufacturer for purely economic loss, whether under the LPLA or in redhibition."). For that reason, on the issue of LPLA claims and redhibition, this Court declines to follow the U.S. District Court for the Eastern District of Louisiana's decision in *Pitre*. Applying Louisiana courts' interpretation of Louisiana law, Plaintiff Mayfield may bring an LPLA claim for economic damages in addition to a claim for redhibition.

With regard to Plaintiff Mayfield's claims for violation of LUTPA, fraud by omission, and unjust enrichment, Ford asserts these too are barred because the LPLA establishes the sole theory of liability for manufacturers and it does not provide causes of action for UPTA violations, fraudulent omission, or unjust enrichment. Ford supports its position by citing the LPLA exclusivity provision in Louisiana Revised Statute § 9:2800.52 and *Pitre*. Plaintiff Mayfield replies that § 9:2800.53(5) and the articles in Chapter 9 of Title VII of Book III of the Louisiana Code preserves his right to assert claims for fraud and unjust enrichment against Ford.

-23-

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products.   A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA, which is codified at Title 9 of the Louisiana Code, Book III, Code Title V, Chapter 3]." La. Stat. Ann. § 9:2800.52 (2015), in part.   This quoted language is known as the exclusivity provision of the LPLA. *See Pitre*, 51 F. Supp. 3d at 662.   Section 9:2800.54(A) provides "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."   The remainder of the LPLA: (1) explains what constitutes an "unreasonably dangerous" product under the Act, *see* La. Stat. Ann. §§ 9:2800.54(B)–2800.58; (2) provides manufacturers with avenues for escaping liability, *see* § 2800.59; and (3) sets forth theories of liability under the LPLA specific to firearm manufacturers, *see* § 2800.60.   The only other LPLA provision discussing damages recoverable against a manufacturer is Section 9:2800.53(5), which states, "'[d]amage' includes damage to the product itself and economic loss . . . only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,' does not allow recovery for such damage or economic loss." La. Stat. Ann. § 9:2800.53(5), in part.

The first issue is whether the LPLA bars claims against manufacturers for fraudulent omission and unjust enrichment.   Based on the text of § 9:2800.53(5) and other federal courts' interpretation of that text, this Court concludes that § 9:2800.53(5) carves out an exception to the LPLA's exclusivity provision.   This carve-out allows plaintiffs to bring claims in

redhibition against manufacturers, but § 9:2800.53(5)'s carve-out does not permit theories of liability in addition to redhibition. La. Civ. Code Ann. Art. 2520–2548 (2015) (Chapter 9: Redhibition); *see also Pitre*, 51 F. Supp. 3d at 662.   Therefore, after reviewing the text of the LPLA, the Court finds the LPLA bars claims against manufacturers for fraudulent omission and unjust enrichment that arise from one of the manufacturer's products. *See Pitre*, 51 F. Supp. 3d at 662 (ruling LPLA bars fraudulent concealment and unjust enrichment claims against manufacturers); *see also Arabie v. R.J. Reynolds Tobacco Co*., 698 So. 2d 423, 425 (La. Ct. App. 1997) (theories of recovery not among those listed as exclusive theories of liability under LPLA are barred against manufacturers); *Scott v. Am. Tobacco Co.*, 949 So. 2d 1266, 1274 (La. Ct. App. 2007) *writ denied*, 973 So. 2d 740 (La. Jan. 7, 2008) ("Fraud claims cannot be used to circumvent the LPLA.").[16]   As a result, under Louisiana law, Plaintiff Mayfield may not bring these claims against Ford, and the Court **DISMISSES** Mayfield's fraudulent omission and unjust enrichment claims.

_____

[16]*But see Duplantis v. Miller*, 159 So. 3d 1153, 1157 (La. Ct. App. 2015) ("LPLA does not eliminate other causes of action against the manufacturer arising directly from its actions, including claims of failure to perform and unjust enrichment"); *Triche v. McDonald's Corp.*, 164 So. 3d 253, 258 (La. Ct. App. 2014) ("LPLA establishes the exclusive theories of liability for manufacturers for damages caused by their products.   However, the LPLA does not eliminate a general negligence cause of action for damages caused by the negligent use or handling of the product by the manufacturer's employee").   These cases are distinguishable from the instant one because the plaintiffs in those cases were allowed to proceed with negligence and unjust enrichment claims not based on a defective product, but instead based on the manufacturer's actions, specifically, negligently serving hot coffee, *Triche*, 164 So. 3d at 256, and unjust enrichment by breach of a promise made to the plaintiff, *Duplantis*, 159 So. 3d at 1155.   In the instant case, Plaintiff Mayfield alleges Ford was unjustly enriched because he and the class members overpaid for a defective product. *See Consol. Compl.*, at ¶¶ 781–86.   Thus, Plaintiff Mayfield's claims against Ford are related to Ford's product, and not its actions.   As such, the above cases are inapposite to this one, and the LPLA bars Plaintiff Mayfield's fraudulent omission and unjust enrichment claims because they are related to Ford's product and not Ford's actions.

The remaining issue for Plaintiff Mayfield is whether his LUTPA claim also is barred by the LPLA's exclusivity provision. Neither the Louisiana Supreme Court nor other Louisiana appellate courts have addressed whether a plaintiff may bring LUTPA claims against a manufacturer. Several district courts have, however, confronted the issue and decided the LPLA bars plaintiffs from bringing LUTPA claims against manufacturers. *See Pitre*, 51 F. Supp. 3d at 662–63; *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 767 (W.D. La. 2007). This Court is persuaded by the analysis offered by these district courts sitting in Louisiana. Specifically, the LPLA evinces the Louisiana legislature's intent to "make the LPLA the sole vehicle for a suit against a 'manufacturer'," *Bladen*, 487 F. Supp. 2d at 767, and because the LPLA specifically carves out an exception to its exclusivity provision that permits only claims in redhibition, the legislature, with full knowledge of the LUTPA when it enacted the LPLA and its carve-out,[17] intended to bar LUTPA claims against manufacturers. *Pitre*, 51 F. Supp. 3d at 662; *Bladen*, 487 F. Supp. 2d at 767. For that reason, the Court **DISMISSES** Plaintiff Mayfield's LUTPA claim against Ford.

4.
*Breach of Implied Warranty of Merchantability*
*(Count 71)*

*(NC—Quintin Williams)*

Ford argues that Plaintiff Quintin Williams' implied warranty of merchantability claim must be denied because he failed to plead he was in privity of contract with Ford, which Ford asserts North Carolina law requires for a breach of implied warranty claim. Ford's privity

---

[17] *See Bladen,* 487 F. Supp. 2d at 767 (explaining LUTPA was enacted approximately sixteen years before the LPLA).

of contract argument appears to have merit, but this concern requires only slight re-drafting of the Consolidated Complaint.   Plaintiff Williams does not dispute that North Carolina law requires privity of contract in a breach of implied warranty action involving only economic loss.[18]   Instead, he replies that he *did* plead privity in the Consolidated Complaint in paragraphs 424, 433, and 507. Paragraph 433 applies to the national class and it states, "[p]laintiffs and each of the other Class members have had sufficient direct dealings with either Ford or its agents (dealerships) to establish privity of contract between Ford, on the one hand, and Plaintiffs and each of the other Class members, on the other hand." *Consol. Compl.*, at ¶ 433.   However, neither this paragraph nor the others are properly incorporated into the implied warranty claim as paragraph 1087 only incorporates into Count 71 paragraphs 1–407. *Id.* at ¶ 1087.   As such, rather than grant Ford's motion to dismiss on the basis of a minor drafting error, the Court **DIRECTS** Plaintiff Williams to correct this omission by appropriate drafting in the revised Consolidated Complaint consistent with this Memorandum Opinion and Order.

5.
*North Carolina Unfair and Deceptive Trade Practices Act*
*(Count 72)*

*(NC—Quintin Williams)*

Ford makes three arguments for dismissal of Plaintiff Williams' claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA").   First, Ford argues the "economic loss rule" precludes the NCUDTPA claim.   North Carolina courts have not decided whether the economic loss rule bars NCUDTPA claims.   *See Ramsey v. Bimbo Foods*

---

[18]North Carolina law does require privity in such cases. *Gregory v. Atrium Door & Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992).

*Bakeries Distrib*, No. 5:15-CV-6-BR, 2015 WL 1611339, at *7 (E.D.N.C. Apr. 10, 2015) (citation omitted).   As a result, most federal courts in North Carolina have declined to find the economic loss rule bars UDTPA claims. *See id.* (citing *Ellis v. Louisiana–Pac. Corp.*, 699 F.3d 778, 786–87 (4th Cir. 2012); *Yancey v. Remington Arms Co.,* Nos. 1:12CV477, 1:12CV437, 1:10CV918, 2013 WL 5462205, at *10 n. 13 (M.D.N.C. Sept. 30, 2013)); *but see Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006) (dismissing NCUDTPA claim by applying economic loss rule).   This federal court, sitting in diversity, declines to do that which North Carolina courts have not—extend the economic loss rule to bar a NCUDTPA claim. *See Time Warner Entm't– Advance/Newhouse P'ship v. Carteret–Craven Elec. Membership Corp.*, 506 F.3d 304, 315 (4th Cir. 2007) ("[A]s a court sitting in diversity, we should not create or extend the North Carolina common law"); *see also Ramsey*, 2015 WL 1611339, at *7.   The only relevant authority cited by Ford to support its argument that the economic loss rule should be applied to bar the UDTPA claim is *Bussian*, which was decided well before the Fourth Circuit clarified in *Ellis* that federal courts should decline to extend North Carolina's economic loss rule if North Carolina courts have not first done so.   In light of the Fourth Circuit's clear command, this Court declines to apply the economic loss rule to dismiss the NCUDTPA claim.

Ford's second and third attacks against the NCDUPTA claim assert that Plaintiff Williams failed to plead with particularity, and he failed to plead "reasonable reliance."   "In order to state a claim under the [NCUDTPA], a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Ellis v. Louisiana–Pac. Corp.*, 699 F.3d 778, 787

(4th Cir. 2012) (citing *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 910 (N.C. App. Ct. 2002)) (internal quotations omitted).

In essence, Ford asserts Plaintiff Williams failed to allege facts that satisfy the first, second, and third prongs of a NCUDTPA claim. *See Ford Motor Co.'s Resp. to Pls.' Mot. for Leave to File First Am. Master Consol. Class Act. Compl.*, at 36–37, ECF No. 452.   First, Ford claims Plaintiff Williams failed to plead with particularity what misrepresentations or omissions by Ford were unfair or deceptive under the NCDUTPA.   Second, Ford maintains Plaintiff Williams failed to allege *how* Ford's actions affected commerce.   Third, Ford asserts Plaintiff Williams failed to plead reasonable reliance, which North Carolina law requires for proof of proximate cause.

With regard to prong one, the deceptive or unfair practice prong, Plaintiff Williams alleges in the Consolidated Complaint that Ford committed unfair or deceptive acts under North Carolina law.   "Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981) (citation omitted).   For purposes of the NCUDTPA, a practice is deceptive, even if it was a true statement that did not actually deceive the plaintiff, so long as the act "possessed the tendency or capacity to mislead, or created the likelihood of deception." *Chastain v. Wall*, 337 S.E.2d 150, 154 (N.C. App. Ct. 1985) (citation and internal quotations omitted).   "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *In re Fifth Third Bank, Nat.*

*Ass'n-Vill. of Penland Litig.*, 719 S.E.2d 171, 176 (N.C. App. Ct. 2011) (citation and internal quotations omitted).   The North Carolina Court of Appeals further has explained, "[e]gregious or aggravating circumstances must be alleged before the [NCUDTPA] may take effect.   Aggravating circumstances include conduct of the breaching party that is deceptive.   Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered." *Becker*, 561 S.E.2d at 910–11 (internal citations omitted).   Here, Plaintiffs allege Ford had knowledge of a defect in its product's ETC System. *Consol. Compl.*, at ¶¶ 7–8.   Despite its knowledge, Ford never disclosed the defect to consumers, blamed sudden unintended acceleration events on driver error or other circumstances, and continued to market its vehicles as safe. *Id.* at ¶¶ 9–10, 214.   The practice of knowing about a defective product but then failing to disclose that to consumers and instead marketing the product as safe and offering an alternative explanation for the manifestation of that defect, if true, could constitute conduct that "has the capacity or tendency to deceive and mislead," *see Chastain*, 337 S.E.2d at 154, or an unfair practice under the NCUDTPA, *see Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 398 (N.C. 2007) (observing that violations of some statutes can constitute unfair and deceptive trade practices); *In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*, 719 S.E.2d at 176 (ruling violation of a consumer protection statute may constitute a per se violation of the UDTPA).   Thus, the Consolidated Complaint alleges facts that satisfy the deceptive or unfair practice prong of the NCUDTPA.

With regard to prong two, requiring the deceptive act was in or affecting commerce, Plaintiff Williams alleged facts that, if true, would satisfy this prong.   Where a defendant and

-30-

plaintiff have engaged in buyer-seller relations in a business setting, an allegedly deceptive transaction is in or affecting commerce for purposes of the NCUDTPA. *See Sara Lee Corp. v. Carter*, 519 S.E.2d 308, 311 (N.C. 1999) (noting NCUDTPA applies to dealings between buyers and sellers at all levels of commerce).   Here, Ford sold an allegedly defective product to a North Carolina consumer in a business setting.   Therefore, the allegedly deceptive act was in or affecting commerce for purposes of the NCUDTPA.   The Court rejects Ford's assertion that Plaintiff Williams must allege further facts pertaining to how Ford's actions affected commerce or the consuming public.   A transaction between a buyer and seller in a business setting constitutes a transaction that is in or affecting commerce. *Carter*, 519 S.E.2d at 312.   The Court finds the Consolidated Complaint alleges facts sufficient to satisfy the NCUDTPA's commerce prong.

With regard to the last prong, which calls for proximate cause, Ford asserts the NCUDTPA claim should be dismissed because Plaintiff Williams failed to plead "reasonable reliance."   Where a NCUDTPA claim is based on an alleged misrepresentation, the plaintiff must show it actually and reasonably relied on the misrepresentation in order to show the alleged misrepresentation "proximately caused" the plaintiff's injury. *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (N.C. 2013); *Sunset Beach Dev., LLC v. AMEC, Inc.*, 675 S.E.2d 46, 53 (N.C. App. Ct. 2009) (citation and internal quotations omitted).   Plaintiff Williams replies by stating that his NCUDTPA claim is not based solely on misrepresentation, it also is based on "what Ford did by putting unsafe vehicles on the road," and claims not based on fraud or misrepresentation "only require[] deception." *Pls.' Reply to Ford's Resp. to Pls.' Mot. for Leave to File First Am. Master Consol. Class Act. Compl.*, at 44, ECF No. 532 (citing to *Mitchell v.*

-31-

*Linville*, 557 S.E.2d 620, 623 (N.C. App. Ct. 2001)).   The Court notes that NCUDTPA claims require reliance only if the claim is based on fraud or misrepresentation. *See Bumpers,* 747 S.E.2d at 226 (stating "a claim under [the NCUDTPA] stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause"); *State ex rel. Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *15 (N.C. Super. Aug. 27, 2015) (not requiring reliance in NCUDTPA claim that was not based on misrepresentation); *State ex rel. Cooper v. NCCS Loans, Inc.*, 624 S.E.2d 371, 378 (N.C. App. Ct. 2005) (ruling defendant committed deceptive act despite no actual deception having taken place). *But see Bumpers*, 747 S.E.2d at 226 (requiring reliance in NCUDTPA claim alleging overcharging, reasoning overcharging constitutes misrepresentation).   For instance, violations of statutes designed to protect the consumers and violations of "established public policy" may constitute unfair and deceptive practices that violate the NCUDTPA, even if the plaintiff did not rely on the conduct that violated the statute or policy. *NCCS Loans, Inc.*, 624 S.E.2d at 379 (quoting *Stanley v. Moore*, 454 S.E.2d 225, 228 (1995)).   Therefore, the Court will not dismiss the NCUDTPA claim on the ground that reliance was not pled.[19]

---

[19]However, in light of Plaintiff Williams' admission that he did not allege reliance, the Court notes the limited conduct that can now form the basis of the NCUDTPA claim.   Plaintiff Williams has not alleged actual or reasonable reliance and, therefore, he has forgone using any misrepresentation or fraud by Ford as the basis for his NCUDTPA claim.   North Carolina courts, in determining whether an NCUDTPA claim is based on fraud or misrepresentation, go beneath the surface of what the plaintiff is arguing and may find a claim based on fraud or misrepresentation even where the plaintiff labels it otherwise. *See Bumpers*, 747 S.E.2d at 227. For instance, in *Bumpers*, a case where the plaintiff brought a NCUDTPA claim based on overcharging, the North Carolina Supreme Court held reliance was required. *Bumpers*, 747 S.E.2d at 227.   Specifically, the defendant-fuel supplier in that case misrepresented in its bills the amount of oil delivered, and the plaintiff relied on that bill resulting in defendant overcharging the plaintiff. *Id.*   The North Carolina Supreme Court held "a claim for overcharging is not distinct from one based on misrepresentation." *Id.*   Thus, Plaintiff Williams' NCUDTPA claim, in the absence of

-32-

In summary on Ford's second and third attacks against the NCDUPTA claim, taking the Consolidated Complaint's allegations as true, Ford's conduct—knowing about a defect but failing to disclose it to complaining consumers, and instead offering an alternative explanation for the defect's manifestation while touting its vehicles as safe—could, as a matter of law, violate the NCUDTPA. *See Walker*, 653 S.E.2d at 398 (violations of some statutes can constitute unfair and deceptive trade practices); *Hanes v. Darar*, 722 S.E.2d 211 (N.C. App. Ct. 2012) (ruling conduct amounting to more than just breach of contract was substantial aggravating circumstance that violated NCUDTPA).[20]   Based on the Consolidated Complaint's allegations alone, it would be improper to dismiss the NCUDTPA claim before receiving evidence and arguments adduced by the parties on the issue of whether Ford's conduct violated the NCUDTPA.   Therefore, the Court declines to adopt Ford's second and third arguments and **DENIES** dismissal of the NCUDTPA claim on the grounds that Plaintiff Williams failed to plead with particularity or failed to allege actual reliance.

6.
*Breach of Implied Warranty of Merchantability*
*(Count 94)*

*(Va.—David and Inez Patton)*

---

alleged reliance, may not explicitly or implicitly rely on Ford's alleged misrepresentation or fraud. Additionally, a breach of warranty, even if intentional, is not sufficiently unfair or deceptive to sustain a UDTPA claim. *Ellis*, 699 F.3d at 787 (citing *Wachovia Bank & Trust Co. v. Carrington Dev. Assocs.*, 459 S.E.2d 17, 21 (N.C. App. Ct. 1995)).

[20]"'Ordinarily, once the [facts of a case have been found], the court . . . then determines, as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce.'" *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000)).

Ford argues that the breach of implied warranty claim brought by Plaintiffs David and Inez Patton should be dismissed because it was not plead sufficiently to state a claim for relief under Virginia law.   More specifically, Ford asserts the Consolidated Complaint fails to allege two elements required under Virginia law—that a significant element of the buying public would object to buying the goods, or that the vehicles are not reasonably capable of performing their ordinary functions. *Ford Motor Co.'s Resp. to Pls.' Mot. for Leave to File First Am. Master Consol. Class Act. Compl.*, at 45, ECF No. 452.   To support the proposition that Virginia law requires these elements, Ford cites to *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 503 (Va. 1999), where the defendant appealed the sufficiency of the evidence supporting the trial court's ruling.

In reply to Ford, Plaintiffs David and Inez Patton contend that *Bayliner* does not establish the elements required for a breach of implied warranty of merchantability claim, but instead the standard for proving that claim.   To support their argument, they point to *Hubbard v. Dresser, Inc.*, 624 S.E.2d 1, 5 (Va. 2006), which clarified that *Bayliner* was addressing an evidentiary standard and not a pleading standard.

After reviewing these two cases, the Court concludes Plaintiffs David and Inez Patton are correct—Ford's reliance on *Bayliner* is misplaced.   In *Hubbard*, the Supreme Court of Virginia clarified that *Bayliner* addressed the evidentiary burden for an implied warranty of merchantability claim, and not the elements required to state such a claim. *See Hubbard*, 624 S.E.2d at 5 (*Bayliner* did not hold that a claim for breach of implied warranty of merchantability

requires pleading the trade or industry standard for merchantability).   Instead, a claim for breach of the implied warranty of merchantability requires pleading violation of Virginia Code § 8.2–314, which demands that goods be "merchantable," meaning they are "of a quality that would pass without objection in the trade under the contract description," or "are fit for the ordinary purposes for which such goods are used." *Hubbard*, 624 S.E.2d at 5.

Here, Plaintiffs David and Inez Patton's allegations, if true, state a claim for relief under § 8.2–314.   The Consolidated Complaint alleges that Ford is a manufacturer of automobiles, and that the automobile Plaintiffs David and Inez Patton purchased from Ford had an ETC system that would "open wide as the brake was applied to park the car," (*Consol. Compl.*, at ¶ 372), and this problem was due to a defect in the ETC system. *Id.* at ¶ 373.   It is more than plausible that an automobile should not accelerate when the user applies the brake, and that an automobile that does such would not "pass without objection in the trade," because it is not "fit for the ordinary purposes for which such goods are used." *Hubbard*, 624 S.E.2d at 5.   Thus, while Plaintiffs David and Inez Patton will have the burden of proving these allegations at trial, the allegations themselves are adequate to state a plausible claim for breach of the implied warranty of merchantability under § 8.2–314.   Accordingly, this Court **DENIES** Ford's motion to dismiss Plaintiffs David and Inez Patton's claim for breach of the implied warranty of merchantability.

## C.
## Magnuson-Moss Warranty Act
### (Count 1)

The Magnuson-Moss Warranty Act ("MMWA") provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied

warranty. 15 U.S.C. § 2310(d)(1).   To determine whether there has been a breach of a written or implied warranty in violation of the MMWA, courts must apply applicable state express and implied warranty law. " *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (noting it is "beyond genuine dispute that, as to both implied and written warranties, Congress intended the application of state law . . .") (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013–14 (D.C. Cir. 1986); *Abraham v. Volkswagen of America*, 795 F.2d 238, 247–49 (2d Cir. 1986)).   Ford argues for dismissal of MMWA claims brought by Plaintiffs in California, Georgia, Idaho, Kentucky, Maryland, New York, North Carolina, and Washington because, according to Ford, these plaintiffs do not have valid underlying state warranty claims, implied or express.[21]

In order to rule on Ford's argument for dismissing Count 1 as to these Plaintiffs, the Court must look to its dispositions in this Opinion on implied and express warranty claims brought by Plaintiffs in the following Counts: 8 (California implied), 10 (California express), 11 (California implied), 15 (Georgia implied), 18 (Idaho express), 19 (Idaho implied), 28 (Kentucky express), 29 (Kentucky implied), 38 (Maryland express), 67 (New York express), 68 (New York implied), 71 (North Carolina implied), 97 (Washington express), and 98 (Washington implied).

---

[21]Plaintiffs concede that in order to bring an implied warranty MMWA claim, they must have a viable state law implied warranty claim.   However, Plaintiffs contend that a "written warranty" MMWA claim does not hinge on having a viable state law express warranty claim. Instead, according to Plaintiffs, in order to have a viable written warranty MMWA claim, a plaintiff merely must allege a breach of what constitutes a "written warranty" under the MMWA, as specifically defined at 15 U.S.C. § 1201(6).   Plaintiffs' argument that written warranties under the MMWA operate independently of state law definitions of express warranties has been foreclosed by the Fourth Circuit. *See Carlson*, 883 F.2d at 291 (citing *Walsh*, 807 F.2d at1013–14; *Abraham*, 795 F.2d at 247–49 (ruling that, as to both implied and written warranties under MMWA, Congress intended the application of state law)).

For those Plaintiffs who still have a valid state law express or implied warranty claim, their MMWA claim also survives Ford's argument for dismissing Count 1 as to that Plaintiff. *See* 15 U.S.C. §§ 2310(d)(1) (providing cause of action to consumers damaged by breach of written or implied warranty), 2301(6) (defining written warranties in a way that encompasses state law express warranties that are written), 2301(7) (defining implied warranties for purposes of the act in terms of state law); *see also Walsh*, 807 F.2d at 1012 ("Congress sought only to supplement state warranty law by prescribing certain minimum standards for warrantors, and by affording consumers additional avenues for redress."); *Carlson*, 883 F.2d at 291 (finding Congress intended state express warranty law would guide the determination whether a written warranty had been created under MMWA).

In addition to those express and implied warranty claims which no longer have a named Plaintiff (Counts 13, 24, 42, 43, 53, 54, 63, & 90), the Court dismisses Counts 8, 11, 28 (in part), 29, and 68 for the above stated reasons.   The other express and implied warranty claims remain viable after this Court's opinion.   Therefore, the following MMWA claims are not dismissed and remain in this action under Count 1, those brought by Plaintiffs in West Virginia, Georgia, Idaho, Maryland, Minnesota, Montana, North Carolina, South Carolina, Virginia, and Washington.   This leaves for the Court to determine whether MMWA claims brought by the California, New York, and Kentucky Plaintiffs survive dismissal of some or all of their warranty claims.

The California and New York Plaintiffs can maintain their MMWA claims, despite having their implied warranty claims dismissed, because they still maintain express warranty claims (Counts 10 and 67) that could plausibly serve as a basis for a MMWA written warranty claim. *Carlson*, 883 F.2d at 291.   Likewise, although Plaintiff Troutman's implied warranty claim under Kentucky law was dismissed, his breach of express warranty claim only was dismissed as to his Ford Mustang.   It was not dismissed as to his Ford Expedition.   Thus, this claim also could plausibly serve as a basis for a MMWA claim.   Accordingly, the Court likewise declines to dismiss MMWA claims in Count 1 brought by Plaintiffs in California, New York, and Kentucky.

**D.**
**Rule 9(b)**

In the Memorandum Opinion and Order entered on November 14, 2014, the Court denied Ford's motion to dismiss Plaintiffs' fraudulent omission claims under a heightened pleading standard pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *Johnson v. Ford Motor Co.*, *sub nom Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W. Va. Nov. 14, 2014).   Instead, the Court determined "that a more relaxed standard under Rule 9(b) should apply in omission cases because a plaintiff cannot be required to specifically identify the precise time, place, and content of an event that did not occur." *Id*.   Shortly after this decision, the Fourth Circuit issued a decision in *Murphy v. Capella Education. Co.*, 589 Fed. Appx. 646 (4th Cir. 2014). Ford argues that the Court should reconsider its prior ruling in light of *Murphy* and apply the higher standard under Rule 9(b) to fraud claims involving omissions.   Upon review of *Murphy*, the Court finds Ford's argument unpersuasive.

First, the Court recognizes that *Murphy* is an unpublished *per curiam* opinion with no binding precedent in the Fourth Circuit. *Murphy*, 589 Fed. Appx. at *648 ("Unpublished opinions are not binding precedent in this circuit."). Second, there is no indication in *Murphy* that the issue of whether a more relaxed standard for fraudulent omission claims was raised by the parties, and it was not directly addressed by the Fourth Circuit. Third, since *Murphy* was decided, at least one district court within the Fourth Circuit has continued to apply a more relaxed standard to fraudulent omission claims, finding it consistent "with the Fourth Circuit's instruction that '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Naparala v. Pella Corp.*, No. 2:14-mn-00001-DCN, 2:14-mn-03465-DCN, 2015 WL 2379492, at *7 (D.S.C. May 19, 2015), (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Thus, based upon these considerations and for the reasons stated in the Memorandum Opinion and Order entered on November 14, 2014, the Court rejects Ford's argument that the fraud by omission claims are subject to dismissal under a heightened 9(b) standard. *See Consol. Compl.*, at ¶¶ 4, 9, 17, 21, 30, 39, 49, 60, 69, 73, 87, 95, & 99.

Ford also makes a number of Rule 9(b) arguments with respect to Plaintiffs' consumer protection act claims, unfair competition, and false advertising claims. For instance, Ford argues that Plaintiff Charles T. Burd's claim under the West Virginia Consumer Credit and Protection Act (WVCCPA), West Virginia Code § 46A-6-101 *et seq.*, in Count 5 should be dismissed for two reasons. First, Ford argues that Plaintiff Burd failed to plead that he gave Ford

notice of his alleged claims as required by West Virginia Code § 46A-6-106(c). This section provides that "no action . . . may be brought pursuant to the provisions of . . . [the WVCCPA] until the person has informed the seller or lessor in writing and by certified mail . . . of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation . . . to make a cure offer[.]" W. Va. Code § 46A-6-106(b). In the Consolidated Complaint, Plaintiff Burd asserts that "all pre-suit notice requirements under W. Va. Code § 46A-6-106 have been satisfied." *Consol. Compl.*, at ¶ 476. Pursuant to Rule 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. 9(c). As Plaintiff Burd's allegations satisfy Rule 9(c), the Court will not dismiss his claim based upon this argument.

Second, Ford argues that Plaintiff Burd's claim under the WVCCPA sounds in fraud, but it is not plead with particularity as required by Rule 9(b). Thus, Ford asserts the claim must be dismissed. In Count 5, Plaintiff Burd alleges that Ford engaged in deceptive and misleading trade practices in violation of the WVCCPA in several ways. Listed under paragraph 471 of the Consolidated Complaint are several acts Plaintiff Burd asserts constitute "[u]nfair methods of competition and unfair or deceptive acts or practices," pursuant to W. Va. Code § 46A-6-104. *Consol Compl.*, at ¶¶ 471-72. In reviewing these allegations, the Court finds Plaintiff Burd claims, in part, that Ford "[f]ailed to disclose material information concerning Ford Vehicles, which information was known to it at the time of advertising and selling Ford Vehicles, all of which was intended to induce consumers to purchase Ford Vehicles[.] *Id.* at ¶ 471(e). As this allegation is one of fraudulent omission, it is subject to the more relaxed 9(b) standard. In

addition, Plaintiff Burd "repeats and realleges paragraphs 1 through 407" in Count 5. *Id*. at ¶ 468. To that end, paragraphs 374 through 400 describe the omissions Plaintiffs allege occurred.[22] Based upon this Court's review of all these allegations, the Court finds Plaintiff Burd meets the more relaxed 9(b) standard and **DENIES** Ford's argument with respect to Count 5.

Ford makes similar Rule 9(b) motions with respect to Plaintiffs' other consumer protection act claims, unfair competition, and false advertising claims.[23]   In examining the allegations for each of these claims, the Court finds that they all allege claims based, at least in part, on fraudulent omissions, similar to what existed in Count 5. *Compare, e.g.*, Count 5, at ¶ 471(e) (asserting Ford "failed to disclose material information"), *with* Count 6, at ¶¶ 482 & 486 (alleging Ford "failed to adequately disclose" and "Plaintiffs relied on . . .  omissions of Ford with respect to the quality, safety, and reliability of the Ford Vehicles"); Count 7, at ¶¶ 493-94 (asserting Ford violated California's False Advertising Law because it made "omissions regarding the safety and reliability of its Ford Vehicles [that were] material and likely to deceive a reasonable consumer" and Plaintiffs "relied on the misrepresentations and/or omissions of Ford with respect to the safety and reliability of the Ford Vehicles"); Count 37, at ¶ 792 (c) & (d) (providing "Ford failed to inform Plaintiff and the other Class members of the [defect] . . . [and omitted] material

---

[22] These paragraphs also describe material misrepresentations and concealment that allegedly occurred.

[23] *See id.* at Count 6 (California Unfair Competition Law); Count 7 (California False Advertising Law); Count 37 (Maryland Consumer Protection Act); Count 46 (Minnesota False Statement in Advertising Act); Count 47 (Minnesota Uniform Deceptive Trade Practices Act); Count 48 (Minnesota Prevention of Consumer Fraud Act); Count 83 (Pennsylvania Unfair Trade Practices and Consumer Protection Law); Count 89 (Texas Deceptive Trade Practices Act); Count 93 (Virginia Consumer Protection Act); and Count 96 (Washington Consumer Protection Act).

facts" in order to sell vehicles); Count 46, at ¶ 861 (alleging Ford "failed to advise the public about what it knew about the defective nature of the Ford Vehicles"); Count 48, at ¶¶ 876 & 877 (asserting Ford "failed to advise the public about what it knew about the defective nature of the Ford Vehicles" and "Plaintiff and the other Class members relied on Ford's silence as to known defects in connection with their decision regarding the purchase and/or lease of the Ford Vehicles"); Count 83, at ¶ 1196 (stating "Ford failed to . . . disclose . . . the defect"); Count 89 at ¶ 1257 (asserting "Ford failed to disclose information"); Count 93, at ¶ 1294 (alleging "Ford omitted material facts regarding the safety of the Ford Vehicles"); and Count 96, at ¶¶ 1325 & 1326 (stating Ford engaged in a "generalized course of deception" and "[a]ll the wrongful conduct alleged herein occurred").   All of these claims also repeat and reallege paragraphs 1 through 407. Accordingly, for the same reason the Court found Count 5 sufficient, the Court finds these claims meet the more relaxed standard under Rule 9(b) and **REJECTS** Ford's arguments.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons and the reasons set forth in the Memorandum Opinion and Order entered on September 15, 2015, the Court **GRANTS, in part,** and **DENIES, in part**, Motion for Leave to File First Amended Master Consolidated Class Action Complaint. ECF No. 381.  The Court will permit Plaintiffs to file a Consolidated Complaint; however, Plaintiffs should edit the current version to be consistent with this Court's rulings. Specifically, in addition to removing the proposed new Plaintiffs and any claims or facts related solely to those Plaintiffs, the Court **DIRECTS** Plaintiffs to remove the following claims:   Counts 8, 11, 12, 13, 14, 16, 22, 23, 24, 25, 26, 27, 28 (only with respect to Plaintiff Troutman's Ford Mustang), 29, 34, 35, 36, 41, 42, 43, 44, 45, 52, 53, 54, 55, 56, 62, 63, 64, 65, 68, 75, 76, 77, 78,

79, 80, 82, 84, 88, 90, 91, 92, and 100.   The Court further **DIRECTS** Plaintiffs to correct the drafting error in Count 71 in the revised Consolidated Complaint, consistent with this Memorandum Opinion and Order.   The Court **ORDERS** the revised Consolidated Complaint be filed within fourteen (14) days of today.


The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.


ENTER:        November 24, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE