**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

| | |
|---|---|
| **CHARLES JOHNSON, et al.,**<br>**Plaintiffs,**<br>**v.** | **CIVIL ACTION NO.:**<br>**3:13-cv-6529 (consolidated)**<br><br>**Judge Robert C. Chambers** |
| **FORD MOTOR COMPANY,**<br>**Defendant.** | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR REQUEST
FOR AN AWARD OF ATTORNEYS' FEES, EXPERT FEES, AND COSTS**

Pursuant to this Court's December 29, 2017 Order (ECF No. 1120), Plaintiffs respectfully submit this memorandum in support of their request for an award of attorneys' fees, expert fees, and costs as provided by the Court's December 27, 2017 Memorandum Opinion and Order "find[ing] that an award of attorneys' fees, expert fees, and costs are warranted to compensate Plaintiffs for any reasonable expense they can demonstrate was attributable to Ford's misrepresentations related to the level of security it used to protect its source code" (ECF No. 1111 ("Sanctions Order") at 19.  For the reasons discussed below, as well as in the accompanying affidavit of John Tangren ("Aff."), Ford should be ordered to pay the requested award.

## BACKGROUND

The security with which Ford protects its source code first became an issue in this case on April 3, 2015, when this Court denied Ford's motion for a protective order preventing any production of source code and directed the parties to meet and confer on a special protective order regarding source code.  (ECF No. 421.)  Throughout April and May 2015, the parties met and conferred on the scope and language of the source code protective order.  On April 29, 2015, the parties reported to this Court that they had reached impasse on fundamental aspects of the source

code protective order.  This Court decided to hold a hearing in late May and requested written

submissions in advance.  (ECF No. 498.)

Ford filed its Memorandum Regarding Source Code Protective Order on May 22, 2015.

This submission included many of the misrepresentations that the Court identified in its Sanctions

Order, including

> that the source code for its Electronic Throttle Control ("ETC") system "has never
> been produced or provided to any third party, even a Ford supplier, in the manner
> that Plaintiffs propose, and for good reason."  Ford stated it would be catastrophic
> if the source code was divulged to its competitors or terrorists.  Ford insisted that,
> if it was necessary for someone on the outside to see the source code for some
> purpose, it had to be viewed "'at a Ford facility on a Ford supplied computer with
> a Ford employee present and operating the computer.'"

(Sanctions Order at 5 (citations omitted).)  Plaintiffs filed their responsive Memorandum in

Support of Reasonable Production of Relevant Source Code on May 26, 2015.  (ECF No. 504.)

This Court then held a hearing on May 28, 2015 on the source code protective order.  As

the Court noted, Ford's misrepresentations continued at that hearing:

> Ford also zealously maintained it never permitted the source code to leave its
> possession.  Ford stated its "ETC source code has never been produced, ever, never,
> ever been produced in the format that the plaintiffs are requesting to anyone.  Not
> suppliers, not third-party suppliers, no one."  Magistrate Judge Eifert specifically
> asked defense counsel whether Ford had ever used a virtual private network (VPN)
> or allowed the code to be reviewed anywhere other than a secure Ford facility.
> Defense counsel represented that it had not occurred, and its restrictions apply to
> everyone, including Ford's employees.  Counsel further represented that a VPN
> was not secure enough to alleviate Ford's concerns about keeping the source code
> protected.

(Sanctions Order at 6-7 (citations omitted).)  Two weeks later, "[a]s a result of Ford's

representations that calamity would strike if the source code ever left Ford's facilities," (Sanctions

Order at 7), this Court issued its June 12, 2015 Order on the production of source code, holding

that any review of source code must take place "in a secure room in a secure facility where access

to the room may be strictly controlled" (ECF No. 543 at 21 (footnote omitted)) and ordering the parties to meet and confer on the remaining terms of the source code protective order.

The parties continued to meet and confer on the terms of the source code protective order through the summer of 2015. This Court devoted most of its September 16, 2015 discovery hearing to the unresolved issues on the source code protective order, mainly relating to whether the setup of the workstations in the secure room. (ECF No. 639.) This issue was resolved by this Court's September 22, 2015 Order (ECF No. 627), and the parties submitted a final protective order that was entered by the Court on September 25, 2015 (ECF No. 630), nearly six months after this Court first rejected Ford's suggestion that it need not produce any source code. The fees and expenses that could be identified that were incurred by Plaintiffs' counsel and experts during the process of preparing, negotiating, and arguing the source code protective order are detailed in the accompanying Affidavit and Exhibits. (*See* Aff. ¶¶ 6-7, 12-13, 17, 19-20 & Exs. A, B, G, H, L, N, and O.)

Beginning in October 2015, once Ford had made its initial source code production in the secure room set up in Dearborn, Michigan, and leading up to the close of discovery in June 2017, Plaintiffs' experts made numerous trips to the secure room to review and analyze Ford's source code. This necessitated considerable travel expenses, as well as hindering the review of the source code by Plaintiffs' experts in an environment they could not control. Plaintiffs' counsel also spent considerable time and cost supporting and coordinating this review, such as coordinating the armed guard's schedule with Ford's counsel, in ways that would not have been needed if review did not proceed in the secure room. The fees and expenses that could be identified that were incurred by Plaintiffs' counsel and experts that are directly attributable to reviewing in the secure room, rather than in a setting of Plaintiffs' experts' choosing, are also detailed in the accompanying Affidavit

and Exhibits.  (*See* Aff. ¶¶ 6-7, 15-18 & Exs. A, B, J, K, L, and M.)  Plaintiffs have not attempted, however, to quantify the additional time resulting from the inefficiencies resulting from reviewing code in a secure room without access to certain materials that would have expedited the review.

In April 2017, while searching through Ford's document production outside of the secure room, Plaintiffs' expert Philip Koopman discovered that Ford had frequently sent via unencrypted emails to competitors and other third parties the very source code files that it had represented it never permits to leave a Ford secure facility.  Plaintiffs' counsel and experts then started performing work to confirm that the source code files attached to Ford's emails were materially the same as those files produced in the source code room.  (*See* Aff. ¶¶ 10-11, 15, 17 & Exs. E, F, J, and L.)  Once this was confirmed, Plaintiffs' counsel and experts then began work on preparing their motion for relief related to Ford's discovery misconduct, which they filed on June 16, 2017. (ECF No. 996.)  Work on the briefing of this motion and related matters, such as Ford's motion for an extension of time to file its response (ECF No. 1001), continued up until November 27, 2017, when Plaintiffs filed their response to Ford's sur-reply (ECF No. 1067).

Plaintiffs' motion for relief relating to Ford's discovery misconduct raised two different issues:  "(1) first, whether Ford made material misrepresentations to the Court that impacted this litigation to the detriment of Plaintiffs; [and] (2) second, whether Ford failed to produce source code in violation of the Court's orders."  (ECF No. 1111 at 5.)  Because the Court found that sanctions are appropriate as to the first of these issues, but not the second (*see* Sanctions Order at 19-20), Plaintiffs are seeking reimbursement for only half of the fees and expenses incurred as a result of briefing their motion for relief relating to Ford's discovery misconduct.  (*See* Aff. ¶¶ 8-9, 14-15, 19-20 & Exs. C, D, I, J, N, and O.)

On December 27, 2017, the Court granted Plaintiffs' motion for relief related to Ford's discovery misconduct in part, finding that Plaintiffs are entitled to an award of their fees and costs attributable to misrepresentations that Defendant Ford Motor Company made to this Court regarding the security it provided its source code.  (*See* Sanctions Order at 1-12, 19-20.)  This Order gave rise to the present request for attorneys' fees, expert fees, and costs.  Plaintiffs have not included in their request, however, any time spent in analyzing this Order, reviewing their time and expense records, or preparing this submission.

## LEGAL STANDARD

As this Court has previously noted, "when calculating an award of reasonable fees and costs, the Court must 'determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'"  *Scott Hutchinson Enters., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 55 (S.D. W. Va. 2016) (Eifert, M.J.) (quoting *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009)).  This Court considers the following twelve factors when making this determination:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Scott Hutchinson*, 318 F.R.D. at 55-56 (quoting *Robinson*, 560 F.3d at 243-244).

## ARGUMENT

In the course of preparing this cost and fee submission, Plaintiffs have been mindful of the Fourth Circuit's guidelines in *Robinson*, and have thus included only those costs and fees that were

reasonably and directly caused by Ford's misrepresentations concerning the security with which it protects its source code. Those costs and fees break down into three general categories.

*First*, Plaintiffs seek the time and cost of preparing, negotiating, and arguing the source code protective order, which proved to have been unnecessary in light of Ford's misrepresentations. If Ford had no issue with emailing its source code to third parties in unencrypted emails, it should have raised no objection to producing its source code to Plaintiffs pursuant to the protective order already in place (ECF No. 169), which already provided a much higher level of security than Ford provided itself. (*See* Sanctions Order at 11 (noting that "Plaintiffs' counsel and experts also are bound by strict confidentiality provisions and protective orders"). Plaintiffs have limited their request, however, to the time and costs attributable to the protective order itself, to the exclusion of the time spent on other source code issues, such as whether Ford must produce its code in "write-access" format and the scope of Ford's source code production, which were apparently unaffected by the Court's Sanctions Order. (*See id.* at 12-19.) There are many time entry descriptions in Plaintiffs' counsel and expert's time records that refer to source code issues more generally; such entries have not been included in Plaintiffs' submission where they could not be determined to relate specifically to the source code protective order. (Aff. ¶ 21.)

*Second*, Plaintiffs seek reimbursement of the time and expenses that can be reasonably and directly attributed to Plaintiffs having been ordered to review Ford's source code in a secure room. Plaintiffs have been able to segregate and itemize certain travel time and expenses, as well as other expenses that would have been unnecessary, in this category. However, as noted above, Plaintiffs do not seek reimbursement for the additional time and expenses due to the fact that Plaintiffs' experts reviewed less efficiently in the secure room than they would have in an environment more

conducive to their analysis, notwithstanding that any such additional time was undoubtedly considerable.

**Third**, Plaintiffs seek reimbursement for the time and expenses incurred in investigating Ford's transmittal of source code by email. Such investigation and motion practice would clearly not have been necessary had Ford been "forthright with the respect to the level of security it provided its source code." (Sanctions Order at 20.)

Within these three limited categories, as detailed in the accompanying Affidavit and Exhibits, Plaintiffs have tabulated the following attorneys' fees and experts' fees:

| Expert/Law Firm | Hours (Adjusted) | Lodestar Amount | Exhibit |
|---|---|---|---|
| Barr Group | 347.25 | $145,701.25 | A |
| Bartimus Frickleton Robertson & Rader | 6.60 | $3,630.00 | C |
| DiCello Levitt & Casey LLC | 76.35 | $54,805.00 | D |
| Edge Case Research | 174.25 | $50,362.50 | E |
| Grant & Eisenhofer P.A. | 157.30 | $129,770.00 | G |
| Isaac Wiles Burkholder & Teetor, LLC | 1.90 | $828.00 | I |
| Philip Koopman | 112.66 | $65,342.80 | J |
| Slavik Law | 129.65 | $61,463.75 | L |
| Spilman Thomas & Battle, PLLC | 255.88 | $100,759.88 | N |
| **Total** | **1,261.84** | **$612,663.18** | |

Additionally, Plaintiffs have tabulated the following expenses:

| Expert/Law Firm | Expenses (Adjusted) | Exhibit |
|---|---|---|
| Barr Group | $57,537.70 | B |
| Edge Case Research | $2,819.68 | F |
| Grant & Eisenhofer P.A. | $4,324.28 | H |
| Isaac Wiles Burkholder & Teetor, LLC | $828.00 | I |
| Philip Koopman | $5,619.99 | K |
| Slavik Law | $5,962.25 | M |
| Spilman Thomas & Battle, PLLC | $2,736.57 | O |
| **Total** | **$79,828.47** | |

Under the first of the *Robinson* factors, "the time and labor expended," 560 F.3d at 243, Plaintiffs' detailed accounting of the time and costs they have expended supports their request.

The second and third *Robinson* factors also weigh in favor of Plaintiffs' requested award. As this Court is aware, the source code protective order, the review and analysis of Ford's source code, and the briefing of Plaintiffs' motion involved difficult and complex issues both of law and computer science. In resolving Plaintiffs' motion for relief relating to Ford's discovery misconduct, the Court renewed the appointment of Dr. Sanders to assist with these highly technical issues. (ECF No. 1062.) The "novelty and difficulty of the questions raised" by these source code issues, as well as "the skill required to properly perform the legal services rendered" in discovering Ford's misconduct and successfully seeking sanctions, should be both be considered by this Court under *Robinson*. *Id.*

The application of the customary hourly rate for the attorneys and experts involved is appropriate.[1] *See id.* (including as a factor "the customary fee for like work"). This action is a nationwide, complex class action, involving the consumer-protection and product-liability claims of Plaintiffs from seventeen states. (*See* ECF No. 686.) Plaintiffs are represented by counsel who are national leaders in the consumer protection field and possess substantial nationwide class action litigation experience. (*See generally* Dkt. No. 43.) This experience also supports Plaintiffs' request under *Robinson*. *See* 560 F.3d at 243 (including as a factor "the experience, reputation and ability of the attorney"). Furthermore, given the nature of this complex litigation, the hourly rates typical for Plaintiffs' counsel in their respective home districts should be applied to the work

---

[1] Most of the hourly rates sought by Plaintiffs' attorneys and experts are the current hourly rates that they charge to clients. The Fourth Circuit allows for the use of current hourly rates, rather than historical rates, to compensate for the passage of time, which is appropriate here where the conduct at issue dates back to April 2015. *Reaching Hearts Int'l, Inc. v. Prince George's County*, 478 F. App'x 54, 60-61 (4th Cir. 2012). The hourly rates for the attorneys of Spilman Thomas & Battle, PLLC are based on the rates that were recently submitted as reasonable hourly rates for West Virginia counsel practicing complex litigation in *Good v. West Virginia-American Water Co.*, No. 14-1374, 2017 WL 2884535, at *27 (S.D. W. Va. July 6, 2017) (noting with approval hourly rates for attorneys as high as $575 per hour).

performed in this action.  *See Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 767 (D. Md. 2001) ("Courts have looked to the prevailing market rate outside of the local community…where the litigation was complex….").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court order Ford to pay Plaintiffs for their attorneys' fees, expert fees, and costs in the amount of $692,491.65.

Dated: January 19, 2018                    Respectfully submitted,

/s/ *Niall A. Paul*
Niall A. Paul (WV Bar No. 5622)
**SPILMAN, THOMAS & BATTLE, PLLC**
300 Kanawha Boulevard, East
Charleston, West Virginia  25301
Tel: (304) 340-3800
npaul@spilmanlaw.com

Nathan B. Atkinson (WV Bar No. 10757)
**SPILMAN THOMAS & BATTLE, PLLC**
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina 27103
Tel:  (336) 725-4710
natkinson@spilmanlaw.com

Adam J. Levitt (IL Bar No. 06216433)
John E. Tangren (IL Bar No. 06279906)
**DICELLO LEVITT & CASEY LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel:  (312) 214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com

Mark A. DiCello (OH Bar No. 0063924)
Robert F. DiCello (OH Bar No. 0072020)
**DICELLO LEVITT & CASEY LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Tel:  (440) 953-8888
Fax:  (440) 953-9138
madicello@dicellolaw.com
rfdicello@dicellolaw.com

9

Jeff A. Almeida (DE Bar No. 5128)
Kyle J. McGee (DE Bar No. 5558)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, Delaware 19801
Tel:  (302) 622-7000
Fax:  (302) 622-7100
jalmeida@gelaw.com

Timothy C. Bailey (WV Bar No. 5839)
L. Lee Javins, II (WV Bar No. 6613)
**BAILEY, JAVINS & CARTER, L.C.**
213 Hale Street
Charleston, West Virginia 25301
Tel:  (304) 932-4639
Fax:  (304) 345-0375
Timbailey@BJC4U.com
Ljavins@BJC4U.com

James R. Bartimus (KS Bar No. 22303)
Anne M. Tarvin (KS Bar No. 26565)
**BARTIMUS, FRICKLETON**
  **ROBERTSON & RADER PC**
11150 Overbrook Road, Suite 200
Leawood, Kansas 66211
Tel:  (913) 266-2300
Fax:  (913) 266-2366
jb@bflawfirm.com
atarvin@bflawfirm.com

Gregory M. Travalio (OH Bar No. 0000855)
Mark H. Troutman (OH Bar No. 0076390)
**ISAAC WILES BURKHOLDER**
  **& TEETOR, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Tel:  (614) 221-2121
Fax:  (614) 365-9516
gtravalio@isaacwiles.com
mtroutman@isaacwiles.com

10

Stephen M. Gorny (MO Bar No. 45417)
**THE GORNY LAW FIRM, LC**
2 Emanuel Cleaver II Blvd., Suite 410
Kansas City, Missouri  64112
steve@gornylawfirm.com

Brad Honnold
**GOZA & HONNOLD, L.L.C.**
11181 Overbrook Road
Suite 200
Leawood, Kansas  66211
Tel:  (913) 451-3433
bhonnold@gohonlaw.com

John T. Murray (OH Bar No. 0008793)
Margaret M. Murray (OH Bar No. 0066633)
**MURRAY AND MURRAY CO., L.P.A.**
111 East Shoreline Drive
Sandusky, Ohio 44870
Tel:  (419) 624-3000
Fax:  (419) 624-0707
jotm@murrayandmurray.com

John Scarola (FL Bar No. 169440)
C. Calvin Warriner III (FL Bar No. 374131)
**SEARCY DENNEY SCAROLA**
 **BARNHART & SHIPLEY, P.A.**
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Tel:  (800) 780-8607
Fax:  (561) 686-6300
jsx@searcylaw.com
ccw@searcylaw.com

Joseph J. Siprut (IL Bar No. 6279813)
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois 60602
Tel:  (312) 236-0000
Fax:  (312) 948-9212
jsiprut@siprut.com

E. Powell Miller (MI Bar No. P39487)
Richard L. Merpi II (MI Bar No. 75255)
Martha J. Olijnyk (MI Bar No. P60191)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Tel:  (248) 841-2200
Fax:  (248) 652-2852
epm@millerlawpc.com
rlm@millerlawpc.com
mjo@millerlawpc.com

Keith G. Bremer
Alison K. Hurley (CA Bar No. 234042)
Benjamin L. Price (CA Bar No. 267400)
**BREMER WHYTE BROWN
  & O'MEARA, LLP**
20320 S.W. Birch Street, Second Floor
Newport Beach, California 92660
Tel:  (949) 221-1000
Fax:  (949) 221-1001
kbremer@bremerwhyte.com
ahurley@bremerwhyte.com
bprice@bremerwhyte.com

Guy R. Bucci (WV Bar No. 521)
**BUCCI LAW FIRM**
200 Capitol Street, Suite 200
Charleston, West Virginia  25301
Tel:  (304) 344-0020
Fax:  (304) 344-0029
guy@buccilawfirm.com

Paul Bucci (WV Bar No. 7889)
**LAFFEY BUCCI KENT LLP**
1435 Walnut Street, Suite 700
Philadelphia, Pennsylvania, 19102
Tel:  (215) 399-9255
Fax:  (215) 241-8700
pbucci@laffeybuccikent.com

Stephen J. Fearon, Jr. (NY Bar No. 2432474)
**SQUITIERI & FEARON, LLP**
32 East 57th Street, 12th Floor
New York, New York 10022
Tel:  (212) 421-6492
Fax:  (212) 421-6553
stephen@sfclasslaw.com

Donald H. Slavik (CO Bar No. 33860)
**SLAVIK LAW FIRM, LLC**
2834 Blackhawk Court
Steamboat Springs, CO 80487
Tel:  (970) 457-1011
Fax:  (267) 878-7697
dslavik@slavik.us

*Counsel for Plaintiffs*