IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES JOHNSON, et al.,

        Plaintiffs,

v.                          CIVIL ACTION NO. 3:13-6529

FORD MOTOR COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Ford Motor Company's Motion for Summary Judgment. ECF No. 1055. In its motion, Ford argues the Court should grant summary judgment in its favor for a number of reasons. Given the complexity of this litigation, the Court limits this Memorandum Opinion and Order to Plaintiffs' warranty and unjust enrichment claims. For the following reasons, the Court **GRANTS** summary judgment in favor of Ford on these claims.

## I.
## FACTUAL AND
## PROCEDURAL BACKGROUND

In 2013, Plaintiffs filed three related putative Class Action Complaints in this Court.[1] As the three cases involved common issues of fact, the Court consolidated the cases in

---

[1] The original cases were referred to as *Belville v. Ford Motor Co.*, 3:13-6529; *Smith v. Ford Motor Co.*, 3:13-14207; and *Brandon v. Ford Motor Co.*, 3:13-20976. These cases were filed with the Court on March 28, 2013, June 12, 2013, and July 25, 2013, respectively.

August 2013 for discovery and pretrial purposes. The lead case became *Belville v. Ford Motor Co.*, 3:13-6529.

In their original Complaints, Plaintiffs assert they purchased or leased certain models of Ford vehicles between the years 2002 and 2010. Plaintiffs claim all their vehicles are equipped with a defectively-designed electronic throttle control (ETC) system.[2] Although the parties' analysis of the ETC system is highly technical, on a basic level Plaintiffs allege that the ETC's design is unable to identify and mitigate faults (errors) that may cause the throttles in their vehicles to open and provide greater power than demanded by the drivers, resulting in an unintended acceleration (UA). It is undisputed that faults can occur for various reasons and be sent to the system from a variety of sources. Regardless of the precipitating cause of the fault, however, Plaintiffs argue the problem is that the ETC's design is not fault tolerant and it should have included a failsafe system, such as a Brake Over Accelerator (BOA) system. Plaintiffs insist a properly designed system will stop or mitigate the occurrence of an unintended acceleration.[3] As Plaintiffs assert a design defect, rather than manufacturing defect, Plaintiffs claim their vehicles were dangerous and defective at the time of purchase and, as a result, they paid more to purchase or lease their vehicles than their actual worth.[4] Plaintiffs do not seek any damages for personal injury, wrongful death, or property damage as a result of any unattended acceleration event.

---

[2] Plaintiffs state that their vehicles generally include those equipped with the second generation ETC system ("Gen II"), with three-track contacting Pedal Position Sensors.

[3] A BOA system sometimes is referred to as a Brake Override System.

[4] In the alternative, some Plaintiffs state they would not have purchased their vehicles at all.

After Plaintiffs filed their original Class Action Complaints, Ford filed motions to dismiss all three cases. Following a hearing on the matter, the Court entered a Memorandum Opinion and Order on March 31, 2014, granting, in part, and denying, in part, Ford's motion. *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528 (S.D. W. Va. 2014).[5] Of all the Plaintiffs in *Belville*, only two actually had experienced an unintended acceleration event. *Id*. at 535. With respect to those who had not experienced an unintended acceleration, Ford argued, *inter alia*, they could not pursue breach of warranty and related claims because the alleged defect had not manifested in their own vehicles. Plaintiffs insisted, however, that it was unnecessary for them to have experienced an unintended acceleration because the manifestation is the defective design itself. Although these Plaintiffs never experienced any problems with their actual vehicles, they claimed they did not receive the benefit of their bargain and overpaid for their vehicles because their vehicles are defective. *Id*. at 537.

Upon consideration, the Court rejected Plaintiffs' argument with respect to their claims for breach of express and implied warranty and unjust enrichment. In its analysis, the Court agreed with those courts that held "'[w]here . . . a product performs satisfactory and never exhibits an alleged defect, no cause of action lies.'" *Id*. at 535 (quoting *Briehl v. General Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) (finding no cause of action for breach of express and implied warranties and fraudulent concealment where plaintiffs never claimed failure in brake performance and only sought damages for lost resale value and overpayment)); *Carlson v. General Motors Corp.*, 883 F.2d 287, 298 (4th Cir. 1989) (affirming lower court's dismissal of claims of lost resale

---

[5]As the lead case was *Belville*, the Court entered the main Memorandum Opinion and Order in that action and entered Orders in the other two cases finding that the main Memorandum Opinion and Order applied with equal force in all three cases.

value by plaintiffs who had not alleged that they experienced engine difficulties in their own vehicles); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997) (finding no cause of action for breach of warranty, fraud, or negligent misrepresentations for allegedly defective integrated child seat in vehicle where the putative plaintiff's child seat never malfunctioned); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657-58 (D. N.J. 1986) (stating breach of warranty and common law fraud require damage and the plaintiff had not suffered actual damage where he alleged his engine was "likely" to leak); *Wilson v. Style Crest Products, Inc.*, 627 S.E.2d 733, 736-37 (S.C. 2006) (affirming summary judgment in favor of the defendant where the allegedly defective anchor tie down systems for the plaintiffs' manufactured homes had not failed and the plaintiffs got the benefit of their bargain). As the court stated in *Weaver*, "[i]t is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." 172 F.R.D. at 99 (citations and quotation marks omitted). Stated differently, if "a product performs satisfactory and never exhibits the alleged defect, no cause of action lies." *Id*. at 100 (citation omitted).

Following the Court's analysis, the Court concluded that, for those Plaintiffs who had not experienced a manifestation of a sudden unintended acceleration, their warranty and unjust enrichment claims must be dismissed. The Court found "Plaintiffs simply have failed to demonstrate a plausible claim that they paid more for their vehicles than their actual worth when they have used their vehicles without incident for many years." 13 F. Supp. 3d at 542. Since that determination nearly three years ago, the Court has not wavered from its decision that a manifestation of the alleged defect is an unintended acceleration.[6]

---

[6]In addition, Plaintiffs did not file a motion for this Court to reconsider that decision.

Following the decision, Plaintiffs sought to file a 497-page First Amended Master Consolidated Class Action Complaint, consolidating all three actions and identifying new parties, new claims, and new defect theories. Ford opposed the motion, arguing Plaintiffs were attempting a do-over, which would precipitate a new round of 12(b)(6) motions on many of the same claims the Court already resolved. Additionally, Ford noted the parties had not even completed the briefing over the impact the Court's March 31 Memorandum Opinion and Order had on 89 of the individual claims made in the original three Complaints. Upon consideration, the Court agreed with Ford, and it entered an Order on July 25, 2014, denying Plaintiffs' motion without prejudice so that the Court could resolve the parties' disputes about the original claims and provide the parties additional guidance. *Belville v. Ford Motor Co.*, Civ. Act. No. 3:13-6529, 2014 WL 3732132 (S.D. W. Va. July 25, 2014). Following briefing on the disputed claims, the Court entered a Memorandum Opinion and Order on November 14, 2014, further delineating what claims survived and what claims were dismissed. *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690 (S.D. W. Va. 2014).

Thereafter, Plaintiffs again sought to file a Consolidated Complaint.[7] On September 15, 2015, the Court granted Plaintiffs' motions to consolidate the three actions into a single action (now styled as *Johnson v. Ford Motor Co.*) and to include new factual allegations and revise and add claims for existing Plaintiffs. *Johnson v. Ford Motor Co.*, Civ. Act. No. 3:13-6529, 2015 WL 5443550 (S.D. W. Va. Sept. 15, 2015). However, the Court denied Plaintiffs' attempt to add sixteen new Plaintiffs or add any new facts or new claims related solely to those

---

[7]A motion was filed in each of the three pending actions.

proposed Plaintiffs.[8] *Id.* at *2. The Court also held in abeyance Ford's challenges to certain specific claims. *Id.* at *3. On November 24, 2015, the Court entered another Memorandum Opinion and Order ruling on the remaining matters and directing Plaintiffs to file a revised Consolidated Complaint consistent with the Court's decisions. *Johnson v. Ford Motor Co.*, Civ. Act. No. 3:13-6529, 2015 WL 7571841 (S.D. W. Va. Nov. 24, 2015). On December 8, 2015, Plaintiffs filed their Second Amended Master Consolidated Class Action Complaint. ECF No. 686. Now, following over three years of voluminous fact and expert discovery, Ford moves for summary judgment.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of

---

[8]Plaintiffs also omitted the names of six previously named Plaintiffs. The Court denied Plaintiffs' attempt to simply drop those individuals from the action without filing a motion pursuant to Rule 41 of the Federal Rules of Civil Procedure. *Id.*

proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.
### DISCUSSION

As detailed above, the complaints in this case have gone through various stages of transformation. As of now, there are nineteen named Plaintiffs (which includes two corporations) from seventeen states. Collectively, Plaintiffs assert a Magnuson-Moss Warranty Act claim and various state law claims, including, but not limited to, breach of warranty, unjust enrichment, fraud, and a variety of consumer protection claims. Of the named Plaintiffs, all but two have alleged they experienced an unintended acceleration in their Ford vehicles.[9] However, Ford argues in its motion that, for even those Plaintiffs who allege they have experienced an unintended acceleration, they "have failed to adduce any competent evidence that . . . any of the unwanted acceleration events they allegedly experienced resulted from an ETC defect[.]" *Ford Motor Co.'s Mem. in Supp. of Mot. for Summ. J.*, at 1, ECF No. 1056.[10] For the following reasons, the Court agrees.

---

[9]Neither Plaintiff John McGee nor Plaintiff Hasen Design Build & Development, Inc. allege that they experienced an unintended acceleration event. These Plaintiffs do not assert any warranty claims or unjust enrichment claims.

[10]Ford also generally asserts that Plaintiffs have not produced "competent evidence that . . . any of their vehicles have a defect that causes or fails to mitigate unwanted acceleration events . . . or . . . that any of them have paid any premium or experienced any diminution in their vehicles' value as the result of any alleged defect." *Id.*

Importantly, at this point, the Court has not certified a class, and the Court restricts its focus to whether the individual Plaintiffs have produced competent evidence from which a reasonable juror could find that the alleged defect in the ETC system resulted in their unintended acceleration events. Plaintiffs concede, and their experts agree, that unintended accelerations can occur for reasons unrelated to the ETC system. For instance, an unintended acceleration can occur as the result of driver error, such as the driver stepping on the gas pedal instead of the brake or the driver unintentionally stepping on the gas and brake pedal at the same time, referred to as "fat footing." Other known causes for unintended accelerations that are not associated with the electronics of the ETC include, *inter alia*, a floor mat inadvertently covering the gas pedal, the gas pedal being mechanically entrapped by a foreign object placed in the floor well, or build-up of combustion debris in the throttle body.

Given there are many potential causes of unintended accelerations, the mere fact Plaintiffs allege they experienced unintended accelerations is not evidence that the alleged defect caused the acceleration. As this Court previously held, in order to establish either a breach of warranty or unjust enrichment claim, there must be a manifestation-an unintended acceleration-*caused by* the alleged defect. In other words, Plaintiffs must produce evidence of a causal link between their alleged unintended accelerations and the alleged defect in order to avoid summary judgment on their breach of warranty and unjust enrichment claims.

In support of their case, Plaintiffs theorize that the three-track throttle pedal assembly of the class vehicles is defective because it can send faults that are unmitigated by Ford's Gen II ETC system. Dr. Todd Hubing, Plaintiffs' designated expert in the areas of automotive

electromagnetic testing and automotive design, identified a number of potential sources for these pedal sensor faults, including: worn or contaminated sensors, water intrusion, tin whiskers, solder balls or metal flakes, chaffing of the wire harness, loose or mal-fitted connectors, corroded connectors, electrical component failures, software bugs, and electromagnetic interference. *Expert Report of Dr. Todd H. Hubing*, at 13-14 (June 15, 2017), ECF No. 1073-5, at 14-15. However, Dr. Hubing did not examine or test any of Plaintiffs' individual vehicles to determine if these conditions actually existed. *Dep. of Dr. Hubing*, 64-66 (July 18, 2017), ECF No. 1055-1, 67-69. Additionally, he said in his deposition that he had not read the Complaint or Plaintiffs' depositions, and he could not say that the vulnerability he believed existed in the ETC design actually caused an unintended acceleration event in any of Plaintiffs' personal vehicles. *Id.*, at 54, 100, & 128, ECF No. 1055-1, at 65, 77, & 80.

Similarly, Dr. Marthinius van Schoor, who was designated by Plaintiffs as an expert in automotive systems, testing, and design, opined that there are defects with the use of resistive sensors on the pedal assembly. *Expert Report of Dr. Marthinius C. van Schoor*, at 19 (July 12, 2017), ECF No. 1057-4 at 20. In particular, Dr. van Schoor identified two pedal sensor issues: (1) sludge buildup on the throttle from Smeared Ink debris and/or HydroCarbon films and other foreign materials and/or (2) wear on the throttle position sensor and its subcomponents. *Id.*; *Dep. of Dr. van Schoor*, at 124 (July 31, 2017), ECF No. 1055-4, at 12; *Dep. of Dr. van Schoor*, at 45, ECF No. 1057-3, at 4. Nevertheless, as with Dr. Hubing, Dr. van Schoor stated that he had not inspected any of the named Plaintiffs' individual vehicles or reviewed any of their depositions. *Dep. of Dr. van Schoor*, at 29-30, ECF No. 1055-4, at 3-4.[11]

---

[11] Dr. van Schoor believed he had read the Complaint. *Id.* at 29, ECF No. 1055-4, at 3.

Dr. Phillip Koopman, who is Plaintiffs' designated electrical and computer engineer with a specialization in automotive systems, testing, and design, also identified the contact sensors in the throttle pedal assembly as a potential source of faults that could result in an unintended acceleration. *Expert Report of Dr. Philip Koopman*, at 23-24, Opinions 6-8, & 12 (June 14, 2017), ECF No. 1057-7, at 25-26. In fact, Dr. Koopman recommends pedal replacement as part of the remedy to fix the alleged defects with the class vehicles. *Id.* at 24, Opinion 13, ECF No. 1057-7, at 26.[12] In addition, Dr. Koopman said at this deposition that he believed Plaintiffs' accounts of unattended accelerations were consistent with the defects he mentioned in his report. *Dep. of Dr. Koopman* at 90-91 (July 28, 2017), ECF No. 1101-2, at 91-92.[13] However, he further stated that he had not personally inspected any of Plaintiffs' actual vehicles, and he did not know if any of Plaintiffs' vehicles actually had conditions such as wire chaffing or degraded sensor contacts. *Id*. at 88-89, 92-93, ECF No. 1101-2, at 89-90, 93-94.

Likewise, Joellen Gill, Plaintiffs' expert in human factors and automotive safety, gave no opinion as to the cause of Plaintiffs' unintended acceleration events. *Dep. of Joellen Gill*, at 31 (July 7, 2017), ECF No. 1099-73, at 3. ("Q. You're also not giving any opinions regarding the cause of any of the plaintiffs' UA accidents, correct? A. You are correct."). Additionally, David Bilek, Plaintiffs' forensic engineer and designated expert on automotive safety and automotive investigation protocol, stated he had not formed any opinion about whether Plaintiffs' vehicles had a defect that resulted in an unintended acceleration. *Dep. of David Bilek*. at 14-15 (July 14, 2017),

---

[12]Dr. Koopman also recommends that the ETC system be reflashed. *Id*.

[13]Dr. Koopman also stated that he had reviewed the Complaint. *Id*. at 86-87, ECF No. 1101-2, at 87-88.

ECF No. 1055-1, at 5.[14] Mr. Bilek agreed with Ford's counsel that "some percentage of complaints about unwanted acceleration events arise from drivers misapplying the pedals, essentially mistakenly hitting the gas pedal when they intend to hit the brake pedal[.]" *Id*. at 136, ECF No. 1055-1, at 29. Moreover, he agreed that one cannot simply accept a particular plaintiff's perception of what happened and should use forensic engineering principles to determine what actually happened. *Id*. at 46-47, ECF No. 1055-1, at 10.

Despite Plaintiffs' experts' failure to test or inspect Plaintiffs' actual vehicles, there is no dispute many of those vehicles were available as many of the named Plaintiffs still own and continue to drive their allegedly defective vehicles. In fact, although not determinative to the Court's decision today, one of Ford's experts, Karl E. Stopschinski,[15] inspected and tested the ten vehicles Plaintiffs made available to Ford in which Plaintiffs alleged an unintended acceleration occurred. Mr. Stopschinksi examined:

> the powertrain control module (PCM), wiring harnesses and electrical connectors, accelerator pedal assembly, throttle body and throttle valve, brake system, driver's foot well area, imaging of the PCM/RCM data (if available), connecting the Ford IDS/VCM scan tool and documenting DTCs and sensor values, performing breakout box measurements of resistances and voltages of ETC related sensors and circuits, measuring the accelerator pedal sensor output and force/position data, and inspecting the brake components. Additionally, the vehicles were instrumented and were drive tested to show their acceleration and braking characteristics.

---

[14]Mr. Bilek also said during his deposition that he had not spoken with any Plaintiffs, reviewed their deposition testimony, or reviewed the service records for their vehicles. *Id*., at 15, ECF No. 1055-1, at 5.

[15]Mr. Stopschinski is an electrical engineer with experience assessing the performance of automotive components and systems, including throttle control systems.

-11-

*Expert Report of Karl E. Stopschinski*, at 14 (Sept. 1, 2017), ECF No. 1076-1, at 15. Mr. Stopschinski found, *inter alia*, no issues with his "measurements of resistances and voltages in the accelerator, throttle, and brake switch circuits," and he did not find any problems with pedal sensors, electrical connections or wiring for the sensors and the pedals, the mounting of the pedal assembly, or the operation of the accelerator pedals. *Id*. at 15, ECF No. 1076-1, at 16. Based upon his testing and inspections, Mr. Stopschinski found "[n]o abnormal conditions existed in the vehicles that would cause a failure of the ETC system to control the throttle consistent with driver command. The main ETC components, accelerator pedal, throttle body and PCM components on all of the inspected vehicles functioned appropriately." *Id*.[16]

In sum, not only did Plaintiffs' designated experts admit they never examined or tested Plaintiffs' actual vehicles to see if there was evidence of such things as degraded or contaminated sensors, wiring chaffing, water intrusion, or corroded connectors, but none of those experts can say that, for those Plaintiffs who allege they experienced an unintended acceleration, their events were the result of the alleged defect with the ETC system. Quite simply, Plaintiffs produced no experts who can testify that Plaintiffs' alleged unintended accelerations were proximately caused by the alleged defect rather than some other known cause for such events. Assuming that Plaintiffs did experience an unintended acceleration, "it [is] not enough that a

---

[16]In their Response to Ford's motion, Plaintiffs state it would have been "relatively easy" for Ford to detect unintended acceleration when it first started receiving complaints by "monitoring vehicles' acceleration and accelerator pedal displacement" by placing a small camera in the vehicles to determine if driver error was at fault. *Pls.' Resp. in Opp. to Ford Motor Co.'s Mot. for Summ. J.*, at 33-34, ECF No. 1099; *Expert Report of Dr. Hubing*, at 28, ECF No. 1099-6, at 29. However, despite the continued availability of many of the Plaintiffs' vehicles, Plaintiffs have not claimed they took this step to eliminate human factors.

vehicle accelerated when claimants swore they had done nothing. Instead, . . . [there must be] competent expert testimony and objective proof that a defect caused the acceleration." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). The Court finds this gap between Plaintiffs' experts' opinions and what allegedly occurred in Plaintiffs' specific vehicles fatal to Plaintiffs' warranty and unjust enrichment claims.

## IV.
## CONCLUSION

Accordingly, finding Plaintiffs have failed to produce competent evidence of a causal link between their alleged unintended acceleration events and the defect they allege exists in the ETC system, the Court **GRANTS** summary judgment in favor of Ford on Plaintiffs' warranty and unjust enrichment claims. The Court **HOLDS IN ABEYANCE** for further consideration the remainder of Ford's Motion for Summary Judgment. The Court will address soon the remaining portions of the Summary Judgment motion and the principal *Daubert* motions.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTERED: February 27, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE